IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:16-cv-00230-CMA-MJW

JOAN OBESLO,
ROYCE HORTON,
DANIEL FISHER,
NATHAN COMER,
STEVE MIGOTTI,
VALERIE MIGOTTI,
JAMES DIMAGGIO,
ANNE HALL,
CAROL A. REYNON-LONGORIA,
on behalf of GREAT-WEST FUNDS, INC.,

      Plaintiffs,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

      Defendant.

---

**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

---

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. ii

CERTIFICATION OF CONFERRAL PURSUANT TO LOCAL RULE 7.1 ....................... 1

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 3

    A.    The Parties and The Funds ................................................................ 3

    B.    Mutual Funds and the Investment Company Act of 1940 ......................... 3

    C.    GWCM's Advisory Services ................................................................ 5

    D.    The Manager-of-Managers Structure ................................................... 7

ARGUMENT .................................................................................................. 8

I.    PLAINTIFFS LACK STANDING TO PURSUE CLAIMS ON BEHALF OF FUNDS IN WHICH THEY DO NOT OWN SHARES ............................................ 8

II.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT EACH OF THE FUNDS PAID EXCESSIVE FEES ............................................................. 13

    A.    Plaintiffs Make No Allegations Relating to Some Great-West Funds ....... 15

    B.    The Complaint Does Not State a Claim with Respect to Any Specific Fund ................................................................................. 16

        1.    Nature and Quality of Services ................................................... 16

        2.    Comparative Fees .................................................................... 18

        3.    Profitability ............................................................................. 19

        4.    Fall-Out Benefits ..................................................................... 19

        5.    Economies of Scale ................................................................. 20

        6.    Independence and Conscientiousness of the Board ...................... 22

III.    DISMISSAL WITH PREJUDICE IS APPROPRIATE .......................................... 24

CONCLUSION ............................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen Oil & Gas, LLC v. Klish,*
 113 F. App'x 869 (10th Cir. 2004) ........................................................................ 25

*Allen v. Wright,*
 468 U.S. 737 (1984) ............................................................................................... 9

*In re AllianceBernstein Excessive Fee Litig.,*
 No. 04-4885, 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) ............................... 10, 12

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.,*
 No. 04-4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) ......................................... 14

*In re Am. Mut. Funds Fee Litig.,*
 No. CV 04-5593 GAF, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009),
 *aff'd sub nom. Jelinek v. Cap. Res. & Mgmt. Co.*, 448 F. App'x 716 (9th
 Cir. 2011) ................................................................................................. 18, 19, 22

*Amron v. Morgan Stanley Inv. Advisors Inc.,*
 464 F.3d 338 (2d. Cir. 2006) .................................................................... 19, 21, 22

*In re Bank of Bos. Corp. Sec. Litig.,*
 762 F. Supp. 1525 (D. Mass. 1991)………………………………………………….9

*Batra v. Inv'rs Research Corp.,*
 No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991) .......................... 12

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) .............................................................................................. 13

*In re BlackRock Mut. Funds Advisory Fee Litig.,*
 No. 14-1165 (FLW) (DEA), 2015 WL 1418848 (D.N.J. Mar. 27, 2015) ................... 16

*Burks v. Lasker,*
 441 U.S. 471 (1979) ................................................................................................ 4

*Carrillo v. Suthers,*
 No. 12-cv-02034, 2014 WL 11297187 (D. Colo. Dec. 29, 2014) ............................ 25

*Curran v. Principal Mgmt. Corp.,*
 No. 4:09-cv-00433, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011) ................. 12, 13, 20

*In re Eaton Vance Corp. Sec. Litig.,*
219 F.R.D. 38 (D. Mass. 2003) ................................................................. 10

*Forsythe v. Sun Life Financial, Inc.,*
417 F. Supp. 2d 100 (D. Mass. 2006) ............................................. 9, 10, 12

*In re Franklin Mut. Funds Fee Litig.,*
478 F. Supp. 2d 677 (D.N.J. 2007) ............................................. 14, 17, 23

*FW/PBS, Inc. v. City of Dallas,*
493 U.S. 215 (1990) ................................................................................... 9

*Gartenberg v. Merrill Lynch Asset Mgmt.,*
694 F.2d 923 (2d Cir.1982) ............................................................... 2,5,14

*Genesis Bio-Pharm., Inc. v. Chiron Corp.,*
27 F. App'x 94 (3d Cir. 2002) ................................................................... 13

*In re Goldman Sachs Mut. Funds Fee Litig.,*
No. 04-2567 (NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ............... 21

*Griggs v. Jornayvaz,*
No. 09-cv-00629-PAB-KMT, 2010 WL 4932674 (D. Colo. Nov. 29,
2010) ....................................................................................................... 13

*Hoffman v. UBS-AG,*
591 F. Supp. 2d 522 (S.D.N.Y. 2008) ................................................. 21, 23

*ING Principal Prot. Funds Derivative Litig.,*
369 F. Supp. 2d 163 (D. Mass. 2005) ...................................................... 23

*Jones v. Harris Assoc. L.P.,*
559 U.S. 335 (2010) ......................................................................... *passim*

*Kalish v. Franklin Advisors, Inc.,*
742 F. Supp. 1222 (S.D.N.Y. 1990) ......................................................... 19

*Kan. Penn Gaming, LLC v. Collins,*
656 F.3d 1210 (10th Cir. 2011) ............................................................... 13

*Kasilag v. Hartford Inv. Fin. Servs.,*
No. 11-083, 2016 WL 1394347 (D.N.J. April 7, 2016) .............................. 10

*Krantz v. Prudential Invs. Fund Mgmt. LLC,*
77 F. Supp. 2d 559 (D.N.J. 1999), *aff'd*, 305 F.3d 140 (3d Cir. 2002) ...................... 14

iii

*Krinsk v. Fund Asset Mgmt.*,
  715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989)........... 5, 15, 20

*Meyer v. Oppenheimer Mgmt. Corp.*,
  895 F.2d 861 (2d Cir. 1990) ................................................................................. 20

*Migdal v. Rowe Price-Fleming Int'l., Inc.*,
  248 F.3d 321 (4th Cir. 2001) .................................................................. 17, 18, 19

*In re Mut. Funds Inv. Litig.*,
  519 F. Supp. 2d 580 (D. Md. 2007)......................................................................... 11

*Nobel Asset Mgmt. v. Allos Therapeutics, Inc.*,
  No. 04-cv-1030-RPM, 2005 WL 4161977 (D. Colo. Oct. 20, 2005) ........................ 13

*Olesh v. Dreyfus Corp.*,
  No. 94-1664 (CPS), 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995)............................. 14

*People to End Homelessness, Inc. v. Develco Singles Apartments Assocs.*, 339 F.3d 1 (1st Cir. 2003).............................................................. 9

*Raines v. Byrd*,
  521 U.S. 811 (1997).............................................................................................. 9

*Redus-Tarchis v. N.Y. Life Inv. Mgmt., LLC*,
  No. 14-7991, 2015 WL 6525894 (D.N.J. Oct. 28, 2015) ................................... 16, 24

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) ............................................................................ 16

*Santomenno v. John Hancock Life Ins. Co.*,
  677 F.3d 178 (3d Cir. 2012) .................................................................................. 10

*In re Scudder Mutual Funds Fee Litig.*,
  No. 04 Civ. 1921 (DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007)............. 12, 17

*Seni v. Peterschmidt*,
  No. 12-cv-00320, 2013 WL 1191265 (D. Colo. Mar. 22, 2013)............................... 16

*Siemers v. Wells Fargo & Co.*,
  No. 05-cv-04518, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006)............................. 10

*Siemers v. Wells Fargo & Co.*,
  No. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2016)................. 12, 13

*Sins v. Janus Capital Mgmt., LLC,*
   Nos. 04-CV 01647-WDM, 04-cv-02395-MSK-C, 2006 WL 3746130 (D.
   Colo. Dec. 15, 2006) ............................................................................. 14

*Stegall v. Ladner,*
   394 F. Supp. 2d 358 (D. Mass. 2005) ...................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007)....................................................................................6

*Toone v. Wells Fargo Bank, N.A.,*
   716 F.3d 516 (10th Cir. 2013) ................................................................. 13

*Turner v. Davis Selected Advisers, LP,*
   626 F. App'x 713 (9th Cir. 2015) ............................................................. 20

*Williams v. Bank One Corp.,*
   No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003) ................... 12

## Statutes

15 U.S.C. § 80a-6(c) ..................................................................................... 7

15 U.S.C. § 80a-10(a)-(b) .............................................................................. 4

15 U.S.C. § 80a-15(a)-(e) .............................................................................. 4

15 U.S.C. § 80a-35(b) ................................................................................ 4, 9

15 U.S.C. § 80a-35(b)(1)-(3) .................................................................... 5, 15

## Other Authorities

*Exemption from Shareholder Approval for Certain Subadvisory Contracts,*
   81 SEC Docket 939, 2003 WL 22423216 (Oct. 23, 2003) .......................... 8

*Mut. Series Fund, Inc.*, SEC No-Action Letter, 1995 WL 693304 (Nov. 7,
   1995).......................................................................................................... 11

*Principal Inv'rs Fund Inc.*, SEC No-Action Letter, 2005 WL 1160193 (May
   13, 2005)..................................................................................................... 11

Robert Pozen & Theresa Hamacher, <u>The Fund Industry: How Your Money
   Is Managed</u> (2012) .................................................................................... 7

*Salomon Bros. Inc.*, SEC No-Action Letter, 1995 WL 329631 (May 26, 1995).................................................................................................................. 11

*SEC, IM Guidance Update No. 2014-03* (Feb. 2014), http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-03.pdf................................................................................................................... 7

USAllianz Variable Insurance Products Trust & USAllianz Advisers, LLC, 67 Fed. Reg. 55286-01, 2002 WL 1970906 (Aug. 28, 2002) ..................................... 8

USAllianz Variable Insurance Products Trust, Supplement (Form 497) (Sept. 23, 2002) ........................................................................................................ 8

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Great-West

Capital Management, LLC ("GWCM") moves to dismiss Plaintiffs' First Amended

Complaint in its entirety.   In support of its motion, Defendant states as follows:

**CERTIFICATION OF CONFERRAL PURSUANT TO LOCAL RULE 7.1**

Pursuant to Local Rule 7.1, the undersigned certifies that they have conferred

with opposing counsel in a good faith effort to resolve the issues raised herein.

Specifically, counsel had a meet-and-confer on April 25, 2016.  Prior to the meet-and-

confer, Defendant provided Plaintiffs with detailed notice of the deficiencies in the

Original Complaint.  *See* Exh. A, Letter to Michael Wolff from Sean Murphy, dated

March 16, 2016.  Plaintiffs chose to amend the Complaint but did not correct for these

deficiencies.  After the meet-and-confer, Defendant sent a letter to opposing counsel

regarding the grounds for the current Motion to Dismiss on April 28, 2016.  *See id.*; Exh.

B, Letter to Michael Wolff from Sean Murphy, dated April 28, 2016.  The issues could

not be resolved despite good faith efforts, as Plaintiffs have chosen to stand on the First

Amended Complaint.

**INTRODUCTION**

This is an action for allegedly "excessive" mutual fund fees in violation of Section

36(b) of the Investment Company Act of 1940 ("ICA").  That statute provides a limited

remedy for a plaintiff who can meet the difficult burden of showing that the fund's

adviser charged a fee that "is so disproportionately large that it bears no reasonable

relationship to the services rendered and could not have been the product of arm's

length bargaining."  *Jones v. Harris Assoc. L.P.*, 559 U.S. 335, 351 (2010) (adopting

standard in *Gartenberg v. Merrill Lynch Asset Mgmt.,* 694 F.2d 923, 928-29 (2d Cir.1982)).  Plaintiffs bring this action against Defendant GWCM to recoup allegedly excessive fees paid by *63 different Great-West mutual funds* for which GWCM serves as investment adviser.  The Complaint should be dismissed for two reasons.

<u>First</u>, despite the fact that Plaintiffs currently own shares in only 17 Great-West mutual funds, they purport to bring this action derivatively on behalf of 63 different Great-West funds.  Section 36(b)'s express terms require Plaintiffs to be "security holders" of each fund on whose behalf they bring a claim, and the "case and controversy" requirement of Article III of the U.S. Constitution requires Plaintiffs to have a personal stake in the litigation.  Here, Plaintiffs are not security holders in Great-West mutual funds they do not own, they do not pay any fees in connection with those non-owned funds and they would not benefit from any recovery by those funds in this action.  Courts have routinely dismissed Section 36(b) claims under Rule 12(b)(6) for lack of statutory and constitutional standing in these exact circumstances.

<u>Second</u>, Plaintiffs have not pled sufficient facts to state a claim under Section 36(b).  Because the Complaint purports to allege a claim against 63 different funds, Plaintiffs do not allege the elements of a claim against any one fund.  Instead, Plaintiffs resort to "group pleading" tactics, making sweeping allegations that apply to "most funds," "nearly all" or "half" the funds.  Such blunderbuss allegations are insufficient to survive dismissal, as Plaintiffs must make at least some showing that each fund's fees are excessive.  Highlighting the deficiency of the Complaint, Plaintiffs *make absolutely no mention of many of the 63 funds at issue*.  This is fatal to their claim.  Even in those

instances where allegations are made about specific funds, the allegations are of the same type rejected by previous courts as insufficient.

## FACTUAL BACKGROUND

### A.     The Parties and The Funds

The Plaintiffs are currently shareholders in 17 different Great-West funds, but purport to bring this action on behalf of 63 different Great-West funds (collectively, "Great-West Funds"). (Compl. ¶¶ 1-2, 10-18.) Each of the 63 funds is a "series" within a broader investment company known as Great-West Funds, Inc., a registered investment company under the ICA. (Compl. ¶ 5; Original Compl. ¶ 28.) Each of the Great-West Funds is overseen by a four-person board of directors, three of whom are independent of GWCM (the "Board"). (Compl. ¶ 8.)

GWCM, a registered investment adviser under the ICA, acts as investment adviser to the Great-West Funds pursuant to an Investment Management Agreement dated May 1, 2015. (Compl. ¶ 22.) For its services, GWCM is paid according to a separate fee schedule for each fund, which currently varies from .10% to 1.05% of each fund's assets under management. (Compl. ¶ 28.)

### B.     Mutual Funds and the Investment Company Act of 1940

"A mutual fund is a pool of assets, consisting primarily of [a] portfolio [of] securities, and belonging to the individual investors holding shares in the fund." *Jones*, 559 U.S. at 338. The management and operations of a mutual fund are typically externalized and contractually delegated to its investment adviser. Since the enactment of the ICA, courts have recognized the legal separation of a mutual fund and its adviser

and have acknowledged this distinction as a principal purpose of the ICA, which protects fund investors by maintaining a fund's independence from its adviser. *See* 15 U.S.C. §§ 80a-10(a)-(b), 80a-15(a)-(e); *Burks v. Lasker*, 441 U.S. 471, 480-85 (1979). The ICA creates a regulatory structure designed to safeguard the interests of fund shareholders.  The statute entrusts "noninterested" directors or trustees sitting on a mutual fund's board (the "independent trustees") with the primary responsibility of protecting fund shareholders from any conflicts of interest with the fund's adviser.  A majority of independent trustees, who represent the "cornerstone" of the ICA's efforts to check conflicts of interest, *Jones*, 559 U.S. at 339, must approve *annually* the compensation paid to the adviser.  15 U.S.C. § 80a-15(c); *accord Jones*, 559 U.S. at 340.  To fulfill that obligation, the trustees must "request and evaluate" all information from the adviser reasonably necessary to evaluate the terms of the advisory contract with the funds.  *See* 15 U.S.C. § 80a-15(c).

The ICA's reliance on independent trustees to manage potential conflicts of interest between a fund and its adviser is a central tenet of Section 36(b), which provides that an adviser owes a "fiduciary duty with respect to the receipt of compensation" from a mutual fund.  15 U.S.C. § 80a-35(b).  The Supreme Court has made clear that to prove a breach of this duty, the plaintiff must meet the high burden of showing that the fee charged is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 345-46.  In making that inquiry, a court must consider—and give appropriate deference to—the role of the independent trustees in

approving that fee: "[A]pproval by the board of directors of such investment company of such compensation or payments . . . shall be given such consideration by the court as is deemed appropriate under all the circumstances." 15 U.S.C. 80a-35(b)(2).  The statute does not oblige the directors to negotiate the "'best deal' possible." *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989).  Nor does it authorize the court to sit as a "super-trustee" or to second-guess informed board decisions.  *See Jones*, 559 U.S. at 352.  "[T]he court is not authorized 'to substitute its business judgment for that of a mutual fund's board of directors in the area of management fees.'"  *Gartenberg*, 694 F.2d at 928 (quoting S. Rep. No. 91-184 (1970); H.R. Rep. No. 91-1382 (1970)).

**C.    GWCM's Advisory Services**

Under the terms of the Investment Advisory Agreement, GWCM is obligated to provide the following services to the Great-West Funds:

(a) perform research and obtain and evaluate pertinent economic, statistical, and financial data relevant to the investment policies of the funds;

(b) consult with the Board and furnish to the Board recommendations with respect to an overall investment plan for approval, modification, or rejection by the Board;

(c) seek out, present, and recommend specific investment opportunities, consistent with any overall investment plan approval by the Board;

(d) take such steps as are necessary to implement any overall investment plan approved by the Board, including making and carrying out decisions to acquire or dispose of permissible investments, management of investments and any other property of the funds, and providing or obtaining such services as may be necessary in managing, acquiring, or disposing of investments;

(e) regularly report to the Board with respect to the implementation of any approved overall investment plan and any other activities in connection with management of the assets of the funds;

(f) maintain all required accounts, records, memoranda, instructions, or authorization relating to the acquisition or disposition of investments for the funds;

(g) determine the net asset value of the funds as required by applicable law;

(h) assist in supervising all aspects of the funds' operations, including the coordination of all matters relating to the functions of the custodian, transfer agent, other shareholder service agents, if any, accountants, attorneys, and other parties performing services or operational functions for the funds;

(i) provide the funds, at GWCM's expense, with services of persons who may be GWCM's officers, competent to perform such administrative and clerical functions as are necessary in order to provide effective administration of the funds, including duties in connection with certain reports and the maintenance of certain books and records of the funds; and

(j) provide the funds, at GWMC's expense, with adequate office space and related services necessary for its operations.

Exh. C, Investment Advisory Agreement, May 1, 2015 at 1-3.[1]

Among the 63 mutual funds managed by GWCM are a number of "funds-of-funds" known as Asset Allocation Funds, each of which is a mutual fund that invests in a number of other underlying mutual funds.  (Compl. ¶¶ 34, 43.)  For these "funds-of-funds," GWCM is responsible for selecting the underlying investment options from a range of proprietary mutual funds, non-proprietary mutual funds or a fixed interest contract guaranteed by GWCM's affiliate, Great-West Life & Annuity Insurance Company.  (Compl. ¶¶ 34, 39, 43.)  GWCM selects an allocation in order to meet the specified objective of each Asset Allocation Fund that may change over time.  For

---

[1] Plaintiffs ignore certain services under the Investment Advisory Agreement in their Complaint, a copy of which is attached as Exhibit C.  *See* Exh. C, Investment Advisory Agreement, May 1, 2015 at 2-3; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (on Rule 12(b)(6) motions, courts may consider "documents incorporated into the complaint by reference").

example, GWCM has developed a "glide path" for certain funds that changes each fund's asset allocation over time to meet changing investor needs, for example, by reducing exposure to equities to make the fund more conservative as the investor gets closer to retirement.  (Compl. ¶¶ 37-38.)  The Asset Allocation Funds do not use sub-advisers (discussed below); rather, GWCM is responsible for selecting the underlying mutual funds.  (Compl. ¶ 54.)

D.      **The Manager-of-Managers Structure**

The Investment Management Agreement permits GWCM to hire sub-advisers, allowing GWCM to find and engage experts in specific investment disciplines to manage assets in the funds.  This arrangement allows a fund complex "to add new fund types to their product lineup, even when they don't have the investment expertise in-house."[2] This structure, "first introduced in the early 1990s," has "grown in popularity" to the point where "[m]any mutual funds today use a so-called 'multi-manager structure . . . .'"[3]

Plaintiffs attempt to portray the adviser-subadviser structure as a conduit for excessive fees.  But over nearly two decades, the SEC has approved as "necessary or appropriate in the public interest and consistent with the protection of investors," 15 U.S.C. § 80a-6(c), more than *two hundred* exemptive applications authorizing "manager-of-manager" arrangements without the usual requirement that shareholders

---

[2] Robert Pozen & Theresa Hamacher, The Fund Industry: How Your Money Is Managed 455 (2012).

[3] SEC, *IM Guidance Update No. 2014-03*, at 1 (Feb. 2014), http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-03.pdf.

vote on a change in sub-adviser.[4]  A central rationale for these exemptive orders is that

a sub-adviser in "manager-of-manager" funds is analogous to an individual portfolio

manager who may be terminated at the discretion of the adviser, while the investment

adviser is the investment company's principal service provider.[5]

For certain Great-West Funds, GWCM has hired sub-advisers to assist it in

managing the assets of those funds pursuant to one of these SEC orders.  (Compl.

¶¶ 30-31.)  While these sub-advisers select the underlying investments within the

investment guidelines developed by GWCM, GWCM maintains overall responsibility for

the management and operation of the funds.  Among other tasks, GWCM is also

responsible for designing the funds; researching, selecting, monitoring and replacing

sub-advisers; making asset allocation decisions across funds that use multiple sub-

advisers; and providing a host of regulatory, record keeping and administrative tasks

necessary to operate a mutual fund.  Exh. C, Investment Advisory Agreement, May 1,

2015 at 1-3.

## ARGUMENT

**I.   PLAINTIFFS LACK STANDING TO PURSUE CLAIMS ON BEHALF OF FUNDS IN WHICH THEY DO NOT OWN SHARES**

"Standing is a threshold inquiry and is particularly important in securities

litigation, where strict application of standing principles is needed to avoid vexatious

---

[4] *See id.*; *see also* USAllianz Variable Insurance Products Trust & USAllianz Advisers, LLC, 67 Fed. Reg. 55286-01, 2002 WL 1970906  (Aug. 28, 2002); USAllianz Variable Insurance Products Trust, Supplement (Form 497) (Sept. 23, 2002).

[5] *See Exemption from Shareholder Approval for Certain Subadvisory Contracts*, 81 SEC Docket 939, 2003 WL 22423216, at *6 (Oct. 23, 2003).

litigation and abusive discovery." *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 117-18 (D. Mass. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *In re Bank of Bos. Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991)).  In their Complaint, Plaintiffs allege they own shares in only 17 Great-West mutual funds.  *See* Appendix I. Yet this lawsuit is brought on behalf of _63_ different Great-West Funds, 46 of which are not owned by any Plaintiff.  The law is clear that Plaintiffs do not have standing to pursue claims on behalf of these non-owned funds.

Under Section 36(b), private plaintiffs may sue only on behalf of the funds whose shares they own: "[a]n action may be brought under this subsection by the Commission, or by a *security holder* of such registered investment company [(i.e., mutual fund)] on behalf of such company."  15 U.S.C. § 80a-35(b) (emphasis added).  Aside from this statutory standing requirement, Article III, Section 2 of the U.S. Constitution requires a party to have standing.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  "Article III standing imposes three fairly strict requirements."  *People to End Homelessness, Inc. v. Develco Singles Apartments Assocs.*, 339 F.3d 1, 8 (1st Cir. 2003) (citation omitted).  These requirements include (1) a personal injury suffered by the plaintiff that is (2) fairly traceable to the defendant's allegedly unlawful conduct and (3) likely to be redressed by the requested relief.  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  The burden is on Plaintiffs to meet these requirements.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990).

Courts have consistently held that both the "security holder" language in Section 36(b) and Article III require that a plaintiff currently own shares in those funds on whose

behalf the claim is brought.  *Santomenno v. John Hancock Life Ins. Co.*, 677 F.3d 178, 185 (3d Cir. 2012) (affirming dismissal of Section 36(b) claim where plaintiff sold shares in the fund); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083 (RMB/KMW), 2016 WL 1394347, at *9 (D.N.J. Apr. 7, 2016) ("Ownership is a requirement for Section 36(b) actions."); *Siemers v. Wells Fargo & Co.*, No. 05-cv-04518 WHA, 2006 WL 2355411, at *20-21 (N.D. Cal. Aug. 14, 2006) (plaintiff lacked standing under Section 36(b) because he failed to allege that he owned fund shares); *Forsythe*, 417 F. Supp. 2d at 119-20 (dismissing Section 36(b) claims on behalf of funds in which the plaintiffs did not hold shares); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885, 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005) (same); *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 41 (D. Mass. 2003) (same).

Here, Plaintiffs have no financial stake in litigation concerning advisory fees charged to the majority of Great-West Funds they do not own.  Plaintiffs are not "security holders" in those funds, they do not pay fees associated with those funds, and they would not benefit from any recovery with respect to those funds.  Thus, Plaintiffs lack standing to pursue claims on behalf of those non-owned funds.[6]

That each Great-West mutual fund is a "series" in Great-West Funds, Inc., which itself is an investment company registered under the ICA, (Original Compl. ¶ 28), does

---

[6] The Complaint alleges that Plaintiffs formerly owned shares in other Great-West Funds.  (Compl. ¶¶ 10-18.)  However, having sold their shares, Plaintiffs lack standing to pursue Section 36(b) claims related to those funds.  *Santomenno*, 677 F.3d at 185 (affirming dismissal of Section 36(b) action where plaintiffs sold shares); *Forsythe*, 417 F. Supp. 2d at 117 ("Former security holders may not bring a claim on behalf of an investment company that they formerly held shares in but no longer do.").

not alter the standing analysis.  For example, in *In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580 (D. Md. 2007), the plaintiff brought Section 36(b) claims on behalf of a group of mutual funds, each of which was a "series" within a single broader investment company.  *Id.* at 588.  The court noted the SEC's position that "each series is to be treated as a separate investment company"[7] and cited cases holding that the broader corporate structure of a series trust does not confer standing on plaintiffs to pursue claims on behalf of non-owned funds.  *Id.* at 588-89.  The court held:

> Plaintiffs cannot overcome the fact that the text of Section 36(b) (expressly requiring that a plaintiff be a "security holder of" the entity on whose behalf he seeks to bring suit), SEC pronouncements, and well-reasoned case law provide overwhelming support for treating an individual mutual fund as a "registered investment company."  Accordingly, derivative plaintiffs may not assert claims under Section 36(b) on behalf of mutual funds in which they never held shares.  *Id.* at 590.

Numerous courts have similarly held that a plaintiff lacks standing to sue on behalf of "series" funds within a broader single investment company unless they own

---

[7] *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d at 588 n.11 (citing *Adoption of Rule 18f-2*, 1972 SEC LEXIS 1497, 1972 WL 125428, at *1 (Aug. 8, 1972) ("[T]he individual series of [a registered investment company] are, for all practical purposes, separate investment companies.  Each series of stock represents a different group of stockholders with an interest in a segregated portfolio of securities."); *Salomon Bros. Inc.*, SEC No-Action Letter, 1995 WL 329631, at *2 (May 26, 1995) ("[O]n a number of occasions, [SEC staff] has treated individual portfolios of a single registered investment company as separate investment companies under other provisions of the 1940 Act that expressly apply to a 'registered investment company.'"); *Mut. Series Fund, Inc.*, SEC No-Action Letter, 1995 WL 693304, at *2 (Nov. 7, 1995) (the SEC has "recognized that a series is the functional equivalent of a separate investment company and have concluded that an individual series should be deemed a separate investment company in applying the various limitations and restrictions imposed by the 1940 Act and the rules under the 1940 Act."); *Principal Investors Fund Inc.,* SEC No-Action Letter, 2005 WL 1160193, at *3 (May 13, 2005) ("[E]ach series of a series investment company is a separate investment company for the purposes" of Section 12 of the ICA)).

shares in each of the specific funds.  *Curran v. Principal Mgmt. Corp.*, No. 4:09-cv-00433, 2011 WL 223872, at *2 n.3 (S.D. Iowa Jan. 24, 2011) (each "series" fund treated as a registered investment company, even though one trust was registered with the SEC); *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *7 (N.D. Cal. Oct. 24, 2006) (citation omitted) ("Plaintiff cannot sue on behalf of funds he does not own."); *Forsythe,* 417 F. Supp. 2d at 118 (citation omitted) (each fund should be treated as a "separate and distinct entity" under Section 36(b); "a plaintiff may not use the corporate structure of the broader investment company to confer standing"); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 362 (D. Mass. 2005) (no standing under Section 36(b) to sue on behalf of non-owned funds); *Williams v. Bank One Corp.*, No. 03 C 8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 15, 2003) (no standing to bring a derivative claim on behalf of unincorporated funds within incorporated business trust).[8]

---

[8] In *Batra v. Investors Research Corp.*, No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991), plaintiffs were permitted to pursue claims on behalf of "series" funds in which they did not own shares.  *Id.* at *1.  There, however, the broader investment company charged a single one-percent fee for all assets that applied equally to every series within the trust.  *Id.* at *3 n.6.  Here, as alleged in the Complaint, each fund pays different fees.  (*See* Compl. ¶ 28.)  Numerous courts have distinguished *Batra* on this ground.  *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ.1921(DAB), 2007 WL 2325862, at *10 (S.D.N.Y. Aug. 14, 2007); *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *7 n.2 (N.D. Cal. Oct. 24, 2006); *In re AllianceBernstein*, 2005 WL 2677753, at *10.  In any event, *Batra* was wrongly decided in light of more recent decisions relying on subsequent SEC guidance.  *Siemers*, 2006 WL 3041090, at *7 n.2 ("After considering the weight of recent authority and relevant SEC rulings, this [court] respectfully disagrees with the *Batra* decision.").

Accordingly, if this action proceeds at all—which it should not—Plaintiffs should only be entitled to challenge fees paid by the 17 Great-West mutual funds they own.[9]

## II.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT EACH OF THE FUNDS PAID EXCESSIVE FEES

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 520-21 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1212-13 (10th Cir. 2011) (dismissing lawsuit for failure to state a claim for relief under the standard in *Twombly* and *Iqbal*).  A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[C]onclusory statements" are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 678.

Allegations also need not be credited if they are contradicted by the public record or by documents upon which the complaint relies.[10]  *See Genesis Bio-Pharm., Inc. v. Chiron Corp.*, 27 F. App'x 94, 99-100 (3d Cir. 2002).  Courts grant motions to dismiss Section 36(b) claims where the plaintiff's allegations are contradicted by public records

---

[9] Plaintiffs cannot use their ownership of the Asset Allocation Funds to challenge the fees paid by the underlying funds within those funds.  *See Curran*, 2011 WL 223872, at *4 (plaintiffs lack standing to pursue Section 36(b) claims challenging fees charged to underlying funds within a fund-of-funds).

[10] *Griggs v. Jornayvaz*, No. 09-cv-00629-PAB-KMT, 2010 WL 4932674, at *3 (D. Colo. Nov. 29, 2010) (courts can consider on a motion to dismiss public disclosure documents required by law to be, and that have been, filed with the SEC); *Nobel Asset Mgmt. v. Allos Therapeutics, Inc.*, No. 04-cv-1030-RPM, 2005 WL 4161977, at *2 (D. Colo. Oct. 20, 2005) (taking judicial notice of the defendant company's Form 10-K Annual Report that was filed with the SEC while considering defendant's motion to dismiss).

that "paint a more complete picture . . . of the Fund in question."  *See, e.g., In re AllianceBernstein*, 2006 WL 74439, at *2 (S.D.N.Y. Jan. 11, 2006).

Claims under Section 36(b) "are particularly appropriate for dismissal for failure to state a claim under [Fed. R. Civ. P.] 12(b)(6)."  *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 77 F. Supp. 2d 559, 562 (D.N.J. 1999), *aff'd*, 305 F.3d 140 (3d Cir. 2002); *see also Olesh v. Dreyfus Corp.,* No. 94-1664 (CPS), 1995 WL 500491, at *21 (E.D.N.Y. Aug. 8, 1995) (dismissing complaint).  Rule 12(b)(6) motions further the congressional intent to "prevent the harassment of investment [managers] by ill-founded or nuisance law suits, the so-called strike suit."  *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007) (citing H.R. Rep. No. 91-1382, at 8 (1970)).

In Section 36(b) cases, courts typically consider the six "*Gartenberg* factors" in assessing the sufficiency of the Complaint: (1) the nature and quality of services provided to the funds; (2) the independence and conscientiousness of the funds' board of trustees; (3) whether the adviser realized and shared economies of scale; (4) the fees charged to comparable mutual funds; (5) the adviser's profitability; and (6) fall-out benefits to the adviser.  *Jones*, 559 U.S. at 344 & n.5; *see Gartenberg*, 694 F.2d at 928-29; *Sins v. Janus Capital Mgmt., LLC*, No. 04-CV 01647-WDM-MEH, 2006 WL 3746130, at *3 (D. Colo. Dec. 15, 2006).

The most important *Gartenberg* factor is the independence and conscientiousness of the funds' trustees.  *See Krinsk*, 875 F.2d at 412 (citation omitted) ("The expertise of the [independent trustees], whether they are fully informed, and the extent of care and conscientiousness with which they perform their duties are among

the most important factors to be examined."); *Krinsk v. Fund Asset Mgmt.*, 715 F. Supp. 472, 501 (S.D.N.Y. 1988) ("The Court will not ignore a responsible decision by the [trustees], including a majority of the [independent trustees], to continue the fee structure as it stands."), *aff'd*, 875 F.2d 404 (2d Cir. 1989).  Under the ICA, the independent trustees are the first line of defense in protecting fund shareholders, and courts must give appropriate consideration to the board's approval of the challenged fees.  15 U.S.C. § 80a-35(b)(1)-(3); *see also Jones*, 559 U.S. at 351-53.

## A.   Plaintiffs Make No Allegations Relating to Some Great-West Funds

Plaintiffs have taken a "group pleading" approach in their Complaint.  That is, rather than address each fund individually, they make allegations such as: (1) the challenged fees vary by fund, with some funds paying one tenth what other funds pay, (Compl. ¶ 28); (2) "[f]ully *half* of the funds have failed to match their stated benchmarks in 2015", (Compl. ¶ 102) (emphasis added); (3) "*most*" sub-advisers have declining fee schedules, (Compl. ¶ 31) (emphasis added); (4) sub-advisers manage "*nearly all*" the funds, (Compl. ¶ 30) (emphasis added); (5) the structure of the funds differ (*e.g.*, only some are fund-of-funds), (Compl. ¶ 34); (6) there are different assets under management, (Compl. ¶ 28); and (7) the advisory services vary across funds (*e.g.*, some are index funds and some are actively managed).  (Compl. ¶¶ 63, 82.)  The failure to make specific and individualized allegations is fatal to the claim.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (citation omitted) ("[T]he complaint must meet the minimal standard of notice pleading as articulated by the Court in *Twombly*. . . .  Without allegations sufficient to make clear the 'grounds' on which the

plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established."); *Seni v. Peterschmidt*, No. 12-cv-00320-REB-CBS, 2013 WL 1191265, at *3 (D. Colo. Mar. 22, 2013) (dismissing derivative action due to plaintiffs' reliance on group pleading).

Each Great-West fund has its own fee schedule, performance history (*e.g.*, some funds outperformed their benchmark and others did not), and unique structure.  The *Gartenberg* factors that courts use to assess the allegations in the Complaint apply very differently across such a large number of diverse mutual funds.  Plaintiffs do not attempt to address each fund separately, hoping to avoid the inconvenience when those factors do not support their theories.  *The Complaint does not even mention or identify all of the 63 funds on whose behalf Plaintiffs purport to sue*, much less provide any facts that would support a finding of excessive fees under the *Gartenberg* factors.  Dismissal is therefore appropriate.[11]

**B.     The Complaint Does Not State a Claim with Respect to Any Specific Fund**

Turning to the allegations of any specific fund, it is clear that Plaintiffs have not made out a claim with respect to even a single one of the 63 at-issue funds.

1.     Nature and Quality of Services

---

[11] Plaintiffs' attempt to bring a claim on behalf of an entire complex of funds, with very few allegations specific to any one fund, distinguishes this case from other recent Section 36(b) claims that have survived a motion to dismiss.  *See, e.g.*, *Redus-Tarchis v. N.Y. Life Inv. Mgmt., LLC*, Cv. No. 14-7991, 2015 WL 6525894, at *36 (D.N.J. Oct. 28, 2015); *In re BlackRock Mut. Funds Advisory Fee Litig.*, No. 14-1165 (FLW) (DEA), 2015 WL 1418848, at *8-9 (D.N.J. Mar. 27, 2015).

Plaintiffs' allegations about the nature and quality of services provided to the Great-West Funds are insufficient.  While they focus almost exclusively on some funds' performance, they provide almost no specifics.  For example, the Complaint alleges that "[f]ully half the [active] funds have failed to match their stated benchmarks in 2015." (Compl. ¶ 102.)  But this does not identify which funds underperformed and concedes that many other of the funds did beat their benchmark.

Without identifying any specific funds, Plaintiffs also generically assert that "the [Asset Allocation Funds] have underperformed their stated benchmarks, including the Morningstar universe of their peers."  (Compl. ¶ 55.)  However, absent allegations about which funds underperformed, over what time period, or the amount of the underperformance, these allegations are insufficient.  *Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 327 (4th Cir. 2001) (dismissing Section 36(b) claim where funds allegedly "did not meet their preselected benchmark performance standards"); *In re Franklin,* 478 F. Supp. 2d at 687 (dismissing Section 36(b) claim and holding that alleged poor performance for an undated period is "unavailing"); *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ.1921(DAB), 2007 WL 2325862, at *16-17 (S.D.N.Y. Aug. 14, 2007) ("Plaintiffs' argument that statistics from other years provide a necessary context to the relevant fee allegations is without merit.").  Indeed, even if these details were provided, the allegations would be insufficient.  *Migdal,* 248 F.3d at 327 (allegations that funds underperformed benchmarks or peers are, standing alone, insufficient under Section 36(b) and are at best "marginally helpful").

Moreover, Plaintiffs' generic allegations of underperformance are particularly lacking in light of the fact that the Great-West Funds' public filings with the SEC indicate that some of these funds have had excellent long term performance.  *See*, Exh. D, Great-West Funds, Inc. Semi-Annual Report, Great-West Profile II Funds, June 30, 2015 at 39 (stating that the Great-West Aggressive Profile II Fund, the Great-West Moderately Aggressive Profile II Fund and the Great-West Moderate Profile II Fund beat the majority of their peer funds over a one, three, five and ten year period, and two out of three of these funds outperformed their benchmark over a ten year period); *In re Am. Mut. Funds Fee Litig.*, No. CV 04-5593 GAF (RNBx), 2009 WL 5215755, at *48 (C.D. Cal. Dec. 28, 2009) (long-term performance is more relevant than short term when assessing performance under Section 36(b)), *aff'd sub nom. Jelinek v. Cap. Res. & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011).

2.   <u>Comparative Fees</u>

Plaintiffs' allegations with respect to the comparative fees are similarly deficient. The Complaint provides comparative fee data for only a handful of the funds.  (Compl. ¶¶ 77-79.)  Even for the few funds that the Complaint does address, the allegations are scant at best.  For example, Plaintiffs compare some funds to a single Vanguard fund, (Compl. ¶¶ 68, 78-79), or assert in conclusory fashion that a fund's fee is "significantly more" than other unspecified funds.  (Compl. ¶ 79.)

These allegations are insufficient to survive dismissal.  For example, in *Migdal v. Rowe Price-Fleming International, Inc.,* plaintiffs alleged that "two or three similar funds offered lower fee rates than the funds in this case, while simultaneously outperforming

them." *Migdal*, 248 F.3d at 327.  In affirming dismissal of the complaint for failure to

state a claim, the Fourth Circuit found these allegations "not particularly meaningful"

because they did not address the particular services offered by the funds' adviser.  *Id.*

The allegations here against the Great-West Funds are even less probative because

the few comparative funds cited in the Complaint most often are Vanguard funds.

(Compl. ¶¶ 59, 67-69.); *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345

(2d. Cir. 2006) (fee comparisons to "Vanguard, a firm known for its emphasis on

keeping costs low, raises little suspicion"); *Kalish v. Franklin Advisers, Inc.*, 742 F.

Supp. 1222, 1250 (S.D.N.Y. 1990) ("[t]he Vanguard comparison is seriously flawed").

### 3.   Profitability

The Complaint contains no factual allegations about the profitability of any Great-

West Fund or GWCM's overall profitability.  *See Amron*, 464 F.3d at 344-45 (dismissing

Section 36(b) claim based on a failure to adequately allege profitability; assertions

regarding the size of the fees "are irrelevant to a showing of profitability without some

allegation of the corresponding costs incurred in operating the funds").  Plaintiffs allege

only in conclusory fashion that GWCM earned "extreme and excessive profits."  (Compl.

¶ 72.)  Without supporting facts, this allegation standing alone is insufficient under

*Iqbal/Twombly*.

### 4.   Fall-Out Benefits

Plaintiffs have not adequately alleged any fall-out benefits.  "Fall-out benefits"

are profits to the adviser or its affiliates that "would not have occurred *but for* the

existence of the Fund."  *Krinsk*, 715 F. Supp. at 495; *see also In re Am. Mut. Funds Fee*

*Litig.*, 2009 WL 5215755, at *53.  Here, the Complaint alleges a single fall-out benefit: advisory fees on other Great-West Funds used within the Asset Allocation Funds. (Compl. ¶ 110.)   These allegations fail to withstand scrutiny.

First, courts have rejected attempts by plaintiffs to allege that other fees charged to the mutual funds are fall-out benefits absent a showing that those other fees are themselves excessive.  For example, the Ninth Circuit recently affirmed the dismissal of a complaint based on similar allegations of fall-out benefits in *Turner v. Davis Selected Advisers, LP*, 626 F. App'x 713, 715 (9th Cir. 2015) (mem.).  There, the plaintiff alleged that service fees collected on the funds were a fall-out benefit.  *Id.* at 717.  The court held that "[t]he mere labeling of such fees as 'fall out benefits' . . . says nothing about whether the service fee here fails to resemble what would be the product of arm's-length bargaining."  *Id.*; *see also Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861, 866 (2d Cir. 1990) ("If the fee for each service viewed separately is not excessive in relation to the service rendered, then the sum of the two is also permissible.").

Second, Plaintiffs' labeling of the advisory fees paid by the underlying funds used in the Asset Allocation Funds as fall-out benefits is simply an end-run around their lack of standing to challenge those fees.  *Curran*, 2011 WL 223872, at *4 (plaintiffs cannot challenge fees in the funds held within their fund-of-funds).

### 5.   Economies of Scale

Plaintiffs allege that GWCM realized economies of scale because "most" sub-advisers have breakpoints[12] in their fee schedules, (Compl. ¶ 103), and the total fees of

---

[12] "Breakpoints" reduce the fees paid at certain specified levels of assets.

the Great-West Funds in the aggregate increased from 2012 to 2014.  (Compl. ¶¶ 105,

107.)  These allegations are insufficient to plead economies of scale.

First, these allegations say nothing about whether GWCM realized economies of

scale with respect to any individual funds, which is exactly why Plaintiffs' group pleading

approach is inadequate.  For most of the 63 funds at issue, Plaintiffs have no

economies of scale allegations.  Grouping funds together masks that some funds

decreased in assets during the relevant period.

Second, even for those few funds the Complaint does address, the economies of

scale allegations rest exclusively on the existence of subadvisory fee breakpoints in a

minority of funds.[13]  (Compl. ¶¶ 64, 83-98.)  A "differential in breakpoints between sub-

advisors and investment advisors is irrelevant to the issue of economies of scale"

because GWCM and the sub-advisers perform different services.  *Hoffman v. UBS-AG*,

591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008).  Rather, in order to survive dismissal, a

plaintiff "must make a substantive allegation regarding the actual transaction costs at

issue and whether the costs per investor increased or decreased as the assets under

management grew."  *Hoffman*, 591 F. Supp. 2d at 540; *see also Amron*, 464 F.3d at

345 (economies of scale requires "allegations regarding the costs of performing fund

---

[13]  The Complaint alleges that GWCM's fees have increased over time, but this does not speak to economies of scale.  (Compl. ¶¶ 107-08.)  "Mere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors."  *In re Goldman Sachs Mut. Funds Fee Litig.,* No. 04 Civ. 2567(NRB), 2006 WL 126772, at *9 (S.D.N.Y. Jan. 17, 2006).

transactions or the relationship between such costs and the number of transactions performed"). Plaintiffs have failed to do so.

Even if subadvisory breakpoints were relevant, these allegations do not apply to the majority of the funds. For example, of the 17 funds owned by Plaintiffs, 3 are alleged to use sub-advisers that employ breakpoints, (Compl. ¶¶ 84, 86-87), 6 funds are alleged to use sub-advisers that have flat fee schedules, (Compl. ¶¶ 64, 92-93, 98), and the other funds either do not use sub-advisers or are not mentioned.

Finally, Plaintiffs point to the lack of breakpoints in the fee schedules used to compensate GWCM as evidence that scale economies were not shared. However, the level of sharing is only relevant if Plaintiffs adequately allege that economies of scale were realized, which they have not done. In any event, breakpoints are only one form of sharing. The Complaint fails to address other forms of sharing, such as waivers and pricing to scale from inception. *See In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *52 ("Economies of scale can be shared with fund shareholders in a number of ways, including breakpoints, fee reductions and waivers, offering low fees from inception, or making additional investments to enhance shareholder services.").

### 6.   Independence and Conscientiousness of the Board

Plaintiffs fail to allege any facts about the Great-West Funds' trustees that would demonstrate that they failed to act independently and conscientiously. With respect to independence, there is an express presumption under the ICA that mutual fund trustees are disinterested, 15 U.S.C. § 80a-2(a)(9), and "a plaintiff's burden to overcome this presumption is a heavy one." *Amron*, 464 F.3d at 344. Here, none of the three

independent trustees on the Great-West Funds' Board is alleged to have any affiliation with GWCM.  (Compl. ¶ 8.)  Other than a conclusory allegation that the Board was "not disinterested in setting adviser compensation," (Compl. ¶ 113), there is not a single alleged fact that identifies how the independent trustees benefited from the advisory contract.  These allegations are insufficient to rebut the presumption of independence. *Hoffman*, 591 F. Supp. 2d at 540 (general allegations insufficient to survive dismissal because of express presumption of trustee independence); *ING Principal Prot. Funds Derivative Litig.*, 369 F. Supp. 2d 163, 172 (D. Mass. 2005).

The Complaint is essentially silent on the conscientiousness of the trustees. Instead, Plaintiffs claim only that the Board "rubber-stamped" and "consistently approved" the Investment Advisory Agreement.  (Compl. ¶ 111.)  But these allegations simply assume the fees were excessive and conclude from that false premise that the Board process must have been flawed.  This conclusory and circular reasoning fails to meet the *Iqbal/Twombly* standard.  *See ING Principal Prot. Funds*, 369 F. Supp. 2d at 172 ("Simply because the Board of Trustees approved the fee contracts at issue does not render the independent trustees 'interested'.").  Indeed, if these allegations were sufficient, it would be at odds with the statutory scheme, which gives significant deference to the Board and is designed to protect advisers from ill-founded suits.  *See In re Franklin*, 478 F. Supp. 2d at 687 (allowing plaintiffs to state a Section 36(b) claim based on allegations that could apply to a significant portion of fund complexes would violate Congressional intent).

Finally, Plaintiffs allege that the Board is given "hundreds of thousands of pages of information," but they did not get information about profitability, comparative fees or the nature of GWCM's services.  (Compl. ¶ 114.)  This allegation directly contradicts the funds' public filings that lay out the information considered by the Board in approving the advisory fees.  These SEC filings make clear that the trustees: (1) had "regular Board meetings held throughout the year;" (2) met and consulted with "independent legal counsel" and "with representatives of Lipper, Inc. ('Lipper'), an independent provider of investment company data;" (3) requested and considered follow-up information following the March meeting; and (4) considered information about the nature and quality of services provided by GWCM, comparative fee and performance data, profitability, economies of scale, and other factors.  *See* Exh. D, Great-West Funds, Inc. Semi-Annual Report, Great-West Profile II Funds, Jun. 30, 2015 at 38-40.  Because these public filings contradict Plaintiffs' conclusory allegations, the Court should not credit the Complaint's allegation that the Board "rubber-stamped" the agreement.  *See Redus-Tarchis v. N.Y. Life Inv. Mgmt., LLC*, Cv. No. 14-7991, 2015 WL 6525894, at *11 (D.N.J. Oct. 28, 2015) (finding that the independence and conscientiousness factor weighed in defendant's favor on a motion to dismiss where SEC filings showed that the Board received fee and performance information from third party consulting firms).

## III.   DISMISSAL WITH PREJUDICE IS APPROPRIATE

As noted above, Defendant provided Plaintiffs with detailed notice of the deficiencies in the Original and First Amended Complaints.  Having had multiple opportunities to cure the deficiencies herein, dismissal should be with prejudice.  *Carrillo*

*v. Suthers*, No. 12-cv-02034, 2014 WL 11297187, at *18 (D. Colo. Dec. 29, 2014); *Allen*

*Oil & Gas, LLC v. Klish*, 113 F. App'x 869, 871 (10th Cir. 2004).

## CONCLUSION

For the reasons stated above, the Moving Defendant respectfully requests that

the Court dismiss the Complaint in its entirety.

Dated:  May 2, 2016                          Respectfully submitted,


                                             /s/  Edward C. Stewart
                                             Edward C. Stewart (#23834)
                                             Wheeler Trigg O'Donnell LLP
                                             370 Seventeenth Street, Suite 4500
                                             Denver, CO  80202-5647
                                             Telephone  303.244.1800
                                             Facsimile  303.244.1879
                                             stewart@wtotrial.com

                                             Sean M. Murphy
                                             Milbank, Tweed, Hadley & McCloy LLP
                                             One Chase Manhattan Plaza
                                             New York, NY 10005
                                             Telephone  212.530.5688
                                             Facsimile  212.822.5688
                                             smurphy@milbank.com

                                             Robert M. Little
                                             Great-West Life & Annuity Insurance Company
                                             8525 East Orchard Road, 2T3
                                             Greenwood Village, CO 80111
                                             Telephone:  303.737.5089
                                             Facsimile:  303.737.1699
                                             bob.little@gwl.com

                                             *Attorneys for Defendant, Great-West Capital*
                                             *Management, LLC*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on May 2, 2016, I caused the foregoing to be electronically

filed with the Clerk of Court using the CM/ECF system, which will send notification to all

counsel of record.

- **Mark G. Boyko**
  mboyko@uselaws.com
- **Robert Michael Little**
  bob.little@greatwest.com
- **Sean Miles Murphy**
  smurphy@milbank.com, cfrye@milbank.com
- **Jerome Joseph Schlichter**
  jschlichter@uselaws.com, wballard@uselaws.com, rfreisinger@uselaws.com,
  hlea@uselaws.com, jredd@uselaws.com
- **Sean E. Soyars**
  ssoyars@uselaws.com
- **Edward Craig Stewart**
  stewart@wtotrial.com, powell@wtotrial.com, papsdorf@wtotrial.com
- **Michael Armin Wolff**
  mwolff@uselaws.com, rfreisinger@uselaws.com

*/s/ Edward C. Stewart*

Edward C. Stewart (#23834)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
stewart@wtotrial.com

*Attorneys for Defendant, Great-West Capital*
*Management, LLC*

26