IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00230-CMA-MJW

JOAN OBESLO, *et al.*
on behalf of GREAT-WEST FUNDS, INC.,

*Plaintiffs,*

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

*Defendant.*

### PLAINTIFFS' UNOPPOSED MOTION
### TO EXTEND DEADLINES FOR EXPERT DISCLOSURES

Plaintiffs respectfully move for an extension of the deadlines for disclosures of expert witnesses in the Court's March 29, 2016 Scheduling Order (Doc. 25) pursuant to Federal Rule of Civil Procedure 16. As grounds therefore, Plaintiffs state as follows:

### BACKGROUND

Plaintiffs commenced this action on January 29, 2016. Doc. 1. On March 22, 2016, following several meetings regarding the scope and timeline of discovery, the parties filed a joint Proposed Scheduling Order containing their respective positions on an appropriate discovery schedule. Doc. 20. Plaintiffs proposed the following deadlines relevant to this Motion:

- **April 3, 2017:**  Deadline to issue written discovery
- **June 30, 2017:**  Fact discovery cut-off

- **September 1, 2017:**  Plaintiffs' disclosure of expert witnesses

- **October 13, 2017:**  Defendant's disclosure of rebuttal expert witnesses

- **November 13, 2017:**  Plaintiffs' disclosure of rebuttal expert witnesses

- **January 15, 2018:**  Deadline for filing of dispositive motions.

Doc. 20 at 11-12.

Defendant's proposal did not include any fixed dates. Rather, Defendant suggested that discovery close "nine months from the decision on the motion to dismiss," with the deadline to issue written discovery "60 days prior to the fact discovery cut off." *Id.* at 13. Plaintiffs' expert disclosures would be due "60 days after the completion of fact discovery," Defendant's rebuttal expert disclosures would be due 45 days after that, and Plaintiffs' rebuttal expert disclosures would be due 30 days after that. *Id.* Dispositive motions would be due 60 days after Plaintiff's disclosure of rebuttal experts. *Id.*

The Court held a Rule 16(b) Scheduling Conference on March 29, 2016, after which it issued a Scheduling Order that set much more aggressive deadlines than either party had requested:

- **July 1, 2016:** Plaintiffs' disclosure of expert witnesses

- **August 1, 2016:**  Defendant's disclosure of rebuttal expert witnesses

- **September 1, 2016:**  Plaintiffs' disclosure of rebuttal expert witnesses

- **October 31, 2016:**  Discovery cut-off

- **November 30, 2016:**  Deadline for filing of dispositive motions.

Doc. 25 at 11. Thus, under the Court's schedule, Plaintiffs' initial expert disclosures are due by July 1, 2016 – just three months after the Scheduling Order was entered, and four months *before* fact discovery is set to close. *Id.* at 12. Defendant's rebuttal expert disclosures are due one month later, August 1, 2016, with Plaintiffs' rebuttal expert disclosures due on September 1, 2016 – still two months before the close of fact discovery. *Id.*

Given these extremely tight deadlines, Plaintiffs commenced work on discovery immediately. Plaintiffs served requests for production on Defendant on April 1, 2016, just two days after the Scheduling Order was entered. Plaintiffs followed up with further document requests on May 27, 2016 and May 31, 2016. Plaintiffs also issued a Rule 45 subpoena to non-party Great-West Funds, Inc. ("GWFI") seeking documents relating to the Independent Directors' review and analysis of Defendant's fees under §15(c) of the Investment Companies Act. *See* Ex. 1 (collecting Plaintiffs' requests for production and subpoena).

Defendant began production in response to Plaintiffs' document requests on May 2, 2016. Plaintiffs immediately commenced review of these productions. Defendant's initial productions included "a combination of hard copy scanned documents and electronically stored documents collected from our client in pdf format," Ex. 2 (June 8, 2016 email from Robert Liubicic), and contained very few communications among the Independent Directors, among Defendant's employees, or between the Independent Directors and Defendant. Many of these documents were thousands of pages long; a single file could contain many different materials (e.g., board minutes, Power Point

3

presentations, memoranda, etc.) without any index or way to easily navigate them.[1] This slowed the Plaintiffs' ability to efficiently review the documents considerably. Nevertheless, Plaintiffs pressed on with discovery, and on May 26, 2016 contacted Defendant to meet and confer regarding several issues with Defendant's document production. *See* Ex. 3 (email exchange between Michael A. Wolff, Sean Murphy, and Robert Liubicic). Plaintiffs also specifically requested copies of several critical documents that had been produced illegibly. Ex. 4 (email exchange between Michael A. Wolff and Benjamin Reed).

On June 6, 2016, Plaintiffs filed a Motion to Compel Production of Documents. Plaintiffs' motions specifically sought information Defendant had redacted from its production, the privilege of which Plaintiffs felt had been waived by Defendant's failure to provide a privilege log. Doc. 44.

On June 8, 2016, Plaintiffs received a letter from counsel for GWFI regarding the subpoena Plaintiffs' issued on May 27, 2016, which objected to any production on the grounds that all of GWFI's responsive documents were in Defendant's possession, and demanding such documents from GWFI would be duplicative and unnecessarily burdensome. Ex. 5 (June 8, 2016 letter from David E. Bennet). Plaintiffs met and conferred with GWFI's counsel on June 10, 2016 about the subpoena and scheduling

---

[1] On June 9, 2016, after Plaintiffs pointed out Defendant's failure to produce native files in its possession (contrary to the instructions in Plaintiffs' requests), Defendant produced native (and much less difficult to search) versions of many of the documents they had produced in early May. On June 13, 2016, Plaintiffs requested that Defendant provide them a log explaining which of the "hard copy scanned documents" the newly-produced native files corresponded to. Defendant did not oppose the request, but did not state whether it would do so, either. Ex. 6. At the time of this filing, Defendant had not yet provided the requested information.

depositions of GWFI's Independent Directors. Ex. 7 (June 10, 2016 email from Michael A. Wolff).

In addition to Plaintiffs' work pursuing party and non-party discovery, reviewing documents produced to date, meeting and conferring with both Defendant and GWFI, and filing the Motion to Compel, Plaintiffs have also engaged expert witnesses in an effort to meet the Court's July 1, 2016 deadline for initial expert disclosures. However, because (a) Defendant has repeatedly delayed providing the discovery Plaintiffs seek; (b) Defendant's production is not yet complete, (c) Plaintiffs will be unable to effectively take depositions until more documents are produced, and (d) experts will need to rely on all documents produced in this case as well as on the testimony of Defendant's representatives and the Independent Directors, there is little utility that can be gained in serving expert disclosures at this point. Plaintiffs are therefore proactively seeking a one-month extension of the deadlines for the parties to make expert disclosures by one month.

It is important to point out that Plaintiffs do not seek to extend any other deadline, including the deadlines for fact discovery or for filing dispositive motions. Provided that Defendant timely provides the discovery Plaintiffs have sought and are entitled to, the parties should be able to fully comply with the other deadlines set in the Scheduling Order. However, in order for the remaining deadlines to hold, it may be necessary for this Court to intervene and prevent Defendant from delaying this case further.[2]

---

[2] Defendant separately has filed a Motion to Consolidate Cases and For a Protective Order Staying Discovery. Doc. 44. Defendant's motion would stay discovery entirely, which would ultimately prevent this case from going to trial next January as the Court

5

## ARGUMENT

The Tenth Circuit has recognized that "[r]igid adherence to the pretrial scheduling order is not advisable[.]" *Sil-Flow, Inc. v. SFHC, Inc.*, 917 F. 2d 1507, 1519 (10th Cir. 1990) (citing *Smith Contracting Corp. v. Trojan Const. Co., Inc.*, 192 F.2d 234, 236 (10th Cir. 1951) ("Rigid adherence to pretrial conference agreements should not be exacted, especially where to do so will result in injustice to one party and relaxing of such agreement will not cause prejudice to the other party."). The Court has "wide discretion in its regulation of pretrial matters," *Sil-Flow*, 917 F. 2d at 1514, and may modify an existing schedule where "good cause" is shown, Fed. R. Civ. P. 16(b)(4).

Good cause exists where "the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (internal citations omitted); *see also Deghand v. Wal-Mart Stores* 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("The 'good cause' standard primarily considers the diligence of the party seeking the extension.") (internal citations omitted). "Events occurring after the entry of a scheduling order which were reasonably unforeseeable may suffice to establish good cause." *Oxaal v. Internet Pictures Corp.*, 2002 WL 485704, at *1 (N.D.N.Y. Mar. 27, 2002).

In considering motions to extend discovery deadlines, courts in the Tenth Circuit review all relevant factors, including: "(1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the non-moving party

---

desires. While Plaintiffs agree that the current deadlines for expert disclosures are impractical, Plaintiffs do not believe that further disruption of the discovery schedule is necessary.

would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence. *Waller v. Lovingier*, 2016 U.S. Dist. LEXIS 37710, at **9-10 (D. Colo. Mar. 22, 2016) (citing *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (attached as Ex. 8).

Here, there can be no question of Plaintiffs' diligence, or of Defendant's delay. Plaintiffs served their initial discovery requests within two days of the Rule 16(b) conference.  Because Defendant had 30 days under Rule 34 to serve responses and begin producing documents, Plaintiffs lost one of the three months they had between the entry of the Scheduling Order and the deadline for initial expert disclosures. Plaintiffs nonetheless have worked to secure necessary discovery not only from Defendant but from non-party GWFI as well. They have also moved swiftly to meet and confer with Defendant about what they believe to be deficiencies in Defendant's productions, and filed a motion to compel quickly when it was apparent that a resolution would not be reached. They have reviewed voluminous materials, a task made more difficult because of the unnavigable format in which documents were produced. And to be clear, Plaintiffs do not seek here to be able to disclose experts after the disclosure deadline has passed; rather, Plaintiffs have proactively filed this Motion so that their expert disclosures can be thorough and meaningful and be based on a more complete

record.[3] In light of Plaintiffs' diligent efforts, and the fact that they simply have not received the discovery needed in order to proceed with this case, Plaintiffs have shown good cause to extend the deadlines for expert disclosures. *See*, *e.g.*, *IT Portfolio, Inc. v. NER Data Corp.*, 2016 WL 1586449, at *2 (D. Colo. Apr. 20, 2016) (extending discovery deadline where movant had not received documents requested from non-moving party); *Abraham v. WPX Prod., LLC*, 2016 WL 548251, at **5, 19 (D.N.M. Jan. 25, 2016) (granting plaintiffs' motion to modify deadline for expert disclosures where defendant agreed that "the pretrial schedule in this case is unworkable"); *MGPI Processing, Inc. v. Penford Corp.*, 2016 U.S. Dist. LEXIS 7123, at **3-4 (D. Kan. Jan. 21, 2016) (good cause for extension of deadline shown where "Plaintiff would have needed additional time to consult outside experts on the discovery that was provided") (attached as Ex. 9).

Further, each of the other factors counsels in favor of extending the deadline for expert disclosures:

- ***Trial date:*** Trial in this case is scheduled to begin in January 2017, more than six months from now, and will not be affected by the extension of the deadline for expert disclosures. Moreover, Plaintiffs' requested modification to the Court's Scheduling Order specifically leaves all other deadlines intact.

---

[3] Though the deadline has not yet passed, Plaintiffs have chosen to bring this to the Court's attention now rather than risk missing a deadline. *Compare Fairchild v. Peak Med. Corp.*, 2010 WL 845974, at *2 (N.D. Okla. Mar. 5, 2010) (denying motion to extend deadline for expert disclosures because of plaintiff's "carelessness" in failing to request extension before deadline had passed).

- ***Lack of opposition:*** Defendant does not oppose this Motion, and has separately filed its own motion to stay discovery altogether, which Plaintiffs oppose. *See* Doc. 44.

- ***Lack of prejudice:*** Defendant would suffer no prejudice; its own deadline for disclosure of its experts would likewise be extended by 30 days.

- ***Foreseeable need for additional discovery:*** Both Plaintiffs and Defendant anticipated needing far more time for discovery than the Court allowed in the Scheduling Order. While Plaintiffs have done their best to comply with the deadlines as set, doing so is simply impracticable at this point.

- ***Likelihood of relevant evidence:*** Expert testimony will be critical in this case. Plaintiffs anticipate that their expert reports will demonstrate that the fees charged to the mutual funds were excessive and violated the "*Gartenberg*" factors. Expert analysis and opinion in the areas of finance, investment management, and the compensation of advisers to mutual funds will be used to show that Defendant did not comply with its fiduciary duty.

## **CONCLUSION**

Since the Court entered the Scheduling Order, Plaintiffs have diligently worked to comply with all deadlines so that this case can go to trial next January, as the Court intended. However, the current deadline for Plaintiffs' initial expert disclosures is unworkable in light of the vast number of documents yet to be produced, and deposition testimony that will be dependent on those documents.

June 13, 2016                              Respectfully submitted,

/s/ Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON LLP
Jerome J. Schlichter
Michael A. Wolff
Sean E. Soyars
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934
Email: JSchlichter@uselaws.com
MWolff@uselaws.com
SSoyars@uselaws.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE AND COMPLIANCE WITH L.R. 7.1(A)

I hereby certify that on June 13, 2016, I caused this document to be electronically filed via the Court's CM/ECF system, which will send notification to all counsel of record. I further certify that I conferred with counsel for Defendant, and Defendant does not oppose the relief requested herein.

/s/ Jerome J. Schlichter