IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00230-CMA-MJW

JOAN OBESLO, *et al.*, on behalf of GREAT-WEST FUNDS, INC.,

*Plaintiffs,*

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

*Defendant.*

Civil Action No. 16-cv-01215-CMA-CBS (consolidated case)

DUPLASS, ZWAIN, BOUREOUS, PFISTER & WEINSTOCK APLC 401(K) PLAN,

*Plaintiff,*

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

*Defendant.*

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENT
WITHHELD BY FORMER DIRECTOR DONNA LYNNE**

Plaintiffs in *Obeslo et al. v. Great-West Capital Management, LLC* (D.Colo. 16-230) respectfully move the Court to compel non-party Donna Lynne to produce an email responsive to a subpoena served on her that she is withholding under a claim of attorney-client privilege. She received the email at issue not from her own lawyer, but rather from counsel for *Defendant.* The claim of privilege is without merit, and the email should be produced immediately.

Plaintiffs and counsel for Ms. Lynne conferred on November 29 and 30, 2016, but were not able to resolve the dispute.

### Background

This is an action under §36(b) of the Investment Company Act (15 U.S.C. §80a-35(b))("the "Act"). Plaintiffs are shareholders of Great-West Funds, Inc., a registered investment company, commonly known as a mutual fund. Ms. Lynne is a former disinterested director[1] of Great-West Funds. Defendant is the registered investment adviser of Great-West Funds and thus has a statutory fiduciary duty "with respect to the receipt of compensation for services" it receives from Great-West Funds for providing advisory services. 15 U.S.C. §80a-35(b). Plaintiffs contend that Defendant breached this fiduciary duty by taking excessive compensation.

Defendant may not "charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Jones v. Harris Assoc. L.P.*, 559 U.S. 335, 346 (2010). Because of the close, intertwined relationship between a mutual fund and its investment advisor, "the forces of arm's-length bargaining do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy." *Burks v. Lasker*, 441 U.S. 471, 481 (1979). "Recognizing that the relationship between a fund and its investment adviser was 'fraught with potential conflicts of interest,' the Act

---

[1] The Act requires that at least 40 percent of a mutual fund company's board of directors comprise individuals who have no interest in or affiliation with the advisor. 15 U.S.C. §§ 80a-2(a)(19), 80a-10(a). The term "disinterested  director" as used herein refers to a director who is not defined as "interested" under the Act.

created protections for mutual fund shareholders." *Jones*, 559 U.S. at 338 (quoting *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536 (1984)). "[S]crutiny of investment-adviser compensation by a fully informed mutual fund board is the 'cornerstone of the … effort to control conflicts of interest within mutual funds.'" *Jones*, 559 U.S. at 348 (quoting *Burks*, 441 U.S. at 482). As such, "[t]he Act interposes disinterested directors as 'independent watchdogs' of the relationship between a mutual fund and its adviser." *Id.* (quoting *Burks*, 441 U.S. at 484). Disinterested directors have a duty to ensure that mutual funds "operate in the interest of all classes of their securities holders, rather than for the benefit of investment advisers, directors, or other special groups." *Tannenbaum v. Zeller*, 552 F.2d 402, 406 (2d Cir. 1977).

Plaintiffs served a subpoena *duces tecum* on Ms. Lynne as a former director of Great-West Funds.  The subpoena asked her to produce:

> All correspondence (including email) you have from January 2011 to the date of deposition regarding: Great-West Funds, Inc.; Great-West Capital Management, LLC; Great-West Life & Annuity Insurance Co.; or Great-West Financial.

Ms. Lynne provided a privilege log containing an entry for a February 29, 2016 email from Ryan Logsdon. Ex. 1, item 7. Ms. Lynne claimed this email provided "legal advice regarding director independence."  In correspondence, Ms. Lynne's attorney claimed that Ryan Logsdon was "fund counsel." Ex. 2. Plaintiffs asked for clarification as to "what you mean when you refer to Mr. Logsdon as 'Fund Counsel.' Specifically, please clarify what 'fund' you are referring to, and the nature of the supposed attorney-client relationship between Mr. Logsdon and the independent directors." Ex. 3. That attorney did not respond to these questions.

3

Ryan Logsdon is *not* counsel for either the disinterested directors or Great-West Funds. Counsel for the disinterested directors is Vedder Price. *See* Ex. 2. Ryan Logsdon instead is "Associate General Counsel, Products & Corporate" of Great-West Life & Annuity Insurance Company, the parent company of Defendant Great-West Capital Management LLC. Doc. 74-4 at 4, ¶3 (Defendant's Rule 26(a)(1) disclosures). In that capacity, he also has served as "in-house attorney[]" at Defendant Great-West Capital Management, LLC. Doc. 94 at 7 (Mem. 3 n.1). Plaintiffs pointed this out to Ms. Ms. Lynne's counsel, along with Defendant's counsel, in a November 15, 2016 email.

Plaintiffs conferred with Ms. Lynne's counsel, along with Defendant and Plaintiff in the *Duplass* matter (D.Colo. 16-1215), on November 29, 2016. Ms. Lynne's counsel informed Plaintiffs that Mr. Logsdon's February 29, 2016 email to Ms. Lynne contained purported legal advice regarding Ms. Lynne's obligations as a director of Great-West Funds as they relate to certain of Ms. Lynne's "outside business" interests. The following day, Ms. Lynne's counsel reiterated her position that the email was privileged and that she would not produce it. Ex. 4.

### Argument

In a federal question case, federal common law governs a claim of privilege. Fed.R. Evid. 501. The "party seeking to assert the attorney-client privilege has the burden of proving the applicability of the privilege." *In re Diasonics Sec. Litig.*, 110 F.R.D. 570, 573 (D. Colo. 1986)(Abram, J., citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984)). "The party must show that the privilege clearly applies to the documents in dispute by specifically setting forth the objections. General allegations are

insufficient to meet this burden of proof." *Id.* (citing *Peat, Marwick*, 748 F.2d at 542). The

privilege "must be narrowly construed." *Id.* at 572 (citing *In re Grand Jury Subpoena*

*Duces Tecum, Dorokee Co.*, 697 F.2d 277, 278 (10th Cir. 1983)).

The attorney-client privilege only protects communications between an attorney and

her client. *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997). The

email at issue here is not such a communication. Ryan Logsdon is not the attorney for

Great-West Funds, Inc. or its directors. He is the attorney for Defendant Great-West

Capital Management, LLC and its parent company, Great-West Life & Annuity

Insurance Company. Ms. Lynne was supposed to be an "independent watchdog[]"

(*Jones*, 559 U.S. at 348) ensuring that Defendant did not take excessive fees from

Great-West Funds and its shareholders. Ms. Lynne identified attorneys at Vedder Price

as *her* counsel and Mr. Logsdon as counsel for *Defendant*. Ex. 5 at 18:21–19:18.

Indeed, at her deposition, Ms. Lynne was represented by Vedder Price, not Mr.

Logsdon. *Id.* at 2. And Mr. Logsdon's email signature block identifies him as an

employee of and lawyer for Defendant—*not* as counsel to Great-West Funds, Inc. or its

directors. Ex. 6.

Since the directors of Great-West Funds Inc. owe a duty to the shareholders of

Great-West Funds, Inc. (such as the Plaintiffs) to negotiate Defendant's compensation

at arm's-length and limit it to a reasonable amount (*Jones*, 559 U.S. at 348), Ryan

Logsdon could not represent both Defendant *and* the directors without a conflict of

interest. Colo. RPC 1.7(a); D.C.Colo.LAttyR 2(a). Because Ryan Logsdon in fact is not

and could not be the attorney for these directors, no attorney-client privilege can apply

to the email. Indeed, it would be completely inappropriate for Mr. Logsdon, attorney for

Defendant, to be providing Ms. Lynne with "legal advice regarding director

independence." Ex. 1 at line 7. Ms. Lynne is essentially claiming to have been advised

about her independence as a Great-West Funds director by *the very entity from which*

*she is supposed to be independent*. This goes against the Act's insistence that

disinterested directors "operate in the interest of all classes of their securities holders,

rather than for the benefit of investment advisers, directors, or other special groups,"

*Tannenbaum*, 552 F.2d at 406, and defies all logic and common sense.

    And even if Mr. Logsdon's email were somehow deemed an attorney-client

communication with Ms. Lynne (again, it is not), Ms. Lynne still would not be allowed to

withhold it from Plaintiffs in this case. When a fiduciary seeks or receives legal advice in

their capacity as a fiduciary, the beneficiary of the fiduciary relationship is, in effect, the

"client" for whom the advice was obtained.[2] Therefore, legal advice provided to a

fiduciary cannot be withheld when its production is sought by the beneficiary. *United*

*States v. Jicarilla Apache Nation*, 564 U.S. 162, 178–79 (2011); *United States v. Mett*,

178 F.3d 1058, 1063 (9th Cir. 1999); *United States v. Evans*, 796 F.2d 264, 265–66 (9th

Cir. 1986). As the Supreme Court has explained, "courts identify the 'real client' based

on whether the advice was bought by the trust corpus, whether the trustee had reason

to seek advice in a personal rather than a fiduciary capacity, and whether the advice

---

[2] Plaintiffs previously explained why the fiduciary exception bars Defendant from withholding documents purportedly containing legal advice given to directors where the advice was procured in the director's capacity as a fiduciary. *See* Plaintiffs' Second Motion to Compel [Doc. 74] at 10–12 (Mem. 6–8).

could have been intended for any purpose other than to benefit the trust." *Jicarilla*, 564 U.S. at 178–79. Here, any advice Ms. Lynne may have received in her capacity as a fiduciary to Great-West Funds is subject to the fiduciary exception because (1) the legal advice was paid for by Great-West Funds, not Ms. Lynne personally; (2) there was no reason Ms. Lynne could have sought advice regarding "director independence" in her personal capacity; and (3) there is no conceivable purpose for Ms. Lynne seeking the advice other than to benefit Great-West Funds and its shareholders.[3]

The District Court for the Western District of Washington recently examined this exact issue and provides persuasive reasoning that supports Plaintiffs' position. *Kenny v. Pac. Inv. Mgmt. Co.*, No. 14-1987, 2016 U.S.Dist.LEXIS 162059 at *2–4 (W.D.Wash. Nov. 21, 2016) (filed as Ex. 7). The plaintiff mutual fund shareholder sought to compel the fund company's trustees to disclose documents over which they had claimed the attorney-client privilege. 2016 U.S.Dist.LEXIS 162059, at *2–4. As here, the plaintiff argued that the fiduciary exception barred the independent trustees from asserting the attorney-client privilege against fund shareholders. *Id.* at *6. Although recognizing that the fiduciary exception had never before been applied in a §36(b) case, *id.* at *8–9, the court held that: "[t]he Independent Trustees clearly owed a fiduciary duty to Plaintiff and other shareholders;" "[t]he communications at issue include legal advice for managing

---

[3] Fiduciary legal advice may be privileged "where the fiduciary seeks legal advice for its own protection against claims by the beneficiary." *Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-587-BNB-KMT, 2014 WL 943115, at *3 (D.Colo. Mar. 10, 2014). Here, the email from Mr. Logsdon to Ms. Lynne in no way related to her personal liability. It is supposedly about "director independence," not this lawsuit or any other pending or threatened lawsuit against Ms. Lynne or any of the other directors.

the fund, not personal advice to the Trustees[;] and the communications were not made in anticipation of this or any other litigation," *id.* at *14. Consequently, the court ordered production of the communications.

The reasoning of *Kenny* applies equally here. Although the investment company in *Kenny* was established as a trust, that is not a meaningful distinction. Investment companies commonly are established either as trusts or corporations. SEC Guide to Mutual Funds at 26 (hyperlinked); 15 U.S.C. §80a-2(a)(8) (investment "company" includes "corporation" and "trust"). The fiduciary duty of a corporate director to shareholders is similar to that of a trustee to the trust beneficiary. *See ATR-Kim Capital Partners, Inc. v. Bonilla*, No. 07-30309, 2007 Bankr.LEXIS 3566, at *5 (Bankr.N.D.Cal. Oct. 16, 2007)("The major authorities on trust law are in accord that corporate directors occupy a trust-like position ….")(citing Bogert & Bogert, <u>Law of Trusts & Trustees</u> §16 (2007) and <u>Restatement (Third) of Trusts</u> §§2, 5(g) (2003)) (filed as Ex. 8). The "beneficiaries" of the trust are the owners of the shares of the mutual fund. In each instance, the advice the fiduciary receives (whether as trustee or corporate director) is for the purpose of discharging her duties to the trust beneficiaries or corporate shareholders. Here, the purported advice Ms. Lynne received related to how she could discharge her fiduciary duties to the Great-West Funds shareholders. The email from Mr. Logsdon therefore should not be withheld from those same shareholders now.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that their motion to compel

Ms. Lynne to produce the email she received from Defendant's in-house attorney be

granted.

December 2, 2016                              Respectfully submitted,

                                             /s/ Michael A. Wolff
                                             SCHLICHTER, BOGARD & DENTON LLP
                                             Jerome J. Schlichter
                                             Michael A. Wolff
                                             Sean E. Soyars
                                             100 South Fourth Street, Suite 1200
                                             St. Louis, Missouri 63102
                                             Telephone: (314) 621-6115
                                             Facsimile: (314) 621-5934
                                             Email: JSchlichter@uselaws.com
                                             MWolff@uselaws.com
                                             SSoyars@uselaws.com

                                             Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2016, I caused this document to be
electronically filed via the Court's CM/ECF system, which will send notification to all
counsel of record, and that I sent this document to counsel for Donna Lynne via email.


                                             /s/ Michael A. Wolff