**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-CV-00230-CMA-MJW
(Consolidated for all purposes with Civil Action No. 1:16-cv-01215-CMA-MJW)

JOAN OBESLO,
ROYCE HORTON,
DANIEL FISHER,
NATHAN COMER,
STEVE MIGOTTI,
VALERIE MIGOTTI,
JAMES DIMAGGIO,
ANNE HALL, &
CAROL A. REYNON-LONGORIA,
on behalf of GREAT-WEST FUNDS, INC.,

    Plaintiffs,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

    Defendant.

---

DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK APLC 401(K) PLAN

    Plaintiff,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

    Defendant.

---

**NON-PARTY LT. GOV. DONNA LYNNE'S OPPOSITION TO *OBESLO* PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENT WITHHELD BY FORMER
DIRECTOR DONNA LYNNE**

Non-Party Lieutenant Governor Donna L. Lynne ("Lt. Gov. Lynne"), for her Opposition to *Obeslo* Plaintiffs' Motion to Compel Production of Document Withheld by Former Director Donna Lynne (the "Motion") (Dkt. 106), states as follows:

## I. INTRODUCTION

Plaintiffs have brought this Motion to compel Lt. Gov. Lynne to produce a single e-mail dated February 29, 2016 (the "Privileged E-mail") that was withheld from Lt. Gov. Lynne's document production in response to Plaintiffs' subpoena. Despite the fact that Lt. Gov. Lynne objected to Plaintiffs' subpoena on the grounds that it sought documents on topics unrelated to this lawsuit, Plaintiffs' Motion fails to address the relevance of this document. The Privileged E-mail relates to legal advice provided to her as an independent director of the Great-West Funds, Inc. ("Great-West Funds") by counsel for Great-West Funds regarding director independence with respect to the requirements under the Investment Company Act ("ICA") regarding directors "who have no interest in or affiliation with the advisor."[1] Significantly, the Privileged E-mail does not discuss investment advisory fees, the 15(c) process or this lawsuit.

In addition, Plaintiffs' argument that the Privileged E-mail cannot be privileged is flawed. Plaintiffs assert that Ryan Logsdon's e-mail to Lt. Gov. Lynne is not privileged because Mr. Logsdon was an attorney for Defendant Great-West Capital Management, LLC ("GWCM"), as well as GWCM's parent company. Plaintiffs, however, conveniently ignore the fact that Ryan Logsdon sent the e-mail at issue in his capacity as counsel for

---

[1] *See* 15 U.S.C. §§ 80a-2(a)(19), 80a-10(a). The term "independent director" as used herein refers to a director who is not an "interested person" as defined under the ICA. *See id.*

2

Great-West Funds. It is uncontested that Mr. Logsdon serves as counsel to Great-West Funds, as is clearly set forth in publicly available documents and in testimony by another independent director during her deposition in this very lawsuit. As Plaintiffs do not, and cannot, dispute that the Privileged E-mail meets all the other requirements for the attorney-client privilege, the Court should find that this document is protected by the attorney-client privilege. In any event, Lt. Gov. Lynne will provide a copy of the Privileged E-mail to the Court for an *in camera* inspection if the Court finds that such an inspection is necessary.

Finally, Plaintiffs incorrectly argue that the fiduciary exception to the attorney-client privilege should apply in this case, allowing Plaintiffs to view the Privileged E-mail. A fiduciary exception to the attorney-client privilege does not exist under federal common law, as the Tenth Circuit Court of Appeals has never held that such an exception exists. Moreover, even if such an exception did exist, it would not apply in this case because most courts that apply the exception, including district courts in the Tenth Circuit that have applied the exception, require a showing of good cause. Plaintiffs do not attempt to show that they have good cause for the exception to apply in this case, nor can they as the relevant factors weigh against applying the exception in this case. Because the document sought by this Motion is protected by the attorney-client privilege, the Court should deny Plaintiffs' Motion.

## II.     FACTUAL BACKGROUND

On January 29, 2016, Plaintiffs filed their Complaint against GWCM alleging a violation of Section 36(b) of the ICA, 15 U.S.C. § 80a-35(b). (Dkt. 1.) In their Complaint,

Plaintiffs allege that GWCM charged excessive investment advisory fees and seek recovery of fees already "paid" to GWCM by shareholders of Great-West Funds. (*Id.* ¶¶ 1, 100.) Plaintiffs have not brought any claim against Lt. Gov. Lynne.

On June 29, 2016, Plaintiffs served a subpoena on Lt. Gov. Lynne which requested Lt. Gov. Lynne's deposition and that Lt. Gov. Lynne produce certain documents prior to her deposition. In particular, Request No. 3 in Plaintiffs' subpoena requested that Lt. Gov. Lynne produce:

> All correspondence (including email) you have from January 2011 to the date of deposition regarding: Great-West Funds, Inc., Great-West Capital Management, LLC, Great-West Life & Annuity Insurance Co., or Great-West Financial.

In response, Lt. Gov. Lynne served written objections to Plaintiffs' subpoena, including Request No. 3. (A true and correct copy of the letter dated July 12, 2016 from David E. Bennett to Michael A. Wolff is attached hereto as Exhibit A.) Specifically, Lt. Gov. Lynne objected to Request No. 3 on the grounds that it sought "all documents" relating to Great-West Funds, which could include documents subject to the attorney-client privilege. (*Id.*) In addition, Lt. Gov. Lynne objected to Request No. 3 on the grounds that it is overly broad and unduly burdensome because it seeks documents related to topics that are unrelated to this lawsuit. (*Id.*)

Subject to her objections, Lt. Gov. Lynne produced over 200 documents in response to Plaintiffs' subpoena. Lt. Gov. Lynne also provided Plaintiffs with a privilege log for documents withheld from her production on the basis of privilege. (Ex. 1 to Pl. Motion.) Upon reviewing Lt. Gov. Lynne's privilege log, Plaintiffs' counsel demanded that Lt. Gov. Lynne produce four (4) of the documents listed on Lt. Gov. Lynne's privilege log.

4

In an effort to resolve the dispute in good faith, counsel for Lt. Gov. Lynne conferred with counsel for Plaintiffs, re-reviewed the four withheld documents sought by Plaintiffs, and ultimately agreed to produce to Plaintiffs three of the four requested documents. Counsel for Lt. Gov. Lynne informed counsel for Plaintiffs' counsel that the remaining document, the Privileged E-mail, would not be produced.

The Privileged E-mail is dated February 29, 2016. (Declaration of Donna Lynne ("Lynne Decl.") ¶ 3, a true and correct copy of which is attached hereto as Exhibit B.) As set forth on Lt. Gov. Lynne's privilege log, the Privileged E-mail was sent from Ryan Logsdon, Esq. to Lt. Gov. Lynne to provide legal advice to her as of the date of the e-mail regarding director independence. (*Id.*) Mr. Logsdon is the "Vice President, Counsel & Secretary" to Great-West Funds. (Excerpt from Statement of Additional Information for the Great-West Funds dated April 29, 2016 ("SAI") pp. 1, 30, a true and correct copy of which is attached hereto as Exhibit C; Excerpt from Confidential Deposition of Gail Klapper dated October 18, 2016 ("Klapper Dep.") p. 88, a true and correct copy of which is attached hereto as Exhibit D.) At the time the Privileged E-mail was sent, Lt. Gov. Lynne was an independent director of Great-West Funds. (Lynne Decl. ¶ 3, Ex. B.) No other persons were carbon copied on the Privileged E-mail, and Lt. Gov. Lynne has not shared the Privileged E-mail with any third parties. (*Id.* ¶ 4.) The Privileged E-mail does not discuss any of the following: (i) fees paid by GWCM, (ii) the 15(c) process or (iii) this lawsuit. (*Id.* ¶ 3.)

**III. ARGUMENT**

    **A. <u>Legal Standard</u>**

A trial court is entrusted with "sound discretion" to deal with discovery disputes, including motions to compel. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995). Under Rule 501 of the Federal Rules of Evidence, federal "common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege . . . ." For the attorney-client privilege to protect a communication between an attorney and client, the communication "must relate to legal advice or strategy sought by the client." *See Estate of Booker v. City & County of Denver*, No. 11-cv-00645-RBJ-KMT, 2012 WL 2871719, at *2–3 (D. Colo. July 12, 2012).

    **B. <u>The Court Should Find That the Privileged E-mail Is Protected By the Attorney-Client Privilege</u>**

In their Motion, Plaintiffs argue that the Privileged E-mail cannot be privileged because Mr. Logsdon is a lawyer for GWCM and therefore cannot be an attorney for any of the independent directors, including Lt. Gov. Lynne.[2] Plaintiffs are incorrect.

---

[2] As an initial matter, Plaintiffs have not satisfied their burden of showing that the Privileged E-mail is relevant to Plaintiffs' claim because they fail to even address this issue in their Motion. *See Havens v. Johnson*, No. 09-cv-01380-MSK-MEH, 2013 WL 1828245, at *3 (D. Colo. Apr. 30, 2013) (noting that when a discovery request is overly broad on its face or when relevancy is not "readily apparent," the party seeking discovery has the burden the show the relevancy of the request). Here, the Privileged E-mail does not discuss fees paid to GWCM, the 15(c) process or this litigation. In addition, because it was sent on February 29, 2016, more than a month after Plaintiffs commenced this lawsuit on January 29, 2016, it does not relate to the time period of GWCM's alleged prior wrongdoing as specified in Plaintiffs' Complaint. (*See* Lynne Decl. ¶ 3, Ex. B; Compl. ¶¶ 1, 100, Dkt. 1.) Given that Lt. Gov. Lynne properly objected to the Subpoena on the grounds that it was overly broad and unduly burdensome and sought documents "relating to topics that are unrelated to this lawsuit," this Court should deny Plaintiffs' Motion. (*See* Ex. A.)

6

4837-9619-8719.1

In the corporate context, the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). Additionally, the attorney-client privilege "protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997). There is no requirement that "the communication[] contain confidential matters revealed by the client earlier to the attorney." *Id.* at 1371.

In their Motion, Plaintiffs do not dispute that Mr. Logsdon is a licensed attorney. However, Plaintiffs apparently fail to recognize or simply ignore that Mr. Logsdon serves as "counsel" for Great-West Funds. As clearly set forth in a recent SAI, Mr. Logsdon is the "Vice President, Counsel & Secretary" to the "Great-West Funds," which is defined by the SAI to mean Great West Funds, Inc., open-end management investment company that offers all of the funds relating to Plaintiffs' lawsuit. (Excerpt from SAI pp. 1, 30, Ex. C; Klapper Dep. p. 88, Ex. D.) Therefore, as counsel for Great-West Funds, Mr. Logsdon is clearly capable of providing legal advice to Lt. Gov. Lynne, an independent director of Great-West Funds, regarding director independence issues.

Moreover, in the fund context, at least one court in the District of Colorado has held that communications may be protected by the attorney-client privilege when each of the parties to the communication has a "significant relationship" to the fund and are responsible for ensuring that the fund complies with the law. *See Ryskamp ex rel. Boulder*

7

*& Growth & Income Fund v. Looney*, No. 10-cv-00842-WJM-KLM, 2011 WL 38615437, at *5–7 (D. Col. Sept. 1, 2011).[3] In *Ryskamp*, the court addressed whether communications by counsel for the independent directors of a fund were protected by the attorney-client privilege when interested directors and non-attorney employees of the fund were present during the communications. *Id.* Because each of the parties had a "significant relationship" to the fund and had duties to act for the fund, the court held that such communications were privileged. *Id.* at *5. The court further reasoned that the communications were within the scope of the duties provided to the fund by its agents because all parties, including interested directors and counsel for the fund adviser, were "tasked with ensuring that their management of the fund complies with the law." *Id.* at *6.

In this case, Mr. Logsdon clearly has a duty to ensure that Great-West Funds complies with applicable federal securities laws and regulations, including requirements relating to director independence. Plaintiffs incorrectly assert that Mr. Logsdon is counsel for only "Great-West Life & Annuity Insurance Company, the parent company of [GWCM]," and not counsel for the Great-West Funds. (Pl. Motion p. 4.) To the contrary, Mr. Logsdon has held the role of "counsel" for the Great-West Funds since 2010, including on February 29, 2016, the date on which the Privileged E-mail was sent. (SAI p. 30, Ex.

---

[3] While the *Ryskamp* court applied Colorado law to the issue of whether the relevant communications were protected by the attorney-client privilege, federal law does not differ from Colorado law on this issue. *See Estate of Booker*, 2012 WL 2871719, at *2–3 (applying *Ryskamp* to a motion to compel when the issue of whether communications were protected by the attorney-client privilege was governed by federal law); *see also Alliance Constr. Sol'ns, Inc. v. Dep't of Corrections*, 54 P.3d 861, 865–66 (Colo. 2002) (applying Colorado law to the issue of whether the attorney-client privilege may protect communications with an independent contractor by relying on federal law as articulated in the Supreme Court's decision in *Upjohn*).

8

C; Klapper Dep. p. 88., Ex. D.) As counsel to the Great-West Funds, Mr. Logsdon has a duty, among other things, to ensure its compliance with regulatory requirements, including those relating to director independence. Thus, both Mr. Logsdon, as counsel to Great-West Funds, and Lt. Gov. Lynne, as an independent director of Great-West Funds at the time the Privileged E-mail was sent, had a significant relationship to the relevant funds.

In addition, both Mr. Logsdon and Lt. Gov. Lynne had duties to ensure that Great-West Funds met, and continued to meet, the legal requirements associated with director independence. As Plaintiffs' Motion to Compel expressly states, the Investment Company Act "requires that at least 40 percent of a mutual fund company's board of directors comprise individuals who have no interest in or affiliation with the advisor." (Pl. Motion p. 2 n.1 (citing 15 U.S.C. §§ 80a-2(a)(19), 80a-10(a)). Clearly, Mr. Logsdon and Lt. Gov. Lynne must be allowed to engage in privileged communications to allow Mr. Logsdon to provide the appropriate legal advice to ensure compliance with this requirement. Otherwise, the purpose of the attorney-client privilege, which is "to encourage full and frank communication between attorneys and their clients," would be subverted. *See Upjohn*, 449 U.S. at 389.

Moreover, even if Mr. Logsdon were counsel for only GWCM (and not counsel for Great-West Funds, which he clearly is), Mr. Logsdon would still have an interest in making sure that Great-West Funds meets the relevant legal requirements relating to director independence. GWCM obviously has an interest in ensuring that the funds it advises comply with all applicable federal securities laws and regulations relating to director independence, as any adverse consequences to the relevant funds of not complying with

9

such requirements would have an adverse effect on GWCM. Nothing prohibits counsel for a fund adviser from providing legal advice to an independent director on a matter, such as director independence, where the interests of the adviser and the fund are identical. *See Ryskamp*, 2011 WL 38615437, at *5–7 (finding communications between counsel for a fund's independent directors and the fund's interested directors and non-attorney employees to be privileged when all parties to the communication were tasked with ensuring that the fund complies with the law).

In their Motion to Compel, Plaintiffs further argue that Mr. Logsdon cannot be an attorney for, or provide legal advice to, the Funds or Lt. Gov. Lynne because it would create a conflict of interest for Mr. Logsdon.[4] (*Id.*) Here, however, no such conflict of interest exists. Instead, Plaintiffs confuse the issue of Great-West Funds' compliance with requirements for director independence with the compliance requirements for the 15(c) process. With respect to compliance with director independence requirements, Great-West Funds and GWCM have a common legal interest in ensuring that Great-West Funds at all times complies with all such requirements. Given that the 15(c) process (and its relation to GWCM's fees) could create the appearance that GWCM's interests are not aligned with the interests of Great-West Funds, the independent directors for the Funds retain and utilize Vedder Price as independent counsel. (Excerpt from Confidential Deposition of Donna Lynne dated October 19, 2016 ("Lynne Dep.") p. 19, a true and correct copy of which is attached hereto as Exhibit E.) Even if GWCM and Great-West

---

[4] Plaintiffs cite no legal authority for the proposition that advice provided by an attorney loses the protection of the attorney-client privilege simply because a conflict of interest exists. (*See* Pl. Motion pp. 5–6.)

10

Funds may arguably have interests that are not identical on one issue (the 15(c) process), a conflict of interest does not automatically arise on other issues where GWCM and Great-West Funds share a common legal interest, such as ensuring compliance with director independence requirements.

Notably, other than their argument that Mr. Logsdon cannot be an attorney for Lt. Gov. Lynne, Plaintiffs do not otherwise dispute the applicability of the attorney-client privilege to the Privileged E-mail. Nor can they, as the Privileged E-mail was sent from Mr. Logsdon, as counsel for Great-West Funds, to Lt. Gov. Lynne, as an independent director of Great-West Funds, to provide legal advice to Lt. Gov. Lynne regarding director independence. (Lynne Decl. ¶ 3.) No other persons were copied on the Privileged E-mail, fulfilling the requirement of confidentiality. (*Id.* ¶ 4.) Moreover, Plaintiffs have not argued, and cannot argue, that the privilege was waived because the Privileged E-mail was not shared with any third parties by Lt. Gov. Lynne. (*Id.*) Therefore, the Court should find that the Privileged E-mail is protected by the attorney-client privilege.

**C.     The Court Should Find That the Fiduciary Exception to the Attorney-Client Privilege Does Not Apply to the Privileged E-mail**

In addition, Plaintiffs argue that even if the Privileged E-mail is protected by the attorney-client privilege, the fiduciary exception to the attorney-client privilege should apply, allowing Plaintiffs (as shareholders of certain of the Funds) to access the Privileged E-mail. Again, however, Plaintiffs are incorrect.

As an initial matter, the Tenth Circuit has never recognized the fiduciary exception to the attorney-client privilege. *See Hermann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *8 (D. Kan. Apr. 11, 2012). It is unlikely that the Tenth Circuit would

recognize such an exception, and even more unlikely it would recognize the exception with respect to the Privileged E-mail. Notably, the Supreme Court case to which Plaintiffs cite, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 178–79 (2011), did not hold that federal common law acknowledges a fiduciary exception to the attorney-client privilege. Instead, the Court noted that courts have differed on whether a fiduciary exception applies and, because the parties in that case did not dispute the existence of such an exception, the Court assumed that it existed. *Id.* at 170 n.3.

In any event, even assuming arguendo that a fiduciary exception to the attorney-client privilege does exist, such an exception would not apply in this case because Plaintiffs cannot demonstrate "good cause" required to apply the exception. *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1104 (5th. Cir. 1970). In their Motion to Compel, Plaintiffs wholly ignore this requirement. Instead, Plaintiffs argue that the fiduciary exception should apply to the Privileged E-mail because "(1) the legal advice was paid for by Great-West Funds, not Ms. Lynne personally; (2) there was no reason Ms. Lynne could have sought advice regarding 'director independence' in her personal capacity; and (3) there is no conceivable purpose for Ms. Lynne seeking the advice other than to benefit Great-West Funds and its shareholders." (Pl. Motion p. 7.) Plaintiffs are wrong.

In *Garner*, the Fifth Circuit set forth the following factors that courts should consider in determining whether a party seeking to apply the fiduciary exception has established good cause: (1) the number of shareholders and the percentage of stock they represent, (2) the bona fides of the shareholders, (3) the nature of the shareholders' claim and whether it is obviously colorable, (4) the apparent necessity or desirability of the

12

shareholders having the information and the availability of it from other sources, (5) whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality, (6) whether the communication related to past or to prospective actions, (7) whether the communication is of advice concerning the litigation itself, (8) the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing, (9) the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.  *Garner*, 430 F.2d at 1104.

Here, the majority of the *Garner* factors do not support a finding of good cause. First, Plaintiffs cannot demonstrate good cause because they collectively own less than one percent of the outstanding shares of the relevant funds and are only nine out of thousands of shareholders in the funds.  *See Ryskamp*, 2011 WL 3861437, at *11 (holding that plaintiffs could not demonstrate good cause where they owned less than one percent of shares of a fund); *Gerrits v. Brannen Banks of Fla., Inc.*, 138 F.R.D. 574, 578–79 (D. Colo. 1991) (holding that the fiduciary exception did not apply to plaintiffs who held six percent of the defendant's stock).  Moreover, as GWCM set forth in its pending motion to dismiss, Plaintiffs lack standing on behalf of 46 of Great-West's funds which they do not own.  (*See* Dkt. 35.)

Additionally, the nature of Plaintiffs' claim is a lawsuit brought pursuant to Section 36(b) of the ICA, which does not allow recovery against independent directors.  *See* 15 U.S.C. § 80a-35(b)(3).  As Plaintiffs are seeking to overcome the attorney-client privilege with respect to legal advice provided to Lt. Gov. Lynne, an independent director of Great-

13

West Funds and a non-party to this lawsuit, this factor does not favor a finding of good cause. In any event, Plaintiffs' lawsuit does not accuse GWCM of any criminal conduct. (*See* Dkt. 1.) Moreover, the Court should not find that Plaintiffs' claim is colorable, as it has not yet survived GWCM's motion to dismiss. (*See* Dkt. 35.)

Further, there is no need for Plaintiffs to access the Privileged E-mail because, as set forth above, the e-mail does not discuss fees paid by the Funds or the 15(c) process. Moreover, Plaintiffs can, and in fact did, question Lt. Gov. Lynne and other witnesses about director independence. Specifically, Plaintiffs' counsel questioned Lt. Gov. Lynne about her understanding of director independence during her deposition. (*See* Lynne Dep. pp. 50, 53–57, Ex. E.) Therefore, Plaintiffs cannot credibly argue that they are unable to seek information regarding director independence from other sources in discovery.

Notably, the e-mail sought by Plaintiffs is dated February 29, 2016, more than a month after Plaintiffs commenced this lawsuit on January 29, 2016, and provides legal advice to Lt. Gov. Lynne relating to the date on which the e-mail was sent. In these circumstances, where a privileged communication took place after the lawsuit was filed and after the acts in question were committed, courts have found that good cause did not exist. *See In re LTV Sec. Litig.*, 89 F.R.D. 595, 607 (N.D. Tex. 1981) (declining to apply the fiduciary exception where a shareholder class sought "after-the-fact" communications which occurred after the past misconduct alleged by the shareholder class); *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 31–32 (N.D. Ill. 1980) (finding that the plaintiffs

14

did not have good cause when the information sought pertained in large measure to prospective conduct rather than past conduct).

In their Motion to Compel, Plaintiffs rely on *Kenny v. Pac. Inv. Mgmt. Co. LLC*, No. C14-1987-RSM, 2016 U.S. Dist. LEXIS 162059 (W.D. Wash. Nov. 21, 2016), in support of their argument that the fiduciary exception applies to the Privileged E-mail. (Pl. Motion pp. 7–8.) In *Kenny*, the plaintiff argued that the Ninth Circuit, the circuit in which the district court resided, had not adopted a requirement of demonstrating good cause in order to apply the fiduciary exception. *Id.* at *12. District court cases in the Tenth Circuit applying the fiduciary exception, however, have followed *Garner* and required a showing of good cause. *See Ryskamp*, 2011 WL 3861437, at *11; *Gerrits*, 138 F.R.D. at 578 n.3.

Moreover, the fund in *Kenny* was organized as a Massachusetts business trust, whereas here, Great-West Funds is incorporated as a Maryland corporation. *See Ryskamp*, 2011 WL 3861437, at *10–11 (declining to apply the fiduciary exception to the attorney-client privilege with respect to communications between a fund organized as a Maryland corporation and its counsel). Additionally, unlike this case, the communications in *Kenny* pre-dated the filing of the plaintiffs' complaint. *See In re LTV*, 89 F.R.D. at 607 (declining to apply the fiduciary exception where the communications at issue occurred after the alleged past misconduct).

Finally, the Court should reject the *Kenny* decision because applying the fiduciary exception to this case would cause a chilling effect on the ability of fund directors to freely communicate with and seek legal advice from their counsel. As the Supreme Court has recognized, the purpose of the attorney-client privilege is "to encourage full and frank

communication between attorneys and their clients." *See Upjohn*, 449 U.S. at 389.  In an environment where their communications with counsel will be subject to public scrutiny, fund directors may become hesitant to seek (or freely ask questions to fully understand) legal advice from their counsel regarding issues such as contract renewal, compensation, regulatory compliance and governance issues.  Such a result would clearly harm, not help, mutual fund shareholders.

Therefore, because Plaintiffs have failed to supply this Court with evidence and legal authority supporting a finding of good cause, the Court should hold that the fiduciary exception does not apply to the Privileged E-mail.

## IV.   CONCLUSION

For the above reasons, the Court should deny Plaintiffs' Motion to Compel.

Respectfully submitted this 22nd day of December, 2016.

        KUTAK ROCK LLP

        *s/ Thomas W. Snyder*
        Thomas W. Snyder
        1801 California Street, Suite 3000
        Denver, CO 80202
        Tel: (303) 297-2400
        Fax: (303) 292-7799
        thomas.snyder@kutakrock.com

        *ATTORNEYS FOR MOVANTS*
        *GAIL HEITLER KLAPPER,*
        *STEPHEN G. McCONAHEY and*
        *LIEUTENANT GOVERNOR DONNA L. LYNNE*

        <u>Of Counsel</u>
        David E. Bennett
        Randall M. Lending
        Vedder Price P.C.
        222 North LaSalle Street, Suite 2600
        Chicago, IL 60601-1003
        Tel: (312) 609-7500
        dbennett@vedderprice.com
        rlending@vedderprice.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2016, I electronically filed the foregoing **NON-PARTY LT. GOV. DONNA LYNNE'S OPPOSITION TO *OBESLO* PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENT WITHHELD BY FORMER DIRECTOR DONNA LYNNE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Counsel for Plaintiffs**:

Michael A. Wolff
Schlichter Bogard & Denton LLP
100 South 4th Street, Suite 900
St. Louis, MO 63102
314-621-6115 (office)
314-504-5935 (cell)
MWolff@uselaws.com

Sean E. Soyars
Schlichter Bogard and Denton, LLP
100 South 4th Street, Suite 1200
St. Louis, MO 63102
314-621-6115
SSoyars@uselaws.com

Jerome Joseph Schlichter
Schlichter Bogard and Denton, LLP
100 South 4th Street, Suite 1200
St. Louis, MO 63102
314-621-6115
jschlichter@uselaws.com

**Counsel for Defendant**:

Edward Craig Stewart
Wheeler Trigg O'Donnell, LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
303-244-1800
stewart@wtotrial.com

Robert Michael Little
Great-West Life and Annuity Insurance Company
8515 East Orchard Road
Tower II
5th Floor
Greenwood Village, CO 80111
303-737-5089
bob.little@greatwest.com

Robert Liubicic
Milbank Tweed Hadley & McCloy, LLP-Los Angeles
601 South Figueroa Street
Los Angeles, CA 90017
213-892-4525
rliubicic@milbank.com

Sean Miles Murphy
Milbank Tweed Hadley & McCloy, LLP-New York
One Chase Manhattan Plaza
New York, NY 10005
212-822-5688
smurphy@milbank.com

**Counsel for Duplass Plaintiff**:

Kyle Geoffrey Bates
Schneider Wallace Cottrell Konecky
Wotkyns LLP-Emeryville
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100
kbates@schneiderwallace.com

Mark T. Johnson
Schneider Wallace Cottrell Konecky
Wotkyns LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
415-421-7100
mjohnson@schneiderwallace.com

*s/ Thomas W. Snyder*
Thomas W. Snyder
KUTAK ROCK LLP
1801 California St., Suite 3000
Denver, CO  80202
Tel:  303-297-2400
Fax:  303-292-7799
thomas.snyder@kutakrock.com