IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:16-cv-00230-CMA-MJW (Consolidated for all purposes with Civil Action No. 1:16-cv-01215-CMA-MJW)

JOAN OBESLO,
ROYCE HORTON,
DANIEL FISHER,
NATHAN COMER,
STEVE MIGOTTI,
VALERIE MIGOTTI,
JAMES DIMAGGIO,
ANNE HALL,
CAROL A. REYNON-LONGORIA,
on behalf of GREAT-WEST FUNDS, INC.,

     Plaintiffs,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

     Defendant.

_____

DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK APLC 401(K)
PLAN,

     Plaintiff,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

     Defendant.

---

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DOCUMENT WITHHELD BY DONNA LYNNE**

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ........................................................................................... 2

LEGAL STANDARD .................................................................................... 3

ARGUMENT................................................................................................. 4

     I.     THE EMAIL AT ISSUE IS A PRIVILEGED COMMUNICATION ............... 4

          A.     The Email at Issue Contains Legal Advice from Fund
                 Counsel to a Fund Director ............................................................. 4

          B.     Even if Mr. Logsdon Represented Only the Adviser, the
                 Email at Issue Would Still Be Privileged .......................................... 6

     II.    THE FIDUCIARY EXCEPTION TO THE ATTORNEY-CLIENT
          PRIVILEGE IS INAPPLICABLE ................................................................ 8

          A.     The Fiduciary Exception Does Not Apply to Attorney-Client
                 Communications with Directors of Mutual Fund Boards................. 9

          B.     The Recent *Kenny* Decision Is an Outlier, and Is
                 Distinguishable............................................................................... 10

          C.     Plaintiffs Fail to Show "Good Cause" to Defeat Privilege .............. 13

CONCLUSION ........................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*In re American Mutual Funds Fee Litigation*,
    No. CV 04-5593 GAF (RNBx), 2009 WL 5215755 (C.D. Cal. Dec. 28,
    2009)................................................................................................................. 7

*Fitzpatrick v. American International Group, Inc.*,
    272 F.R.D. 100 (S.D.N.Y. 2010) ............................................................... 15

*Galena Street Fund, L.P. v. Wells Fargo Bank, N.A.*,
    No. 12-cv-00587-BNB-KMT, 2014 WL 943115 (D. Colo. Mar. 10, 2014)........... 12, 13

*Garner v. Wolfinbarger*,
    430 F.2d 1093 (5th Cir. 1970) ........................................................ 8, 9, 14

*Gerrits v. Brannen Banks of Florida, Inc.*,
    138 F.R.D. 574 (D. Colo. 1991) ............................................................... 14

*Herrmann v. Rain Link, Inc.*,
    No. 11-1123-RDR, 2012 WL 1207232 (D. Kan. Apr. 11, 2012) ................................. 8

*Kenny v. Pacific Investment Management Co. LLC*,
    No. C14-1987-RSM, 2016 WL 6836886 (W.D. Wash. Nov. 21, 2016)......... 10, 11, 13

*In re Omnicom Group Inc. Securities Litigation*,
    233 F.R.D. 400 (S.D.N.Y. 2006) ....................................................... 14, 15

*Ryskamp ex rel. Boulder Growth & Income Fund v. Looney*,
    No. 10-cv-00842-WJM-KLM, 2011 WL 3861437 (D. Colo. Sept. 1,
    2011)................................................................................... 4, 5, 6, 8, 14

*Sawyer v. Southwest Airlines*,
    Nos. Civ.A.01-2385-KHV, Civ.A.01-2386-KHV, 2002 WL 31928442 (D.
    Kan. Dec. 23, 2002) ................................................................................. 6

*Solis v. Food Employers Labor Relations Association*,
    644 F.3d 221 (4th Cir. 2011)..................................................................... 9

*In re Teleglobe Communications Corp.*,
    493 F.3d 345 (3d Cir. 2007) .................................................................. 8, 9

*United States v. Jicarilla Apache Nation*,
   564 U.S. 162 (2011) .................................................................. 10, 11, 13

*United States v. Mett*,
   178 F.3d 1058 (9th Cir. 1999) ........................................................ 3, 10, 12

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ................................................................................ 3

*Wachtel v. Health Net, Inc.*,
   482 F.3d 225 (3d Cir. 2007) ................................................................... 9

*Ward v. Succession of Freeman*,
   854 F.2d 780 (5th Cir. 1988) ............................................................... 8, 14

*Wellinger Family Trust 1998 v. Hartford Life & Accident Insurance Co.*,
   No. 11-cv-02568-CMA-BNB, 2013 WL 2444714 (D. Colo. June 5,
   2013) ........................................................................................................ 3

## Statutes

15 U.S.C. § 80a-10(a) ................................................................................. 7

15 U.S.C. § 80a-35(b) ................................................................................. 2

## Other Authorities

Implementation of Standards of Professional Conduct for Attorneys,
   Exchange Act Release No. 8185, 79 S.E.C. Docket 1351, 2003 WL
   193527 (Jan. 29, 2003) .......................................................................... 7

*Overview of Fund Governance Practices, 1994-2010* at 16, Investment
   Company Institute, https://www.idc.org/pdf/pub_11_fund_
   governance.pdf. ..................................................................................... 4

*Practical Guidance for Mutual Fund Directors: Board Governance and
   Review of Investment Advisory Agreements* 9, Mutual Fund Directors
   Forum, http://www.mfdf.org/images/uploads/newsroom/MFDF_
   Practical_ Guidance_Oct2013_(web).pdf ........................................ 4, 6, 7

Defendant Great-West Capital Management, LLC ("GWCM") opposes the *Obeslo* Plaintiffs' Motion to Compel Production of Document Withheld by Former Director Donna Lynne ("Plaintiffs' motion" or "Pls.' Br."). GWCM is filing this opposition to the motion because the motion bears on issues important to GWCM and the Great-West Funds (the "Funds"). GWCM also joins in the arguments made in Lt. Governor Lynne's opposition to Plaintiffs' motion.

## PRELIMINARY STATEMENT

Plaintiffs' motion seeks the production of an email containing privileged legal advice sent by Ryan Logsdon, a lawyer and counsel to the Funds, to Lt. Governor Donna Lynne, a former independent director of Great-West Funds, Inc. The email was sent after the *Obeslo* Complaint was filed and concerns the issue of director independence. Plaintiffs contend that Mr. Logsdon is not counsel to the independent directors or the Funds and that therefore any legal advice he provided to Lt. Governor Lynne is not protected by the attorney-client privilege. Alternatively, Plaintiffs contend that even if the email is privileged it should be disclosed pursuant to the "fiduciary exception" to the attorney-client privilege that has been recognized by some courts (but not the Tenth Circuit). Plaintiffs' attempt to circumvent the privilege should be rejected for multiple reasons.

First, Mr. Logsdon is counsel to the Funds on whose Board Lt. Governor Lynne was serving as a director at the time of the email. Legal advice provided by Mr. Logsdon to directors of the Great-West Funds, Inc. Board of Directors is therefore privileged and/or subject to the common interest doctrine.

Second, Mr. Logsdon also serves as counsel to GWCM, the adviser to the Funds.  Great-West Funds, Inc. and GWCM share a common legal interest in ensuring Great-West Funds, Inc.'s compliance with federal securities laws and regulations. Therefore, legal advice provided by Mr. Logsdon that is designed to ensure compliance is protected by the common interest doctrine.

Third, Plaintiffs' attempt to invoke the fiduciary exception to the attorney-client privilege is unavailing.  The Tenth Circuit has yet to even recognize that exception.  In addition, other than a single case from the Western District of Washington, no court has applied the exception to require disclosure of privileged communications with directors in a Section 36(b) case.  That lone authority was wrongly decided.  It is also readily distinguishable on its facts.  Finally, even if the exception were held to potentially apply in this case, Plaintiffs have failed to demonstrate the required good cause for piercing the privilege.

In light of the foregoing, Plaintiffs' motion should be denied.

## BACKGROUND

Plaintiffs are nine individuals who are purported shareholders in mutual funds that are series within Great-West Funds, Inc., a registered investment company under the Investment Company Act of 1940 ("ICA").  GWCM serves as investment adviser to the Funds.  Plaintiffs allege derivative claims against GWCM on behalf of Great-West Funds, Inc., contending that GWCM charges the Funds excessive fees in violation of Section 36(b) of the ICA.  15 U.S.C. § 80a-35(b).  Until recently, Lt. Governor Lynne was an independent director of Great-West Funds, Inc.

Plaintiffs' subpoena requested that Lt. Governor Lynne produce "[a]ll correspondence (including email) [she] ha[s] from January 2011 to the date of deposition regarding: Great-West Funds, Inc.; Great-West Capital Management, LLC; Great-West Life & Annuity Insurance Co.; or Great-West Financial." Pls.' Br. at 3. Lt. Governor Lynne has withheld from production a February 29, 2016 email from Mr. Logsdon, which he sent to Lt. Governor Lynne after the *Obeslo* action was filed, concerning "legal advice regarding director independence." *Id.* Plaintiffs seek to compel production of that email.

## LEGAL STANDARD

"[T]he attorney-client privilege 'protects from forced disclosure any communication from an attorney to his client when made in the course of giving legal advice[.]'" *Wellinger Family Trust 1998 v. Hartford Life & Accident Ins. Co.*, No. 11-cv-02568-CMA-BNB, 2013 WL 2444714, at *2 (D. Colo. June 5, 2013) (quoting *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997)). It is "the oldest of the privileges for confidential communications known to the common law[,]" and "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Due to the essential role that the attorney-client privilege plays in encouraging full and frank communication, "hard cases should be resolved in favor of the privilege, not in favor of disclosure." *See United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999).

## ARGUMENT

### I.   THE EMAIL AT ISSUE IS A PRIVILEGED COMMUNICATION

#### A.   The Email at Issue Contains Legal Advice from Fund Counsel to a Fund Director

Plaintiffs argue that the at-issue email is not privileged because Mr. Logsdon supposedly "is *not* counsel for either the disinterested directors or Great-West Funds" but serves only as counsel for GWCM and its parent company, Great-West Life & Annuity Insurance Co. ("GWL&A"). Pls.' Br. at 4. Plaintiffs are incorrect.

Mr. Logsdon indisputably serves as Vice President, Counsel & Secretary to Great-West Funds. Ex. A, Excerpt of Great-West Funds, Inc. Statement of Additional Information 30 (Apr. 29, 2016). As counsel to the Funds, Mr. Logsdon provides legal advice to directors of the Funds, which is consistent with common practice in the industry.[1]

The District of Colorado has recognized that the attorney-client privilege may attach to communications between a fund's counsel and its directors, as a mutual fund is an "inanimate entity" that "must [act] through its agents." *Ryskamp ex rel. Boulder*

---

[1] "Some independent directors have their own dedicated counsel, others formally retain counsel with the fund, and still others have no dedicated counsel but instead rely on counsel to the fund . . . ." *See Overview of Fund Governance Practices, 1994-2010* at 16, Investment Company Institute [hereinafter *Overview of Fund Governance Practices*], https://www.idc.org/pdf/pub_11_fund_governance.pdf. Therefore, "independent directors may elect to . . . rely on counsel to the fund[,]" *id.* at 16, and "[i]n instances where independent directors formally or informally rely on counsel to the fund, . . . the fund counsel would constitute 'independent legal counsel.'" *Id.* at 17. A recent study showed that 35% of mutual fund boards rely on fund counsel as their own counsel. *See Practical Guidance for Mutual Fund Directors: Board Governance and Review of Investment Advisory Agreements* 9 n.23, Mutual Fund Directors Forum, http://www.mfdf.org/images/uploads/newsroom/MFDF_Practical_Guidance_Oct2013_(web).pdf (citing *Overview of Fund Governance Practices* at 16-17).

*Growth & Income Fund v. Looney*, No. 10-cv-00842-WJM-KLM, 2011 WL 3861437, at

*4, *5 (D. Colo. Sept. 1, 2011) ("Because 'a corporation can only act through its officers,

directors, agents and employees, . . . communications between corporate counsel and

company personnel are privileged so long as they concern matters within the scope of

the employees' corporate duties.'" (citation omitted)).  In *Ryskamp*, which involved a

mutual fund organized as a Maryland corporation just as are the Funds, the court held

that an attorney-client relationship existed between parties who had a "significant

relationship to the Fund" and "clearly ha[d] [a] duty to act for the Fund."  *Id.* at *3, *5; *see*

Ex. A, Excerpt of Great-West Funds, Inc. Statement of Additional Information 1 (Apr. 29,

2016).

Here, Lt. Governor Lynne received legal advice regarding director independence

from Mr. Logsdon in his capacity as counsel to the Funds.  As counsel to the Funds, Mr.

Logsdon has a duty to act for the Funds and ensure the Funds' compliance with any

applicable federal securities laws and regulations, including those related to director

independence.  Because both Lt. Governor Lynne and Mr. Logsdon have a significant

relationship to the Funds, the legal advice Mr. Logsdon provided Lt. Governor Lynne

regarding director independence is privileged.

Furthermore, even if the Court were to find that the independent directors are not

the clients of Fund counsel, the common interest doctrine protects the legal advice that

Mr. Logsdon provided to Lt. Governor Lynne in his role as Fund counsel.  *See*

*Ryskamp*, 2011 WL 3861437, at *7 ("Communications shared with third persons who

have a common legal interest with respect to the subject matter thereof will be deemed

neither a breach nor a waiver of the confidentiality surrounding the attorney-client relationship." (citation omitted)); *Sawyer v. Southwest Airlines*, Nos. Civ.A.01-2385-KHV, Civ.A.01-2386-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002) ("The common interest doctrine thus acts as an exception to the general waiver rule by facilitating cooperative efforts among parties who share common interests." (footnote omitted)).  A common legal interest exists between the independent directors and the Funds in ensuring director independence and the Funds' compliance with applicable laws and regulations, as it does for most purposes.  *See Practical Guidance for Mutual Fund Directors: Board Governance and Review of Investment Advisory Agreements 9*, Mutual Fund Directors Forum [hereinafter "*Practical Guidance for Mutual Fund Directors*"], http://www.mfdf.org/images/uploads/newsroom/MFDF_Practical_Guidance_Oct2013_(web).pdf ("For most purposes, the interests of the fund are aligned with those of independent directors who oversee the fund on behalf of shareholders.").

### B.    Even if Mr. Logsdon Represented Only the Adviser, the Email at Issue Would Still Be Privileged

Even if Plaintiffs were correct that Mr. Logsdon only serves as counsel to GWCM and GWL&A (they are not), or even if Mr. Logsdon sent the email in his capacity as counsel to GWCM, the legal advice that Mr. Logsdon provided to Lt. Governor Lynne would similarly be protected from disclosure by the common interest doctrine.

The District of Colorado and other courts recognize that a common legal interest may exist between counsel to an adviser and the directors of a fund.  *Ryskamp*, 2011 WL 3861437, at *8 (applying common interest doctrine to communications in board minutes "due to the common interest of all parties to formulate a common legal strategy

regarding regulatory compliance issues"); *In re Am. Mut. Funds Fee Litig.*, No. CV 04-5593 GAF (RNBx), 2009 WL 5215755, at *55 n.14 (C.D. Cal. Dec. 28, 2009) ("Courts have recognized that . . . once litigation under Section 36(b) is commenced . . . the directors often have a common interest with the adviser[.]"), *aff'd sub nom. Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011).

A common legal interest clearly exists between GWCM and the Great-West Funds, Inc. Board of Directors with regard to Great-West Funds, Inc.'s compliance with federal securities laws and regulations.  *See Practical Guidance for Mutual Fund Directors* 6 ("In most circumstances the board and management have aligned interests in serving shareholders . . . .").  The ICA expressly requires that a registered investment company, such as Great-West Funds, Inc., be overseen by a board of directors, 40% of whom must be independent.  *See* 15 U.S.C. § 80a-10(a).  GWCM and the Great-West Funds, Inc. Board of Directors share a common interest in ensuring that the directors who are designated as independent are, in fact, independent.  Obviously, if Great-West Funds, Inc. faced legal consequences for failing to ensure that at least 40% of its directors are independent, both Great-West Funds, Inc. and GWCM would be detrimentally affected, heightening the need for an independent director to be able to engage in full and frank conversations with counsel to the adviser. [2]

_____

[2] The SEC recognizes that there are circumstances in which counsel to the adviser may be deemed to be representing the investment company (*i.e.*, the Funds) before the SEC, such as where the adviser's counsel "prepares, or assists in preparing, materials" to be submitted to or filed with the SEC.  Implementation of Standards of Professional Conduct for Attorneys, Exchange Act Release No. 8185, 79 S.E.C. Docket 1351, 2003 WL 193527 (Jan. 29, 2003).

## II.    THE FIDUCIARY EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE IS INAPPLICABLE

Plaintiffs further claim that, even if Mr. Logsdon's email is privileged, its production should be compelled under the so-called fiduciary exception to the privilege. *See* Pls.' Br. at 6.  The Tenth Circuit has neither adopted the fiduciary exception nor addressed its scope.  *See Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *8 (D. Kan. Apr. 11, 2012).

Some courts outside the Tenth Circuit have held that the attorney-client privilege can be overcome when the party asserting the privilege owes fiduciary duties to the party seeking disclosure.  *See, e.g.*, *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir. 1970).  In their Reply in Support of Second Motion to Compel filed against GWCM, Plaintiffs argued that *Garner* "applies to shareholder derivative actions by plaintiff-shareholders against their corporation's officers and directors[.]"  Pls.' Reply in Supp. of Second Mot. to Compel Produc. of Docs. at 8, Sept. 6, 2016, ECF 79.  *Garner* requires the party seeking to take advantage of the fiduciary exception to make a showing of "good cause" in order to pierce the privilege.  *Garner*, 430 F.2d at 1103-04 (requiring stockholders "to show cause why" the attorney-client privilege should be waived); *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 384 (3d Cir. 2007) ("Debtors should be able to put aside the privilege upon showing good cause."); *Ward v. Succession of Freeman*, 854 F.2d 780, 787 (5th Cir. 1988) (privileged communications did not need to be disclosed because "plaintiffs have failed to demonstrate good cause"); *Ryskamp*, 2011 WL 3861437, at *11 ("Thus, shareholders are given access to otherwise privileged information upon a showing of good cause." (citing *Gerrits v.*

*Brannen Banks of Fla., Inc.*, 138 F.R.D. 574, 577-78 (D. Colo. 1991))).  Plaintiffs bear

the burden of establishing that the exception applies.  *See, e.g.*, *In re Teleglobe*

*Commc'ns Corp.*, 493 F.3d at 384; *Garner*, 430 F.2d at 1103-04.

### A. The Fiduciary Exception Does Not Apply to Attorney-Client Communications with Directors of Mutual Fund Boards

Where Courts have required the disclosure of otherwise privileged information

under the fiduciary exception, they have done so almost exclusively in contexts outside

of Section 36(b)—for example, in corporate derivative and ERISA fiduciary lawsuits.

*See Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 227 (4th Cir. 2011)

(discussing contexts in which the fiduciary exception has been applied).  Requiring

disclosure of privileged communications to Section 36(b) plaintiffs under this exception

would make new law in this District and would have a chilling effect on the efforts of

fund counsel and advisers to thoroughly apprise mutual fund boards about legal issues.

*See, e.g.*, *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007) ("Full and frank

communication between attorneys and their clients must be encouraged because the

administration of justice in a complex society depends upon the availability of sound

legal advice, and in turn, the soundness of legal advice depends upon clients'

willingness to present full disclosures to their attorneys." (citation omitted)).

As the Ninth Circuit noted in *United States v. Mett*, in the ERISA context:

> [F]rom a policy perspective, an uncertain attorney-client privilege will likely result in ERISA trustees shying away from legal advice regarding the performance of their duties.  This outcome ultimately hurts beneficiaries—all else being equal, beneficiaries should prefer well-counseled trustees who clearly understand their duties.  In addition, a trustee's fear that her lawyer will be used against her may well translate into either an unwillingness to serve at all, or an insistence on

> contractual protections aimed at diluting the trustee's accountability.  Neither
> option services the interest of beneficiaries.

*Mett*, 178 F.3d 1065.  That rationale applies even more so in the context of a mutual

fund board of directors, where the success of the fund series depends on the actions of

qualified and fully informed independent directors.  Without sound, confidential legal

advice, independent directors would be hindered in their ability to act as the

"watchdogs" the ICA requires them to be.

### B.    The Recent *Kenny* Decision Is An Outlier, and is Distinguishable

In November 2016, the Western District of Washington decided in *Kenny v.*

*Pacific Investment Management Co.*, a Section 36(b) action, that the fiduciary exception

applied to communications regarding "legal advice for managing the fund" that were

"not personal advice to the Trustees" and were "not made in anticipation of [the present]

or any other litigation."  *Kenny v. Pacific Inv. Mgmt. Co. LLC*, No. C14-1987-RSM, 2016

WL 6836886, at *4 (W.D. Wash. Nov. 21, 2016).  *Kenny* is the *only* decision to apply the

fiduciary exception to privileged communications involving mutual fund trustees in

Section 36(b) litigation, and, in light of Point II.A above, GWCM respectfully submits that

*Kenny* was wrongly decided.[3]

In addition, *Kenny* is distinguishable from this case on multiple grounds.  First,

the court in *Kenny* held that its facts were "sufficiently analogous" to situations where

other courts have applied the fiduciary exception—situations that typically involved

---

[3] *Kenny* relied heavily on two cases, *United States v. Jicarilla Apache Nation* and *United States v. Mett*.  *See Kenny*, 2016 WL 6836886, at *2-4.  However, both of those cases held that the fiduciary exception did *not* apply under the facts presented.  *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165-66 (2011); *Mett*, 178 F.3d at 1066.

*trusts*. *Id.* at *4.[4]  Indeed, the court emphasized in its decision that "[t]he PIMCO Total Return Fund [was] indisputably set up as a trust." *Id.* at *4.  But here, the Great-West Funds are indisputably *not* set up as trusts; rather, Great West Funds, Inc. is a Maryland corporation.  Ex. A, Excerpt of Great-West Funds, Inc. Statement of Additional Information 1 (Apr. 29, 2016).  And the members of the Board of the Funds are indisputably *not* trustees; rather, they are directors.  *See id.* at 30.

Second, the communications at issue in *Kenny* bear little to no resemblance to the email at issue in this case.  In *Kenny*, the court noted that "[t]he communications at issue include[d] legal advice for managing the fund," *Kenny*, 2016 WL 6836886, at *4, and the *Kenny* plaintiff's motion to compel noted that the vast majority of the withheld communications at issue pre-dated the filing of the complaint in that case.  Pl.'s Mot. to Compel PIMCO Trustees to Produc. Docs. at 11, *Kenny v. Pacific Inv. Mgmt. Co. LLC*, 2016 WL 6836886 (W.D. Wash. Nov. 21, 2016) (No. C14-1987-RSM), ECF 100.  Here, by contrast, the at-issue email does *not* concern the management of the Funds, but rather instead concerns Lt. Governor Lynne's independence.  Mr. Logsdon sent this email about director independence to Lt. Governor Lynne on February 29, 2016—well *after* the *Obeslo* Plaintiffs filed their initial complaint on January 29, 2016.

In *United States v. Mett*, which both *Kenny* and Plaintiffs here cite, the Ninth Circuit explained that there is a "spectrum" of privileged communications and that the

---

[4] "English courts first developed the fiduciary exception as a principle of trust law in the 19th century." *Jicarilla Apache Nation*, 564 U.S. at 170.  Modern courts have applied the exception "in the context of common-law trusts[.]" *Id.* at 167.

potential applicability of the fiduciary exception turns on where along that spectrum a

privileged communication falls:

> On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries.  On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

*Mett*, 178 F.3d at 1064.  Plaintiffs' motion ignores *Mett* in this regard and incorrectly

suggests that the fiduciary exception applies to any communication not squarely at the

far pole of the "defend herself" end of this spectrum.  Pls.' Br. at 6-7.  An attorney-client

communication with a director that relates to director independence, which was sent to

a director after the filing of a Section 36(b) complaint alleging the director is not

independent, falls much farther along the "defend" end of the spectrum than the

"administration" end of the spectrum.  *Mett*, 178 F.3d at 1064 ("The advice is certainly a

far cry from advice regarding whether a trust may advance to a beneficiary from the

trust . . . or whether a trust should take certain positions in tax litigation with a state

department of revenue." (citation omitted)).  The communication is therefore not subject

to the exception.[5]  And to the extent there is any doubt as to the right conclusion here,

*Mett* is clear that "hard cases should be resolved in favor of the privilege, not in favor of

disclosure."  *Mett*, 178 F.3d at 1065.

---

[5] This is consistent with the fact that "'fiduciaries do not have a duty to keep beneficiaries informed of *all* matters.'"  *Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2014 WL 943115, at *3 (D. Colo. Mar. 10, 2014) (quoting *Herrmann,* 2012 WL 1207232, at *7).

Third, courts have suggested that the argument for applying the fiduciary exception is stronger where the legal advice at issue is paid for with fund assets. *See, e.g.*, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 172, 178-79 (2011); *Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2014 WL 943115, at *4 (D. Colo. Mar. 10, 2014). The court in *Kenny* noted that "Plaintiff argues that the legal counsel at issue was paid for by the Trust rather than Defendants." *See Kenny*, 2016 WL 6836886, at *2. Mr. Logsdon, by contrast, is compensated by GWL&A and/or GWCM, not the Funds. *See* Ex. B, Excerpt of GWCM: Great-West Funds, Inc. 15(c) Review 10, 15 (Apr. 15, 2016) (noting GWL&A provides compensation to GWCM personnel); Ex. C, Amended and Restated Investment Advisory Agreement 7 (May 1, 2015) (providing that for all Funds subject to the unitary management fee, GWCM "shall be responsible for all expenses incurred in performing the services set forth in this Agreement and all other expenses").

## C.     Plaintiffs Fail to Show "Good Cause" to Defeat Privilege

Even if Plaintiffs were correct that (i) the fiduciary exception should be adopted by the Tenth Circuit, *and* that (ii) the exception can apply to privileged communications between fund counsel and a mutual fund director, *and* that (iii) the exception potentially applies to the email between Mr. Logsdon and Lt. Governor Lynne, Plaintiffs *still* must show good cause for applying the exception and piercing the privilege based on the factors set out in *Garner*.[6] As noted, Plaintiffs represented to this Court in one of their

---

[6] *Garner* sets forth the following non-exclusive factors for determining good cause: (1) the number of shareholders and the percentage of stock they represent; (2) the bona fides of the shareholders; (3) the nature of the shareholders' claim and whether it is

prior motions to compel that *Garner* is the supposedly applicable authority with regard to the fiduciary exception.  Pls.' Reply in Supp. of Second Mot. to Compel Produc. of Docs. at 8, Sept. 6, 2016, ECF 79.

Plaintiffs cannot show good cause under *Garner*.  Plaintiffs are just nine out of many thousands of shareholders of the Funds and hold a tiny fraction of one percent of the assets of the Funds in which they allegedly own shares.  This fact alone is fatal. *See Ryskamp*, 2011 WL 3861437, at *11 (plaintiff's ownership of less than one percent of shares of fund was "dispositive" factor in *Garner* analysis finding fiduciary exception inapplicable); *see also Gerrits*, 138 F.R.D. at 578-79 (declining to apply exception where plaintiffs held 6 percent of defendant's stock, representing 25 percent of all minority shareholders' ownership); *Ward*, 854 F.2d at 786 (plaintiffs failed to demonstrate good cause under *Garner* where they "cumulatively owned less than four (4%) of the stock").

In addition, Plaintiffs' complaint has not even survived a motion to dismiss, and whether Plaintiffs' claims are "obviously colorable" therefore remains unestablished. *See Ryskamp*, 2011 WL 3861437, at *11 (no good cause to apply fiduciary exception where "Plaintiff is a minority stockholder still attempting to get beyond the motion to dismiss stage of litigation"); *In re Omnicom Grp. Inc. Sec. Litig.*, 233 F.R.D. 400, 412-13

---

obviously colorable; (4) the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; (5) whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; (6) whether the communication is related to past or to prospective actions; (7) whether the communication is of advice concerning the litigation itself; (8) the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; and (9) the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.  *Garner*, 430 F.2d at 1104.

(S.D.N.Y. 2006) (even the *denial* of motion to dismiss means only that plaintiffs' claims were "simply colorable," rather than "clearly colorable"; good cause not shown). Moreover, no plaintiff has ever prevailed in a Section 36(b) case that has gone to trial.

Meanwhile, Plaintiffs have failed to demonstrate a legitimate need for the email, which has little to no bearing on the fees charged to the Funds.  GWCM has already produced more than 70,000 pages of Board materials and minutes.  Plaintiffs have been given more than enough information to evaluate the issue of director independence. *See Fitzpatrick v. American Int'l Grp., Inc.*, 272 F.R.D. 100, 111 & n.8, 112 (S.D.N.Y. 2010) (no good cause where, among other things, plaintiffs "completely fail[ed] to identify why they need[ed] the substance of specific privileged communications").

Further, there is no criminal conduct at issue in this case.  *See In re Omnicom Grp. Inc. Sec. Litig.*, 233 F.R.D. at 412 (plaintiffs did not show good cause where "wrongful conduct alleged, although potentially unlawful, is plainly not criminal").

As noted, the burden here is Plaintiffs'.  Having failed to meet that burden, the fiduciary exception does not apply.

## CONCLUSION

GWCM respectfully requests that the Court deny Plaintiffs' motion.

Dated:  December 23, 2016                Respectfully submitted,

*/s Sean M. Murphy*
Sean M. Murphy
Milbank, Tweed, Hadley & McCloy, LLP
28 Liberty Street
New York, NY 10005
Telephone:  212.530.5688
Facsimile:  212.822.5688
smurphy@milbank.com

Robert J. Liubicic
Milbank, Tweed, Hadley & McCloy, LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone:  424.386.4525
Facsimile:  213.629.5063
rliubicic@milbank.com

Edward C. Stewart (#23834)
Wheeler Trigg O'Donnell, LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
stewart@wtotrial

Robert Michael Little
Great-West Life & Annuity Insurance Company
8515 East Orchard Road, 2T3
Greenwood Village, CO 80111
Telephone:  303.737.5089
Facsimile:  303.737.1699
bob.little@greatwest.com

*Attorneys for Defendant, Great-West Capital*
*Management, LLC*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on December 23, 2016, I caused the foregoing to be

electronically filed with the Clerk of Court using the CM/ECF system, which will send

notification to all counsel of record.

- **Kyle Geoffrey Bates**
  kbates@schneiderwallace.com
- **Stephen Hoeplinger**
  shoeplinger@uselaws.com
- **Mark T. Johnson**
  mjohnson@schneiderwallace.com
- **Robert Michael Little**
  bob.little@greatwest.com
- **Robert J. Liubicic**
  rliubicic@milbank.com
- **Sean Miles Murphy**
  smurphy@milbank.com
- **Lisa Marie Damm Northrup**
  lnorthrup@milbank.com

- **Benjamin James Reed**
  breed@milbank.com
- **Jerome Joseph Schlichter**
  jschlichter@uselaws.com
- **Thomas W. Snyder**
  thomas.snyder@kutakrock.com
- **Sean E. Soyars**
  ssoyars@uselaws.com
- **Edward Craig Stewart**
  stewart@wtotrial.com
- **Michael Armin Wolff**
  mwolff@uselaws.com

*/s Sean M. Murphy*
Sean M. Murphy
Milbank, Tweed, Hadley & McCloy, LLP
28 Liberty Street
New York, NY 10005
Telephone:  212.530.5688
Facsimile:  212.822.5688
smurphy@milbank.com

*Attorney for Defendant, Great-West Capital Management, LLC*