IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:16-cv-00230-CMA-MJW (Consolidated for all purposes with Civil
Action No. 1:16-cv-01215-CMA-MJW)

JOAN OBESLO,
ROYCE HORTON,
DANIEL FISHER,
NATHAN COMER,
STEVE MIGOTTI,
VALERIE MIGOTTI,
JAMES DIMAGGIO,
ANNE HALL,
CAROL A. REYNON-LONGORIA,
on behalf of GREAT-WEST FUNDS, INC.,

       Plaintiffs,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

       Defendant.

---

DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK APLC 401(K)
PLAN,

       Plaintiff,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

       Defendant.

---

**DEFENDANT'S MOTION TO DISMISS THE *OBESLO* PLAINTIFFS' SECOND
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

## TABLE OF CONTENTS

Page(s)

CERTIFICATION OF CONFERRAL PURSUANT TO LOCAL RULE 7.1 ....................... 1

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 3

    A.    The Parties and The Funds ...................................................................... 3

    B.    Mutual Funds and the Investment Company Act of 1940 .......................... 3

    C.    GWCM's Advisory Services ....................................................................... 4

    D.    The Manager-of-Managers Structure ......................................................... 6

ARGUMENT ................................................................................................................... 8

I.      PLAINTIFFS LACK STANDING TO PURSUE CLAIMS ON BEHALF OF
      FUNDS IN WHICH THEY DO NOT OWN SHARES ............................................. 8

II.     DISMISSAL WITH PREJUDICE IS APPROPRIATE ......................................... 14

CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen Oil & Gas, LLC v. Klish*,
   113 F. App'x 869 (10th Cir. 2004) .......................................................... 14

*Allen v. Wright*,
   468 U.S. 737 (1984) ................................................................................. 9

*In re AllianceBernstein Mutual Fund Excessive Fee Litigation*,
   No. 04 Civ. 4885(SWK), 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005) ................ 9, 12

*Batra v. Investors Research Corp.*,
   No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991) ........... 12

*Burks v. Lasker*,
   441 U.S. 471 (1979) ................................................................................. 4

*Carrillo v. Suthers*,
   No. 12-cv-02034-RM-MEH, 2014 WL 11297187 (D. Colo. Dec. 29,
   2014) .................................................................................................... 14

*Curran v. Principal Management Corp., LLC*,
   No. 4:09-cv-00433 RP-CFB, 2011 WL 223872 (S.D. Iowa Jan. 24,
   2011) ............................................................................................... 11, 13

*In re Eaton Vance Corp. Securities Litigation*,
   219 F.R.D. 38 (D. Mass. 2003) ................................................................. 9

*Forsythe v. Sun Life Financial, Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) ...................................... 8, 9, 10, 11

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) ................................................................................. 9

*Jones v. Harris Associates L.P.*,
   559 U.S. 335 (2010) .................................................................... 2, 3, 4, 13

*Kasilag v. Hartford Investment Financial Services, LLC*,
   Nos. 11-1083 (RMB/KMW), 14-1611 (RMB/KMW), 15-1876
   (RMB/KMW), 2017 WL 773880 (D.N.J. Feb. 28, 2017) ........................... 7

*Kasilag v. Hartford Investment Financial Services, LLC*,
   Nos. 11-1083 (RMB/KMW), 14-1611 (RMB/KMW), 2016 WL 1394347
   (D.N.J. Apr. 7, 2016) ................................................................................ 9

*In re Mutual Funds Investment Litigation*,
   519 F. Supp. 2d 580 (D. Md. 2007) ............................................... 10, 11, 12

*People to End Homelessness, Inc. v. Develco Singles Apartments
   Associates*, 339 F.3d 1 (1st Cir. 2003) ...................................................... 8

*Raines v. Byrd*,
   521 U.S. 811 (1997) .................................................................................... 8

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Insurance
   Co. (U.S.A.)*, 677 F.3d 178 (3d Cir. 2012) ............................................. 9, 10

*In re Scudder Mutual Funds Fee Litigation*,
   No. 04 Civ.1921(DAB), 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ...................... 12

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ........................ 9

*Siemers v. Wells Fargo & Co.*,
   No. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) ................. 11, 12

*Sivolella v. AXA Equitable Life Insurance Co.*,
   No. 11-4194 (PGS)(DEA), 2016 WL 4487857 (D.N.J. Aug. 25, 2016) ................ 7, 13

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass. 2005) .............................................. 11, 12

*Williams v. Bank One Corp.*,
   No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003) .................................. 12

## Statutes

15 U.S.C. § 80a-6(c) ........................................................................................ 7

15 U.S.C. § 80a-10(a)-(b) ................................................................................. 4

15 U.S.C. § 80a-15(a)-(e) ................................................................................. 4

15 U.S.C. § 80a-35(b) .......................................................................... 4, 8, 13

## Other Authorities

*Exemption from Shareholder Approval for Certain Subadvisory Contracts,*
   81 SEC Docket 939, 2003 WL 22423216 (Oct. 23, 2003) ..................................... 6, 7

SEC, *IM Guidance Update No. 2014-03* (Feb. 2014), *available at*
   http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-
   03.pdf.................................................................................................................. 6, 7

Robert Pozen & Theresa Hamacher, *The Fund Industry: How Your Money
   Is Managed* 463 (2012) ............................................................................................... 6

USAllianz Variable Insurance Products Trust & USAllianz Advisers, LLC,
   67 Fed. Reg. 55286-01, 2002 WL 1970906 (Aug. 28, 2002) ..................................... 7

USAllianz Variable Insurance Products Trust, Supplement (Form 497)
   (Sept. 23, 2002) ......................................................................................................... 7

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Great-West

Capital Management, LLC ("GWCM" or "Defendant") moves to dismiss the *Obeslo*

Plaintiffs' Second Amended Complaint ("Compl.") on the grounds that Plaintiffs lack

standing to bring suit on behalf of mutual funds they do not own.  In support of its

motion, Defendant states as follows:

### CERTIFICATION OF CONFERRAL PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1, the undersigned certifies that they have conferred

with opposing counsel in a good faith effort to resolve the issues raised herein.

Defendant provided the *Obeslo* Plaintiffs with detailed notice of the deficiencies in the

Second Amended Complaint.  *See* Ex. A, Letter to Michael Wolff from Sean Murphy,

dated March 24, 2017.  Defendant has previously provided Plaintiffs with detailed notice

of these same deficiencies in connection with their Original Complaint and the First

Amended Complaint.  *See* Ex. B, Letter to Michael Wolff from Sean Murphy, dated

March 16, 2016; Ex. C, Letter to Michael Wolff from Sean Murphy, dated April 28, 2016.

Although Plaintiffs have twice amended their Complaint, they have not corrected

deficiencies as to standing.  The issues could not be resolved despite good faith efforts,

as Plaintiffs have chosen to stand on the Second Amended Complaint.

### INTRODUCTION

This is an action for allegedly "excessive" mutual fund fees in violation of Section

36(b) of the Investment Company Act of 1940 ("ICA").  That statute provides a limited

remedy for a plaintiff who can meet the difficult burden of showing that the fund's

adviser charged a fee that "is so disproportionately large that it bears no reasonable

relationship to the services rendered and could not have been the product of arm's-length bargaining." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 351 (2010).  Plaintiffs originally filed this Action in January 2016 and have twice amended their Complaint. The Second Amended Complaint seeks to recoup from GWCM allegedly excessive fees paid by every one of the more than 60 different mutual funds in the Great-West Funds, Inc. complex (the "Great-West Funds" or the "Funds"), for which GWCM serves as investment adviser.

Plaintiffs attempt to bring this Action derivatively on behalf of over 60 mutual funds even though Plaintiffs allege that they own shares in only 20 of those Funds.  But Section 36(b)'s express terms require Plaintiffs to be "security holders" of each and every Great-West Fund on whose behalf they bring a claim, and the "case and controversy" requirement of Article III of the United States Constitution requires Plaintiffs to have a personal stake in the litigation.  Plaintiffs are not security holders in Great-West Funds they do not own, they do not pay any fees in connection with those non-owned Funds, and they would not benefit from any recovery by those Funds in this Action.  Courts have routinely dismissed Section 36(b) claims under Rule 12(b)(6) for lack of statutory and constitutional standing in these exact circumstances.

The discovery stay in this case was lifted on March 22, 2017.  The issue of Plaintiffs' standing has major implications for the scope of both fact and expert discovery going forward.

## FACTUAL BACKGROUND

### A.      The Parties and The Funds

Plaintiffs allege they are shareholders in 20 Great-West Funds, but purport to bring this Action on behalf of "over 63" Great-West Funds—*i.e.*, the entire Great-West Funds complex.  Compl. ¶¶ 1-2, 16-23.  Each of the Great-West Funds is a "series" within a broader investment company known as Great-West Funds, Inc., a registered investment company under the ICA.  Compl. ¶ 2.  Each of the Great-West Funds is overseen by a board of directors, all but one of whom are independent of GWCM (the "Board").  Compl. ¶ 12.

GWCM, a registered investment adviser under the ICA, acts as investment adviser to the Great-West Funds pursuant to an Investment Advisory Agreement dated May 1, 2015.  Compl. ¶ 27.  For its services, GWCM is paid according to a separate fee schedule for each Fund, which currently varies from .10% to 1.05% of each Fund's assets under management.  Compl. ¶ 34.

### B.      Mutual Funds and the Investment Company Act of 1940

"A mutual fund is a pool of assets, consisting primarily of [a] portfolio [of] securities, and belonging to the individual investors holding shares in the fund."  *Jones*, 559 U.S. at 338 (alterations in original) (quoting *Burks v. Lasker*, 441 U.S. 471, 480 (1979)).  The management and operations of a mutual fund are typically externalized and contractually delegated to its investment adviser.  Since the enactment of the ICA, courts have recognized the legal separation of a mutual fund and its adviser and have acknowledged this distinction as a principal purpose of the ICA, which protects fund

investors by maintaining a fund's independence from its adviser.  *See* 15 U.S.C. §§ 80a-10(a)-(b), 80a-15(a)-(e); *Burks*, 441 U.S. at 480-85.

Section 36(b) provides that an adviser owes a "fiduciary duty with respect to the receipt of compensation" from a mutual fund.  15 U.S.C. § 80a-35(b).  The United States Supreme Court has made clear that to prove a breach of this duty, the plaintiff must meet the high burden of showing that the fee charged is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones*, 559 U.S. at 345-46.

### C.     GWCM's Advisory Services

Under the terms of the Investment Advisory Agreement, GWCM is obligated to provide the following services to the Great-West Funds:

(a) perform research and obtain and evaluate pertinent economic, statistical, and financial data relevant to the investment policies of the Funds;

(b) consult with the Board and furnish to the Board recommendations with respect to an overall investment plan for approval, modification, or rejection by the Board;

(c) seek out, present, and recommend specific investment opportunities, consistent with any overall investment plan approved by the Board;

(d) take such steps as are necessary to implement any overall investment plan approved by the Board, including making and carrying out decisions to acquire or dispose of permissible investments, management of investments and any other property of the Funds, and providing or obtaining such services as may be necessary in managing, acquiring, or disposing of investments;

(e) regularly report to the Board with respect to the implementation of any approved overall investment plan and any other activities in connection with management of the assets of the Funds;

(f) maintain all required accounts, records, memoranda, instructions, or authorization relating to the acquisition or disposition of investments for the Funds;

4

(g) determine the net asset value of the Funds as required by applicable law;

(h) assist in supervising all aspects of the Funds' operations, including the coordination of all matters relating to the functions of the custodian, transfer agent, other shareholder service agents, if any, accountants, attorneys, and other parties performing services or operational functions for the Funds;

(i) provide the Funds, at GWCM's expense, with services of persons who may be GWCM's officers, competent to perform such administrative and clerical functions as are necessary in order to provide effective administration of the Funds, including duties in connection with certain reports and the maintenance of certain books and records of the Funds; and

(j) provide the Funds, at GWCM's expense, with adequate office space and related services necessary for its operations.

Ex. D, Investment Advisory Agreement, May 1, 2015, at 1-3.

Among the more than 60 Funds managed by GWCM are a number of "funds-of-funds" known as Asset Allocation Funds, each of which is a mutual fund that invests in a number of other underlying mutual funds.  Compl. ¶ 43.  For these "funds-of-funds," GWCM is responsible for, among other things, selecting the underlying investment options from a range of proprietary mutual funds, non-proprietary mutual funds, or a fixed interest contract guaranteed by GWCM's affiliate, Great-West Life and Annuity Insurance Company.  Compl. ¶¶ 48, 52, 56.  GWCM selects an allocation in order to meet the specified objective of each Asset Allocation Fund that may change over time. For example, GWCM has developed a "glide path" for certain Funds that changes each Fund's asset allocation over time to meet changing investor needs, for example, by reducing exposure to equities to make the Fund more conservative as the investor gets closer to retirement.  Compl. ¶¶ 46-47.

### D.       The Manager-of-Managers Structure

The Investment Advisory Agreement permits GWCM to hire sub-advisers, allowing GWCM to find and engage experts in specific investment disciplines to help manage assets in each of the Funds.  This arrangement allows a fund complex "to add new types of funds to their product lineup, even when they don't have the investment expertise in-house."[1]  This structure, "first introduced in the early 1990s," has "grown in popularity"[2] to the point where "[m]any mutual funds today use a so-called 'multi-manager structure[.]'"[3]

For certain Great-West Funds, GWCM has hired sub-advisers to assist it in managing the assets of those Funds.  Compl. ¶ 37.  While these sub-advisers select the underlying investments within the investment guidelines developed by GWCM, GWCM maintains overall responsibility for the management and operation of the Funds. Among other tasks, GWCM is also responsible for designing the Funds; researching, selecting, monitoring, and replacing sub-advisers; making asset allocation decisions across Funds that use multiple sub-advisers; and providing a host of regulatory, recordkeeping, and administrative tasks necessary to operate a Fund.  Ex. D, Investment Advisory Agreement, May 1, 2015, at 1-3.

---

[1] Robert Pozen & Theresa Hamacher, *The Fund Industry: How Your Money Is Managed* 463 (2012).

[2] *See Exemption from Shareholder Approval for Certain Subadvisory Contracts*, 81 SEC Docket 939, 2003 WL 22423216, at *2 (Oct. 23, 2003).

[3] SEC, *IM Guidance Update No. 2014-03*, at 1 (Feb. 2014), *available at* http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-03.pdf.

Plaintiffs attempt to portray the adviser–sub-adviser structure as a conduit for excessive fees.  But over nearly two decades, the SEC has approved as "necessary or appropriate in the public interest and consistent with the protection of investors," 15 U.S.C. § 80a-6(c), more than *two hundred* exemptive applications authorizing "manager-of-manager" arrangements without the usual requirement that shareholders vote on a change in sub-adviser.[4]  A central rationale for these exemptive orders is that a sub-adviser in "manager-of-manager" funds is analogous to an individual portfolio manager who may be terminated at the discretion of the adviser, while the investment adviser is the investment company's principal service provider.[5]

In the last few years, a number of actions have been brought under Section 36(b) challenging the fees charged by investment advisers who employ a "manager-of-managers" structure, two of which have proceeded to trial.  Both cases explicitly rejected Plaintiffs' theory, finding that the adviser retains significant responsibility despite using a sub-adviser for stock selection.  *See Kasilag v. Hartford Inv. Fin. Servs., LLC*, Nos. 11-1083 (RMB/KMW), 14-1611 (RMB/KMW), 15-1876 (RMB/KMW), 2017 WL 773880 (D.N.J. Feb. 28, 2017); *Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-4194 (PGS)(DEA), 2016 WL 4487857 (D.N.J. Aug. 25, 2016).

---

[4] *See* SEC, *IM Guidance Update No. 2014-03*, at 1 (Feb. 2014), *available at* http://www.sec.gov/divisions/investment/guidance/im-guidance-2014-03.pdf; *see also* USAllianz Variable Ins. Prods. Tr. & USAllianz Advisers, LLC, 67 Fed. Reg. 55286-01, 2002 WL 1970906 (Aug. 28, 2002) (notice of application); USAllianz Variable Ins. Prods. Tr., Supplement (Form 497) (Sept. 23, 2002).

[5] *See Exemption from Shareholder Approval for Certain Subadvisory Contracts*, 81 SEC Docket 939, 2003 WL 22423216, at *6 (Oct. 23, 2003).

## **ARGUMENT**

### I.   **PLAINTIFFS LACK STANDING TO PURSUE CLAIMS ON BEHALF OF FUNDS IN WHICH THEY DO NOT OWN SHARES**

"Standing is a threshold inquiry and is particularly important in securities litigation, where strict application of standing principles is needed to avoid vexatious litigation and abusive discovery." *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118-19 (D. Mass. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *In re Bank of Bos. Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991)).   In the Second Amended Complaint, Plaintiffs allege that they own shares in only 20 of the Great-West Funds.   *See* Compl. ¶¶ 16-23; Appendix I.   Yet this lawsuit is brought on behalf of all of the "over 63" Funds in the Great-West Funds complex, over two-thirds of which are not owned by any Plaintiff.   *See* Compl. ¶¶ 1-2, 16-23   The law is clear that Plaintiffs do not have standing to pursue claims on behalf of Funds they do not own.

Plaintiffs must establish two types of standing:   statutory standing and Article III standing.   Statutory standing is required by the express terms of Section 36(b).   Under the statute, private plaintiffs may sue only on behalf of the funds whose shares they own:   "[a]n action may be brought under this subsection by the Commission, or by a *security holder* of such registered investment company [(*i.e.*, mutual fund)] on behalf of such company[.]"   15 U.S.C. § 80a-35(b) (emphasis added).   Aside from this statutory standing requirement, Article III, Section 2 of the United States Constitution requires a party to have standing.   *Raines v. Byrd*, 521 U.S. 811, 818 (1997).   "Article III standing 'imposes three fairly strict requirements.'"   *People to End Homelessness, Inc. v. Develco Singles Apartments Assocs.*, 339 F.3d 1, 8 (1st Cir. 2003) (quoting *Munoz-*

*Mendoza v. Pierce*, 711 F.2d 421, 424 (1st Cir. 1983)).  These requirements include (1) a personal injury suffered by the plaintiff "that is [(2)] fairly traceable to the defendant's allegedly unlawful conduct and [(3)] likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  The burden is on Plaintiffs to meet these requirements.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

Courts have consistently held that both the "security holder" language in Section 36(b) and Article III require that a plaintiff currently own shares in those funds on whose behalf the claim is brought.  *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 185 (3d Cir. 2012) (affirming dismissal of Section 36(b) claim where plaintiff sold shares in the fund); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, Nos. 11-1083 (RMB/KMW), 14-1611 (RMB/KMW), 2016 WL 1394347, at *9 (D.N.J. Apr. 7, 2016) ("Ownership is a requirement for Section 36(b) actions." (citation omitted)); *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 2355411, at *20-21 (N.D. Cal. Aug. 14, 2006) (plaintiff lacked standing under Section 36(b) because he failed to allege that he owned shares of at-issue funds); *Forsythe*, 417 F. Supp. 2d at 119-20 (dismissing Section 36(b) claims on behalf of funds in which plaintiffs did not hold shares); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885(SWK), 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005) ("The named Plaintiffs do not have standing to sue on behalf of forty-eight AllianceBernstein mutual funds in which they do not own shares."), *partial reconsideration of*, 2006 WL 74439 (S.D.N.Y. 2006); *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 41 (D. Mass. 2003) (same).

Here, Plaintiffs have no financial stake in litigation concerning advisory fees charged to the Great-West Funds they do not own.  Plaintiffs are not "security holders" in those Funds, they do not pay fees associated with those Funds, and they would not benefit from any recovery with respect to those Funds.  Thus, Plaintiffs lack standing to pursue claims on behalf of those non-owned Funds.[6]

That each Great-West Fund is a "series" in Great-West Funds, Inc., which itself is an investment company registered under the ICA, Compl. ¶ 2, does not alter the standing analysis.  For example, in *In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580 (D. Md. 2007), the plaintiff brought Section 36(b) claims on behalf of a group of mutual funds, each of which was a "series" within a single broader investment company.  *Id.* at 588.  The court noted the SEC's position that "each series is to be treated as a separate investment company"[7] and cited cases holding that the broader

---

[6] The Complaint alleges that Plaintiffs *formerly* owned shares in a handful of other Great-West Funds.  Compl. ¶¶ 16-23.  However, having sold their shares, Plaintiffs lack standing to pursue Section 36(b) claims related to those Funds.  *Santomenno ex rel. John Hancock Trust*, 677 F.3d at 185 (affirming dismissal of Section 36(b) action where plaintiffs sold shares); *Forsythe*, 417 F. Supp. 2d at 117 ("Former security holders may not bring a claim on behalf of an investment company that they formerly held shares in, but no longer do.").

[7] *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d at 588 & n.11 (citing *Adoption of Rule 18f-2*, 1972 SEC LEXIS 1497, 1972 WL 125428, at *1 (Aug. 8, 1972) ("[T]he individual series of [a registered investment company] are, for all practical purposes, separate investment companies.  Each series of stock represents a different group of stockholders with an interest in a segregated portfolio of securities."); *Salomon Bros. Inc.*, SEC No-Action Letter, 1995 WL 329631, at *2 (May 26, 1995) ("[O]n a number of occasions, [SEC staff] has treated individual portfolios of a single registered investment company as separate investment companies under other provisions of the 1940 Act that expressly apply to a 'registered investment company.'"); *Mutual Series Fund, Inc.*, SEC No-Action Letter, 1995 WL 693304, at *2 (Nov. 7, 1995) (the SEC has "recognized that a series is the functional equivalent of a separate investment company and have

corporate structure of a series trust does not confer standing on plaintiffs to pursue claims on behalf of non-owned funds. *Id.* at 588-89. The court held:

> Plaintiffs cannot overcome the fact that the text of Section 36(b) (expressly requiring that a plaintiff be a "security holder of" the entity on whose behalf he seeks to bring suit), SEC pronouncements, and well-reasoned case law provide overwhelming support for treating an individual mutual fund as a "registered investment company." Accordingly, derivative plaintiffs may not assert claims under Section 36(b) on behalf of mutual funds in which they never held shares.

*Id.* at 590.

Numerous courts have similarly held that a plaintiff lacks standing to sue on behalf of "series" funds within a broader single investment company unless they own shares in each of the specific funds. *Curran v. Principal Mgmt. Corp., LLC*, No. 4:09-cv-00433 RP-CFB, 2011 WL 223872, at *2 n.3 (S.D. Iowa Jan. 24, 2011) (each "series" fund treated as a registered investment company, even though one trust was registered with the SEC); *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *7 (N.D. Cal. Oct. 24, 2006) ("Plaintiff cannot sue on behalf of funds he does not own." (footnote omitted)); *Forsythe*, 417 F. Supp. 2d at 118 (each fund should be treated as a "separate and distinct entity" under Section 36(b); "a plaintiff may not use the corporate structure of the broader investment company to confer standing" (citations omitted)); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 363 (D. Mass. 2005) (holding plaintiff's interest in fund "does not permit him to bootstrap claims arising out of

---

concluded that an individual series should be deemed a separate investment company in applying the various limitations and restrictions imposed by the 1940 Act and the rules under the 1940 Act"); *Principal Investors Fund Inc.*, SEC No-Action Letter, 2005 WL 1160193, at *3 (May 13, 2005) ("[E]ach series of a series investment company is a separate investment company for the purposes" of Section 12 of the ICA)).

investment decisions made in relation to other funds in which he was not a participant");

*Williams v. Bank One Corp.*, No. 03 C 8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec.

15, 2003) (no standing to bring a derivative claim on behalf of unincorporated funds

within incorporated business trust).[8]

Finally, granting Plaintiffs standing to bring suit on behalf of non-owned funds

would be inconsistent with the narrow remedy provided under Section 36(b).  *See*

*Stegall*, 394 F. Supp. 2d at 377 (Section 36(b) "was intended to provide a very specific,

narrow federal remedy[.]" (citation omitted)).  Such an expansive grant of standing

would permit a shareholder with assets invested in a single mutual fund within a

complex registered as an investment company to challenge the fees charged to

numerous other funds that may have decidedly different investment objectives, assets

under management, and other characteristics, even though the investor did not pay fees

for those funds and could not recover any excessive compensation from them.  This

---

[8] In *Batra v. Investors Research Corp.*, No. 89-0528-CV-W-6, 1992 WL 278688 (W.D. Mo. Oct. 4, 1991), plaintiffs were permitted to pursue claims on behalf of "series" funds in which they did not own shares.  *Id.* at *1.  There, however, the broader investment company charged a single one-percent fee for all assets that applied equally to every series within the trust.  *Id.* at *3 n.6.  Here, as alleged in the Second Amended Complaint, each fund pays different fees.  *See* Compl. ¶ 34.  Numerous courts have distinguished *Batra* on this ground.  *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ.1921(DAB), 2007 WL 2325862, at *10 (S.D.N.Y. Aug. 14, 2007); *Siemers*, 2006 WL 3041090, at *7 n.2; *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, at *10.  In any event, *Batra* is an outlier that was wrongly decided in light of more recent decisions relying on subsequent SEC guidance.  *Siemers*, 2006 WL 3041090, at *7 n.2 ("After considering the weight of recent authority and relevant SEC rulings . . . this [court] respectfully disagrees with the *Batra* decision."); *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d at 589 n.12 (declining to follow *Batra* and noting it failed to consider that plaintiff did not satisfy "security holder" requirement).

absurd result could not have been the intent of Section 36(b), as it would subject investment advisers to enormous additional liability simply by virtue of deciding to register funds as series trusts rather than as multiple investment companies.[9]

Accordingly, Plaintiffs lack standing to challenge the advisory fees paid by the Great-West Funds Plaintiffs do not own.[10]

---

[9] A trial on Plaintiffs' claims with respect to more than 60 Funds would also be unmanageable.  Plaintiffs bear the heavy burden of proving that the fees charged to each of the Funds are excessive. 15 U.S.C. § 80a-35(b)(1) ("[T]he plaintiff shall have the burden of proving a breach of fiduciary duty.").  In order to meet this burden, Plaintiffs must demonstrate that the so-called *Gartenberg* factors support a finding that each of the Funds' fees are "so disproportionately large that [they bear] no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones*, 559 U.S. at 346 (affirming the standard established in *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928-30 (2d Cir. 1982)). That finding requires an analysis of the services rendered to each of the Funds; the performance of each of the Funds; how each of the Funds' fees compare with fees charged by comparable mutual funds; whether the adviser has adequately shared any economies of scale it has realized in managing the Funds; the profitability the adviser has realized with respect to each of the Funds; fall-out benefits (*i.e.*, indirect profits) to the adviser that would not occur but for the adviser's relationship with each of the Funds; and whether the Board acted independently and conscientiously in approving each of the Funds' fees.  *See Gartenberg*, 694 F.2d at 928-30; *see also Jones*, 559 U.S. at 344 & n.5.  Even if Plaintiffs were permitted to bring claims on behalf of the 20 Funds they allege they own, the case would involve many more mutual funds than any other Section 36(b) case that has proceeded to trial, only one of which has been brought on behalf of more than 10 funds.  *See Sivolella*, 2016 WL 4487857, at *6 ("Plaintiffs have allocated contributions to their variable annuities to one or more of the following twelve (12) mutual funds . . . .").

[10] Plaintiffs also cannot use ownership of Asset Allocation Funds to challenge the fees paid by the underlying funds within those funds.  *See Curran*, 2011 WL 223872, at *4 (holding plaintiffs lack standing to pursue Section 36(b) claims challenging fees charged to underlying funds within a fund-of-funds).

## II.     DISMISSAL WITH PREJUDICE IS APPROPRIATE

Defendants provided Plaintiffs with notice that their Complaint is deficient on the grounds that they do not have standing with respect to the Great-West Funds they do not own.  Plaintiffs also previously received notice of this same deficiency following the filing of their Original Complaint and the First Amended Complaint, including in Defendant's Motion to Dismiss the First Amended Complaint, ECF No. 35.  As Plaintiffs have not cured, and are unable to cure, this deficiency, dismissal of Plaintiffs' claims as to the Great-West Funds they do not own should be with prejudice.  *See Allen Oil & Gas, LLC v. Klish*, 113 F. App'x 869, 871-72 (10th Cir. 2004); *Carrillo v. Suthers*, No. 12-cv-02034-RM-MEH, 2014 WL 11297187, at *18 (D. Colo. Dec. 29, 2014), *adopting report and recommendation as modified*, 2015 WL 396475 (D. Colo. July 20, 2015).

## <u>CONCLUSION</u>

For the reasons stated above, GWCM respectfully requests that the Court dismiss Plaintiffs' claims as to the Great-West Funds they do not own with prejudice.

Dated:  March 28, 2017                   Respectfully submitted,


                                         *s Sean M. Murphy*
                                         Sean M. Murphy
                                         Milbank, Tweed, Hadley & McCloy, LLP
                                         28 Liberty Street
                                         New York, NY 10005
                                         Telephone:  212.530.5688
                                         Facsimile:  212.822.5688
                                         smurphy@milbank.com

                                         Robert J. Liubicic
                                         Milbank, Tweed, Hadley & McCloy, LLP
                                         2029 Century Park East, 33rd Floor
                                         Los Angeles, CA 90067
                                         Telephone:  424.386.4525
                                         Facsimile:  213.629.5063
                                         rliubicic@milbank.com

                                         Edward C. Stewart (#23834)
                                         Wheeler Trigg O'Donnell, LLP
                                         370 Seventeenth Street, Suite 4500
                                         Denver, CO 80202-5647
                                         Telephone:  303.244.1800
                                         Facsimile:  303.244.1879
                                         stewart@wtotrial.com

                                         Robert M. Little
                                         Great-West Life & Annuity Insurance Company
                                         8515 East Orchard Road, 2T3
                                         Greenwood Village, CO 80111
                                         Telephone:  303.737.5089
                                         Facsimile:  303.737.1699
                                         bob.little@greatwest.com

                                         *Attorneys for Defendant, Great-West Capital*
                                         *Management, LLC*

<u>**CERTIFICATE OF SERVICE (CM/ECF)**</u>

I hereby certify that on March 28, 2017, I caused the foregoing to be

electronically filed with the Clerk of Court using the CM/ECF system, which will send

notification to all counsel of record.

- **Kyle Geoffrey Bates**
  kbates@schneiderwallace.com
- **Lydia M. Floyd**
  lfloyd@prwlegal.com
- **Stephen M. Hoeplinger**
  shoeplinger@uselaws.com
- **Mark T. Johnson**
  mjohnson@schneiderwallace.com
- **Robert Michael Little**
  bob.little@greatwest.com
- **Robert J. Liubicic**
  rliubicic@milbank.com
- **Sean Miles Murphy**
  smurphy@milbank.com
- **Lisa Marie Damm Northrup**
  lnorthrup@milbank.com

- **Joseph C. Peiffer**
  jpeiffer@prwlegal.com
- **Benjamin James Reed**
  breed@milbank.com
- **Jerome Joseph Schlichter**
  jschlichter@uselaws.com
- **Thomas W. Snyder**
  thomas.snyder@kutakrock.com
- **Sean E. Soyars**
  ssoyars@uselaws.com
- **Edward Craig Stewart**
  stewart@wtotrial.com
- **Michael Armin Wolff**
  mwolff@uselaws.com

*/s Sean M. Murphy*
Sean M. Murphy
Milbank, Tweed, Hadley & McCloy, LLP
28 Liberty Street
New York, NY 10005
Telephone:  212.530.5688
Facsimile:  212.822.5688
smurphy@milbank.com

*Attorney for Defendant, Great-West Capital
Management, LLC*