**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00230-CMA-SKC (consolidated for all purposes with
Civil Action No. 16-cv-01215-CMA-SKC and Civil Action No. 16-cv-03162-CMA-SKC)

JOAN OBESLO, *et al.*,

      Plaintiffs,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC, *et al.*,

      Defendants.

---

**DEFENDANTS' MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927**

---

<u>Certification Pursuant to D.C.COLO.LCivR 7.1(a)</u>

      Undersigned counsel certifies that prior to filing this motion he conferred with opposing counsel Michael Wolff and Mark Johnson via email and telephone, and provided both with citations to several key cases cited herein. Both advised that the *Obeslo* and *Duplass* plaintiffs oppose the relief requested.

**I.    INTRODUCTION**

      Plaintiffs' counsel subjected Defendants and the Court to an 11-day bench trial despite lacking any legally cognizable evidence of a required element of Plaintiffs' claims: actual damages. Instead of tethering any theory of actual damages to the law, Plaintiffs' counsel—both at the summary judgment phase and at trial—paid an expert witness to offer three theories of damages that (as this Court has found) had no legal basis. After trial, the Court concluded that Plaintiffs' failure to proffer any legally

cognizable evidence of actual damages was an independent basis to enter judgment in Defendants' favor.

The legal flaws in Plaintiffs' actual damages theories were pointed out and should have been apparent to Plaintiffs' counsel well before trial.  Had Plaintiffs' counsel acted objectively reasonably, and, as the law requires, re-assessed the merits of their case before trial, they would have known their damages theories had fatal legal flaws and that the case should therefore be voluntarily dismissed.  Had Plaintiffs' counsel done what they were supposed to do, Defendants would have avoided the needless costs, expenses, and attorneys' fees incurred in defending this case at trial and through the present, and the Court would have avoided a time-consuming bench trial.

Twenty-Eight U.S.C. § 1927 sanctions such objectively unreasonable conduct. It incentivizes "attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims."  It "demand[s] that an attorney exhibit some judgment." And it dictates that "[r]egardless of an attorney's subjective intentions, it is objectively unreasonable to continue asserting claims that have no factual or legal basis and thus should have been dismissed voluntarily."

Plaintiffs' counsel paid no heed to section 1927 in this case, instead using this Court's valuable trial time as merely the last stage in an effort to prosecute damages theories with no legal validity.  Under section 1927, Defendants should be compensated for the needless costs, expenses, and attorneys' fees they incurred due to this conduct.

## II.   BACKGROUND

Plaintiffs claimed that the fees Defendants charged on certain mutual funds violated Section 36(b) of the Investment Company Act of 1940 ("ICA").  To prevail on

this claim, Plaintiffs were required to prove, among other things, actual damages.  (*See, e.g.*, Dkt. 384 at 13.)  Before trial, Defendants informed Plaintiffs' counsel multiple times that, as a legal matter, Plaintiffs' theories concerning actual damages had fatal legal flaws that would foreclose Plaintiffs from prevailing.   Ignoring the law, Plaintiffs' counsel persisted with the case, subjecting Defendants and the Court to an 11-day bench trial, during which 13 fact witnesses and three expert witnesses testified.  The Court ultimately entered judgment in favor of Defendants, concluding, among other failures, that the damages theories offered by Plaintiffs' expert witness were "legally flawed," and that this was independent basis for judgment.  (Dkt. 384 at 14, 18.)

> **A.    Defendants' Motion for Summary Judgment Informed Plaintiffs' Counsel That Their Damages Theories Were Legally Flawed.**

Defendants' Motion for Summary Judgment pointed out that "Plaintiffs have two theories of damages, both of which fail as a matter of law."  (Dkt. 248 at 18.)  First, Plaintiffs' theory that their actual damages amounted to all funds' fees above the average fee of comparable funds was legally flawed "because industry average fees cannot possibly set the outer bounds of arm's-length bargaining for purposes of calculating damages—if they could, half of all mutual funds in the world would have 'excessive' fees."  (*Id., see also* n.80-86.)  Second, Plaintiffs' theory that their actual damages on the Asset Allocation Funds were the entirety of the advisory fees charged to those funds was legally flawed because complete disgorgement is not available absent a showing that the adviser did *no* work—a showing Plaintiffs conceded they could not make here.  (*Id.*)

Plaintiffs' Opposition did not dispute that Defendants' Motion accurately conveyed Plaintiffs' two theories of actual damages.  (Dkt. 252 at 19-29.)  Instead, Plaintiffs argued only that Defendants "do not claim fees at these levels would render their work unprofitable, or even insufficiently profitable." (*Id.* at 20.)  Plaintiffs also directed the Court repeatedly to the written report and opinions of their retained expert, J. Chris Meyer ("Mr. Meyer").  In fact, the second paragraph of their opposition referenced his 220-page report, and its nearly 1,000 pages of attachments.  (*Id.* at 1.) Plaintiffs' counsel represented to the Court that Mr. Meyer would substantiate tens of millions of dollars in estimated damages, and would update those estimates in establishing actual damages. (*Id.* at 20, n.74.)  Plaintiffs represented—incorrectly—that as long as there was a "battle of experts" with respect to actual damages, summary judgment was inappropriate. (*Id.* at 1, n.3.)

In denying Defendants' Motion for Summary Judgment, "the Court relied on opinions offered by Plaintiffs' expert, J. Chris Meyer," (Dkt. 384 at 6) presumably taking Plaintiffs' counsel at their word that Mr. Meyer would present credible testimony and legally valid evidence of actual damages at trial.  "Notably, the Court reserved ruling on the issue of damages." *(Id.* (citation omitted).)

**B.   Defendants' Motion to Strike Mr. Meyer Informed Plaintiffs That Their Damages Theories Were Legally Flawed.**

While the Court reserved ruling on the issue of damages at summary judgment, Defendants subsequently filed a Motion to Strike Mr. Meyer which again informed Plaintiffs that their damages theories were legally flawed.  (Dkt. 288 at 14-15.)  Again, Defendants pointed out that "if average or median fees set the outer bounds of arm's-

length bargaining, then half of all mutual funds would *always* have 'excessive' fees" and that such a theory "is not logical nor is it the law …." (*Id.* at 14.)  Defendants also pointed out that there was no basis for Mr. Meyer's opinion that *any* fees charged on the Asset Allocation Funds amounted to an overcharge, especially in light of his concession that Defendants performed work on those funds.  (*Id.* at 15.)

Plaintiffs' counsel responded that "[i]f, as Defendants suggest, Plaintiffs' theory of damages is legally invalid, the Court would have granted Defendants summary judgment."  (Dkt. 294 at 15.)  But that argument lacked merit given the "Court reserved ruling on the issue of damages" at summary judgment and did not opine on the issue. (Dkt. 384 at 6.)   Nor did the Court's Order denying Defendants' Motion to Strike Mr. Meyer opine on the legal validity of Plaintiffs' damages theories.  (Dkt. 322 at 17.)

Plaintiffs' Opposition further argued, citing ERISA cases, that actual damages under Section 36(b) "also includes the lost gains from investment during the time that those excessive fees were deducted from the funds."  (Dkt. 294 at 14.)  Defendants' Reply informed Plaintiffs' counsel that this contention was counter to both the express statutory language and legislative history of Section 36(b). (Dkt. 299 at 9.)

**C.    Defendants' Trial Brief Informed Plaintiffs That Their Damages Theories Were Legally Flawed.**

Defendants' Trial Brief again noted that "Plaintiffs' damages models fail for the reasons briefed on summary judgment (which the Court reserved on until trial)."  (Dkt. 327 at 20.)  Defendants' Trial Brief further detailed the multiple legal problems with Plaintiffs' theory that actual damages under section 36(b) include "lost gains" from investment returns.  (*Id.*)

Meanwhile, Plaintiffs' Trial Brief promised that "[t]hrough their expert Chris Meyer, Plaintiffs will prove what a reasonably negotiated fee would have been for each of the Core Funds and the ASA fee and the amount of the excess compensation paid to" Defendants.  (Dkt. 328 at 14.)  It further promised that "Meyer will demonstrate that there should have been no fee for the Assert Allocation Funds" and argued that "[i]n addition to recovery of the excessive compensation, the funds are entitled to recover the lost gains they would have earned had the excessive fees not been deducted, but instead were left in the funds to be invested."  (*Id.*)

Defendants' Response to Plaintiffs' Trial Brief again pointed out the legal shortcomings of Plaintiffs' argument that they were entitled to "the lost gains they would have earned the excessive fees not been deducted," and further noted that Plaintiffs' additional "theories are fundamentally flawed—and if accepted, would alter the entire landscape of the industry for reasons briefed on summary judgment (the Court did not reach damages in its ruling)."  (Dkt. 346 at 10.)

### D.   After Trial, the Court Confirmed That Plaintiffs' Damages Theories Were Legally Flawed and This Was an Independent Basis for Judgment for Defendants.

At trial, despite the promise by Plaintiffs' counsel that Mr. Meyer would "prove what a reasonably negotiated fee would have been,"  Mr. Meyer merely offered precisely the same three theories concerning actual damages that Defendants had pointed out multiple times were legally flawed: "(1) the extent to which some Funds had fees that exceeded the average or median of their peers; (2) some fees that should be completely eliminated; and (3) the lost investment opportunities that resulted from the excessive fees."  (Dkt. 384 at 15.)  The Court ultimately concluded that "in addition to

the general inadequacy of [Mr. Meyer's] testimony, his specific theories regarding Plaintiffs' alleged damages are legally flawed."  (*Id.* at 14.)

With respect to the theory that actual damages amounted to the "[e]xtent to which fees exceed average/median of peers," the Court concluded, among other problems, that "[o]f course, industry average fees cannot possibly set the outer bounds of arm's-length bargaining for purposes of calculating damages—if they could, half of all mutual funds would have 'excessive' fees."  (Dkt. 384 at 15 n.4.)

With respect to the theory that the entire top-level fee on the Asset Allocation Funds represented actual damages on those Funds, the Court concluded that such a theory amounted to rate regulation, which is not permitted under Section 36(b).  (*Id.* at 16.)  The Court further concluded that "total disgorgement of a fee is inappropriate absent evidence the adviser performed no services," which Mr. Meyer conceded was not the case here.  (*Id.* at 15-16.)

And with respect to the theory that as part of their actual damages Plaintiffs were entitled to recover "lost gains" from investment returns, the Court noted, among other problems, that such a theory was inconsistent with both the legislative history and statutory language of Section 36(b)—exactly as Defendants had told Plaintiffs' counsel prior to the 11-day trial.  (*Id.* at 17-18.)

In addition to finding that the damages theories offered by Plaintiffs' counsel through Mr. Meyer were legally flawed, the Court further found that Mr. Meyer was "thoroughly discredited on cross examination" and there were "abundant examples of … weaknesses and inconsistencies in Mr. Meyer's testimony …."  (*Id.* at 13-14.)  For

example, Mr. Meyer conceded that "[e]ven though his 'expert report criticized the Great-West Funds Board for not putting [GWL&A's] 35-basis-point fee out to bid … [i]n reality, [that] probably can't be done' and he 'probably shouldn't have included that' in his report."  (*Id.* at 14.)  In sum, "the Court found Mr. Meyer's testimony to be non-credible" and "conclude[d] that his opinions are entitled to no weight."  (*Id.* at 14, 17.)

The Court concluded that Plaintiffs' "fail[ure] to meet their burden to prove that they suffered actual damages due to Defendants' conduct" was one of "two independent grounds" on which Defendants were entitled to judgment.  (*Id.* at 18.)

## III.      LEGAL STANDARD

Under 28 U.S.C. § 1927,

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any cases unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The purpose of this statute is to incentivize "attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims."  *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006).  "Sanctions under § 1927 are appropriate when an attorney acts recklessly or with indifference to the law. They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted."  *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005) (alteration in original) (citation omitted) (internal quotation marks omitted).

"An attorney is expected to exercise judgment" and the Tenth Circuit has made clear that courts should not "'excuse objectively unreasonable conduct.'"  *Danielson-Holland v. Standley & Assocs., LLC*, 512 Fed. App'x 850, 854 (10th Cir. Mar. 12, 2013); *see also id.* ("'If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.'") (quoting *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005)).  As a result, the Tenth Circuit has "held that § 1927 does not require a finding of bad faith: 'Although subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, [courts] are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with 'an empty head and a pure heart' is not responsible for the consequences.'"  *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) (quoting *Braley*, 832 F.2d at 1512).

"A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care."  *Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987) (quoting *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)).  While there should be "caution against imposing § 1927 sanctions in inappropriate cases, [such caution] should not prevent [a court] from awarding sanctions for conduct which manifests intentional or reckless disregard of the attorney's duties to the court."  *Braley*, 832 F.3d at 1512.  The "text of § 1927 … indicates a purpose to compensate victims of abusive

litigation practices, not to deter and punish offenders."  *Hamilton*, 519 F.3d at 1206. "Regardless of an attorney's subjective intentions, it is objectively unreasonable to continue asserting claims that have no factual or legal basis and thus should have been dismissed voluntarily."  *Timmons v. Lockheed Martin Corp.*, 2014 U.S. Dist. LEXIS 7653, at *4-5 (D. Colo. Jan. 22, 2014) (Arguello, J.).

## IV.    ARGUMENT

### A.    It Was Objectively Unreasonable for Plaintiffs' Counsel to Subject Defendants and the Court to an 11-Day Bench Trial When They Should Have Known They Had No Legally Valid Damages Claim.

"The requirement to show 'actual damages' is an element Plaintiffs must prove in order to recover" under Section 36(b).  (Dkt. No. 384 at 13 (citing *Sivolella v. Axa Equitable Life Ins. Co.*, 2016 WL 4487857, at *70 (D.N.J. Aug. 25, 2016)).)  As the Court found, not only did "Plaintiffs fail[] to meet their burden with respect to damages," but the "specific theories" they put forth concerning their alleged damages were "legally flawed." (Dkt. No. 384 at 13-14.)  As detailed above, Defendants pointed out to Plaintiffs' counsel, multiple times in writing, various fatal legal flaws with their damages theories, which should have been apparent to Plaintiffs' counsel prior to trial.  The decision by Plaintiffs' counsel to nonetheless proceed with this case through an 11-day bench trial was objectively unreasonable, reckless, and warrants compensation to Defendants under section 1927.  *Cf.  Steinert*, 440 F.3d at 1224 (The purpose of § 1927 is to incentivize "attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims.").

**1.     It was objectively unreasonable for Plaintiffs' counsel to contend that Plaintiffs' actual damages were the extent to which the funds' fees exceeded the average/median of peers.**

Plaintiffs' counsel never offered a legitimate legal basis for their argument that Plaintiffs' actual damages were the extent to which the funds' fees exceeded the average/median of peers.  None exists.  As Defendants previously informed Plaintiffs (Dkt. 288 at 14), and as the Court found, "[o]f course, industry average fees cannot possibly set the outer bounds of arm's-length bargaining for purposes of calculating damages—if they could, half of all mutual funds would have 'excessive' fees."  (Dkt. 384 at 15 n.4.)

In other words, if Plaintiffs theory were adopted, the only way that mutual funds could avoid liability under Section 36(b) is if *every* peer fund had the *exact* same fees. This is rate regulation, which is not permitted under Section 36(b).  (Dkt. 384 at 16 ("Importantly, rate regulation is not permitted under § 36(b).  *Jones v. Harris Assocs. L.P.*, 611 F. App'x 359, 360 (7th Cir. 2015) (The Supreme Court's approach in *Jones* 'does not allow a court to assess the fairness or reasonableness of advisers' fees; *the goal is to identify the outer bounds of arm's length bargaining* and not engage in rate regulation.' (emphasis added)))."  Indeed, as the Supreme Court found, in enacting Section 36(b), "Congress rejected a 'reasonableness' requirement that was criticized as charging the courts with rate-setting responsibilities."  *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 352 (2010).  Instead, "the party claiming breach [has the burden] to show that the fee is *outside the range* that arm's-length bargaining would produce."  *Id.* at 347 (emphasis added).  By its terms, a fee that is merely "above average" is not "outside the range."

The continued pursuit of this legal theory by Plaintiffs' counsel, which was directly contradicted by Supreme Court precedent, was objectively unreasonable.  Plaintiffs' counsel was advised of the shortcomings of the theory, but continued to press it through trial. Doing so displayed a reckless indifference to the law and resulted in substantial costs and attorneys' fees being imposed on Defendants (in the absence of this theory, Plaintiffs' counsel had no evidence concerning "actual damages" for every fund involved in the case, aside from the Asset Allocation Funds discussed below).

> **2.    It was objectively unreasonable for Plaintiffs' counsel to contend that Defendants were entitled to no advisory fee on the Asset Allocation Funds.**

Plaintiffs' counsel likewise never offered a legitimate legal basis for their argument that Plaintiffs' damages on the Asset Allocation Funds amounted to the entirety of the advisory fee charged on those funds.  Instead, Plaintiffs' counsel argued that "there should have been no fee for the Asset Allocation Funds (just as other investment companies charged no fees in similar funds) because of the enormous profits that GWCM and its affiliates generated from GWCM's investment of the Asset Allocation Funds primarily in the Core Funds."  (Dkt. 328 at 14.)  But again, the notion that there is some cap on allowable profits amounts to rate regulation, which is not permitted by Supreme Court precedent.  (Dkt. 384 at 16.)

The Court also found that this theory was legally flawed because "total disgorgement of a fee is inappropriate absent evidence the adviser performed no services," which was not the case here.  (*Id.* at 15.)  Defendants previously pointed this out to Plaintiffs' counsel, citing cases such as *Sivolella*, 2016 WL 4487857, at *71 (rejecting damage theory seeking "complete disgorgement of [adviser's] entire fee"

absent evidence demonstrating that the adviser "performed *no duties*" (emphasis added)).  (Dkt. 248 at 25 n.85.)  While Defendants recognize *Sivolella* and multiple similar authorities are not binding on the Court, Plaintiffs' counsel remarkably relied on *Sivolella in support of* their argument that "damages are calculated as the excess of Defendants' compensation over the compensation that could have resulted from arm's length bargaining."  (Dkt. 328 at 13.)  By relying on *Sivolella* for that point, but at the same time ignoring that *Sivolella* entirely contradicted one of their legal theories concerning actual damages, Plaintiffs' counsel displayed a reckless indifference towards the law and their duties to the Court.

> **3.    It was objectively unreasonable for Plaintiffs' counsel to contend that Plaintiffs were entitled to recover "lost gains" from investment returns.**

The third damages theory offered by Plaintiffs' counsel – that Plaintiffs' actual damages included "the lost gains [Plaintiffs] would have earned had the excessive fees not been deducted, but instead were left in the funds to be invested" (Dkt. 328 at 14) – necessarily relied on at least one of Plaintiffs' first two damages theories being accepted.  That is because in the absence of a legally adequate calculation of "excessive fees," there cannot be a legally adequate calculation of "lost gains."  As a result, with the legal flaws of the first two theories being clear, Plaintiffs' counsel should have understood that its third theory was likewise flawed.

Moreover, Plaintiffs' counsel should have understood this theory was legally flawed for additional reasons.  Principally, as Defendants previously pointed out (Dkt. 327 at 20), and as the Court found, "[t]he legislative history of §36(b) makes clear that 'lost gains' are not 'actual damages' recoverable under the statute."  (Dkt. 384 at 17

(citing *In re Evangelist*, 760 F.2d 27, 29-30 (1st Cir. 1985) (§ 36(b) recovery is limited to the "payment of any excess fee to the company" and legislative history prevents recovery of "special damages that the excess payments may have caused")).)  Finally, this theory ran directly counter to the statutory language of Section 36(b), which provides "that any recovery under § 36(b) 'shall in no event exceed the amount of compensation or payments received from such investment company.'" (Dkt. 384 at 18 (quoting 15 U.S.C. § 80a-35(b)(3)).)

Plaintiffs' counsel attempted to evade this clear authority, ignoring ICA cases, the statute's legislative history, and the statute itself, and instead citing a variety of cases arising under other laws.  (Dkt. 328 at 14-17.)  Doing so was objectively unreasonable and displayed a reckless indifference towards the law.

**B.      It Is Irrelevant That Plaintiffs' Claims Survived Through Trial.**

Defendants expect Plaintiffs' counsel will argue that it could not have been objectively unreasonable to continue pressing this case despite their legally flawed damages theories since Plaintiffs' claims survived through trial, including summary judgment and directed verdict.  Any such argument would be misplaced.  The Tenth Circuit's decision in *Danielson-Holland v. Standley & Assocs., LLC*, 512 Fed. App'x 850 (10th Cir. Mar. 12, 2013), is instructive.

In *Standley*, like in this case, the district court denied the defendant's motion for summary judgment and two motions for directed verdict.  *Id.* at 852.  Nevertheless, after a jury found in defendant's favor, the district court awarded the defendant sanctions under 28 U.S.C. § 1927, "finding that [the plaintiff's counsel] 'proceed[ed] to trial without plausible evidence to support the claim made."  *Id.* (alterations in original).  On appeal,

the plaintiff's counsel argued that "because the court denied [defendant's] motion for summary judgment on the claim and twice denied [defendant's] motions for a directed verdict, allowing the case to go to the jury, the court necessarily decided that there was a plausible factual basis for proceeding to trial." *Id.* at 852-853.  The plaintiff's counsel further argued that "[b]y allowing the claim to proceed … it was inappropriate for the court to impose sanctions on him for continuing to pursue a claim with the court's permission." *Id.* at 853.  The Tenth Circuit disagreed.

According to the Tenth Circuit, although a magistrate recommended that there was sufficient evidence for a single claim to survive summary judgment, and the district court adopted that recommendation, plaintiff's counsel "should have realized upon careful continual re-evaluation of the claim as he prepared for trial that he lacked evidence" to support the surviving  claim. *Id.* at 853.  As a result, "he proceeded to trial when he should have known there was no basis to proceed." *Id.* at 853-854.  As the Tenth Circuit court found, "[b]ased on these facts, [the plaintiff's counsel] objectively vexatiously and unreasonably multiplied the proceedings at [defendant's] expense" and the district court therefore did not abuse its discretion in awarding the defendant sanctions under section 1927.

The facts here are even worse for Plaintiffs' counsel.  Unlike in *Standley,* no magistrate or trial judge found affirmatively that there was sufficient evidence for Plaintiffs to go forward with their claims for actual damages.  Here, at summary judgment "the Court reserved ruling on the issue of damages" and did not opine at all on the validity of the theories offered by Plaintiffs' counsel.  (Dkt. 384 at 6.)  Plaintiffs'

counsel should not have taken this as a greenlight to proceed with the case in spite of its fatal legal flaws.  *See, e.g.*, *Braley*, 832 F.2d at 1512. ("[T]he Court is entitled to demand that an attorney exhibit some judgment.").  Instead, like the plaintiff's counsel in *Standley*, Plaintiffs' counsel "should have realized upon careful continual re-evaluation of the claim as [they] prepared for trial that [they] lacked evidence" of a required element of their claim.  512 Fed. App'x at 853.

This point is even more salient given the Court's reliance on the opinions proffered by Mr. Meyer in denying Defendants summary judgment.  (*See* Dkt. 384 at 6.) Mr. Meyer was not just "thoroughly discredited" at trial, but even admitted that he "probably shouldn't have included" certain things in his expert report. (*Id.* at 13-14.) Given this, Plaintiffs' counsel should not be able to seek refuge in the denial of summary judgment, when that denial was based, at least in part, on expert opinions that should have never been proffered.

**C.    Under Section 1927, Defendants Are Entitled to Recover Costs, Expenses, and Attorneys' Fees Reasonably Incurred Because of Plaintiffs' Counsel's Objectively Unreasonable Conduct.**

Defendants believe it was objectively unreasonable for Plaintiffs' counsel to continue pressing this case after Defendants' filed their Motion for Summary Judgment on May 18, 2018.  (Dkt. 248.)  That Motion alerted Plaintiffs' counsel to the fatal flaws in their actual damages theories, which Plaintiffs' counsel should have realized and understood if they engaged in an objective review of Plaintiffs' evidence, as the law requires.  *See, e.g.*, *Steinert*, 440 F.3d at 1224.  As a result, under section 1927, Defendants should be entitled to recover all costs, expenses, and attorneys' fees reasonably incurred after the date of that filing.  *See, e.g.*, *Timmons*, 2014 U.S. Dist.

LEXIS 7653, at *13-14 (holding that under Section 1927, defendant was entitled to fees incurred after the filing of defendant's motion for summary judgment when that motion should have demonstrated to plaintiff's counsel "the legal and factual deficiencies" of plaintiff's claims).

Even if the Court gives Plaintiffs' counsel the benefit of the doubt that they were not, or should not have been, aware of the fatal legal flaws in their actual damages theories until they completed their trial preparation, sanctions are still warranted. *Cf.* Standley, 512 Fed. App'x at 853 (plaintiff's counsel "should have realized upon careful continual re-evaluation of the claim as he prepared for trial that he lacked evidence" supporting the claim.).  Accordingly, Defendants will seek only costs, expenses, and attorneys' fees reasonably incurred from the first date of trial to the present, not to exceed $1,500,000.[1]  None of those costs, expenses, and fees would have been incurred had Plaintiffs' counsel not acted objectively unreasonably, proceeding to trial, and seeking over $50,000,000 at trial (*see* Tr. Ex. 550) (and no doubt costs and attorneys' fees) on claims that they should have known had a fatal legal flaw.  Under Section 1927, Defendants should be compensated for the reasonable costs, expenses, and attorneys' fees they needlessly incurred.

---

[1] The actual costs, expenses, and attorneys' fees reasonably incurred by Defendants from the first date of trial to the present significantly exceed that amount, but Defendants are cognizant of the limits of section 1927.  As explained in detail in Defendants' concurrently filed Motion for Extension of Time to Submit Detailed Description and Summary of Qualifications under Local Rule 54.3, Defendants request an extension of time to submit a detailed description of attorney fees, accompanying affidavits and summary of qualifications in support of this Motion as required by Local Rule 54.3.

**D.     The Lawyer-Driven Nature of This Case Weighs in Favor of Section 1927 Sanctions.**

Plaintiffs' counsels' decision to proceed with this case through trial was clearly not at the behest of any Plaintiff.  The three individual plaintiffs in this lawsuit, Joan Obeslo, Anne Hall, and Tina Gorrell-Deyerle, all testified at trial that they were solicited by Plaintiffs' counsel to join this lawsuit.  Ms. Obeslo saw an ad in the paper urging Great-West employees to call an 800 number about a lawsuit (Tr., January 13, 2020, at 36), and Ms. Hall saw a similar advertisement in the Monterey County Herald (*Id.* at 54-55) and discussed the case with Ms. Gorrell-Deyerle (*Id.* at 63). Ms. Hall did not know what Great-West services she was being charged for (*Id.* at 56), and Ms. Gorrell-Deyerle did not know what fees she was being charged on the de minimis amounts in her account—only that they were "excessive" because Plaintiffs' counsel told her so. (*Id.* at 66.)  Ms. Obeslo, meanwhile, testified that when she reviewed her retirement account during the relevant period, it "was making money every time.  It kept going up, which is what I wanted." (Dkt. 384 at 6.)  As for the Duplass Plan plaintiff, "Mr. Pfister testified that he opposed the idea of initiating litigation regarding Defendants' fees, and his reservations led him to step down as a trustee for the Duplass Plan before the complaint was filed." (*Id.*)

This lawsuit was the latest in a string of excessive fee cases, brought in various contexts, by Plaintiffs' counsels' law firms.[2]  Here, Plaintiffs' counsel decided to persist

---

[2] Defendants understand that "[t]here is a split of authority on the question of whether section 1927 authorizes fee awards against law firms" and that "the Tenth Circuit has not addressed this issue."  *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems GmbH*, 2008 U.S. Dist. LEXIS 13483, at *33 (D. Colo. Feb. 12, 2008).  Defendants take no position on that issue, but note that each law firm of

18

in prosecuting this case in spite of its fatal legal flaws, which Defendants repeatedly pointed out and which this Court confirmed.  Under these circumstances, counsels' cost of doing business should not just be the loss on the merits at trial, but, at least under the circumstances here, should include Defendants' reasonable costs, expenses, and attorneys' fees in defending this action "through trial and the present.  When counsel is left unchecked by a client, their independent duty to objectively evaluate their claims should only be greater.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that under 28 U.S.C. § 1927, the Court grant them sanctions from Plaintiffs' counsel and/or their law firms in an amount to be determined after Defendants' filing under Local Rule 54.3.

---

Plaintiffs' primary counsel holds itself out as being wildly successful.  *See, e.g.*, https://www.uselaws.com/about-us/ ("In roughly the last decade alone, we have obtained relief on behalf of individuals subject to corporate wrongdoing that has been valued at more than $1.5 billion."); https://www.schneiderwallace.com/our-firm/ (reflecting "[r]ecent results* … achieved for" clients of over $2 billion).

Dated: September 1, 2020                Respectfully submitted,

*s/ Edward C. Stewart*

Edward C. Stewart
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone: 303.244.1800
Facsimile: 303.244.1879
stewart@wtotrial.com

Sean M. Murphy
Milbank LLP
55 Hudson Yards
New York, NY 10001
Telephone: 212.530.5688
Facsimile: 212.822.5688
smurphy@milbank.com

Robert J. Liubicic
James D. Whooley
Milbank LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: 424.386.4525
Facsimile: 213.629.5063
rliubicic@milbank.com
jwhooley@milbank.com

Robert Michael Little
Great-West Life & Annuity Insurance Company
8515 East Orchard Road, 2T3
Greenwood Village, CO 80111
Telephone: 303.737.5089
Facsimile: 303.737.1699
bob.little@greatwest.com

*Attorneys for Defendant, Great-West Capital Management, LLC and Great-West Life & Annuity Insurance Company*

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on September 1, 2020, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

- Robert Michael Little
  bob.little@greatwest.com

- Edward Craig Stewart
  stewart@wtotrial.com, powell@wtotrial.com, purdy@wtotrial.com

- Thomas W. Snyder
  thomas.snyder@kutakrock.com, becky.franson@kutakrock.com

- Lydia M. Floyd
  lfloyd@prwlegal.com, ecf@prwlegal.com, vshahrimanyan@prwlegal.com

- Mark T. Johnson
  mjohnson@schneiderwallace.com, 1034213420@filings.docketbird.com,
  efilings@schneiderwallace.com

- Kyle Geoffrey Bates
  kbates@schneiderwallace.com, 3005202420@filings.docketbird.com

- Kurt Charles Struckhoff
  kstruckhoff@uselaws.com

- Michael Armin Wolff
  mwolff@uselaws.com, rfreisinger@uselaws.com

- Jerome Joseph Schlichter
  jschlichter@uselaws.com, rfreisinger@uselaws.com,
  sbddocket@uselaws.com, ssoyars@uselaws.com

- Adam Michael Regoli
  adam.regoli@greatwest.com

- Sean E. Soyars
  ssoyars@uselaws.com

- Sean Miles Murphy
  smurphy@milbank.com, autodocketecf@milbank.com,
  carefrye@yahoo.com, cfrye@milbank.com, ggreen@milbank.com,
  kmaggio@milbank.com, rliubicic@milbank.com, uihenatu@milbank.com

- Robert Liubicic
  rliubicic@milbank.com

- Randall Marc Lending
  rlending@vedderprice.com, ecfdocket@vedderprice.com,
  trobinson@vedderprice.com

- Benjamin James Reed
  breed@milbank.com, benreed84@gmail.com

- Joseph C. Peiffer
  jpeiffer@prwlegal.com, bjones@prwlegal.com

- James Dennis Whooley
  jwhooley@milbank.com

*s/ Edward C. Stewart*