# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 16-cv-00230-CMA-SKC (consolidated for all purposes with
Civil Action No. 16-cv-01215-CMA-SKC and Civil Action No. 16-cv-03162-CMA-SKC)

JOAN OBESLO,
ANNE HALL, and
TINA GORRELL-DEYERLE, on behalf of Great West Funds, Inc.,

    Plaintiffs,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

    Defendant.

---

DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK APLC 401 (K) PLAN,

    Plaintiff,

v.

GREAT-WEST CAPITAL MANAGEMENT, LLC,

    Defendant.

---

JOAN OBESLO,
ANNE HALL, and
TINA GORRELL-DEYERLE, on behalf of Great-West Funds, Inc.,

    Plaintiffs,

v.

GREAT-WEST LIVE & ANNUITY INSURANCE CO, and
GREAT-WEST CAPITAL MANAGEMENT, LLC,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SANCTIONS
AND DENYING PLAINTIFFS' MOTION FOR SANCTIONS**

This matter is before the Court on Defendants' Motion for Sanctions Under 28 U.S.C. § 1927. (Doc. # 389.) Plaintiffs filed a Response (Doc. # 394) and their own Motion for Sanctions Under § 1927 (Doc. # 395) on September 15, 2020. Defendants filed a Reply to Plaintiffs' Response on September 25, 2020. (Doc. # 399.) For the following reasons, the Court grants Defendants' Motion and denies Plaintiffs' Motion.

## I.   BACKGROUND

The Court recently recounted the facts of this case in its Findings of Fact and Conclusions of Law. (Doc. # 384 at 1–10.) Those facts are incorporated by reference. Accordingly, the Court will recount the factual background only to the extent necessary to address the instant Motions.

This case is a consolidated shareholder derivative action that arises under § 36(b) of the Investment Company Act ("ICA"), 15 U.S.C. § 80a-35(b). Plaintiffs alleged that the fees charged by Defendants Great-West Capital Management, LLC ("GWCM") and Great-West Life & Annuity Insurance Co. ("GWL&A") violated § 36(b) of the ICA, which prohibits fees that are "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 346 (2010) (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982)).

Defendants filed a Motion for Summary Judgment on May 18, 2018. (Doc. # 248.) Plaintiffs' Response framed this case as a "battle of experts" and heavily relied on

2

the opinions of their expert—J. Christopher Meyer—in arguing that genuine issues of material fact precluded summary judgment. (Doc # 252 at 3 n.3) (citation omitted). Viewing the facts, especially Plaintiffs' representations about what Mr. Meyer would demonstrate at trial, in the light most favorable to Plaintiffs, the Court found that factual disputes existed which required a trial to resolve. As a result, the Court denied Defendants' motion, but reserved ruling on the issue of damages.

However, Defendants' Motion for Summary Judgment pointed out that some of Mr. Meyer's theories regarding damages were in conflict with non-binding, but well-established, caselaw and the legislative history of the ICA. (Doc. # 248 at 23–25.) Defendants reasserted those arguments in their motion to strike Mr. Meyer as an expert witness pursuant to Fed. R. Evid. 702. The Court denied the motion to strike, noting that Mr. Meyer met the minimum legal requirements to offer his opinions at trial. Nevertheless, the Court observed that caselaw suggested that some of Mr. Meyer's opinions were factually inaccurate. (Doc. # 322 at 17.)

In spite of the red flags that Defendants and the Court raised with respect to Mr. Meyer's opinions, Plaintiffs proceeded to trial, relying on Mr. Meyer as the **sole means** of calculating the amount of damages they allegedly suffered. When he testified, Mr. Meyer was thoroughly discredited. For instance, he went as far as admitting that some of his opinions were implausible and "**probably shouldn't have [been] included**" in his report. (Doc. # 376 at 61–62.) His complete lack of credibility as to the element of damages dealt a fatal blow to Plaintiffs' case.

Additionally, in its Findings of Fact and Conclusions of Law, the Court foreseeably agreed with the well-reasoned case law that showed Mr. Meyer's opinions to be flawed. (Doc. # 384 at 14–18.) Any experienced plaintiffs' counsel, who objectively assessed the merits of this case, should have anticipated that result.

## II.  LEGAL STANDARD

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Statute "was designed to compensate victims of abusive litigation practices." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 872 (10th Cir. 2018).

"[Section] 1927 does not require a finding of bad faith." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008). "When dealing with a lawyer, the courts 'are entitled to demand that an attorney exhibit some judgment. To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with an empty head and a pure heart is not responsible for the consequences.'" *B. Willis, C.P.A., Inc. v. Pub. Serv. Co. of Oklahoma*, 511 F. App'x 753, 756 (10th Cir. 2013) (quoting *Hamilton*, 519 F.3d at 1202). Therefore, "any conduct that, viewed objectively, manifests either **intentional or reckless** disregard of the attorney's duties to the court, is sanctionable." *Hamilton*, 519 F.3d at 1202 (emphasis added) (internal quotation marks omitted).

### III.     DISCUSSION

Sanctions under § 1927 are warranted in this case because Plaintiffs' counsel recklessly pursued their claims through trial despite the fact that they were lacking in merit. As Plaintiffs recognize in their Response to Defendants' Motion for Sanctions, "**no plaintiff who has pursued a claim under §36(b) of the Investment Company Act has ever won in the 50 years of that section's existence**." (Doc. # 394 at 1) (emphasis added). Thus, Plaintiffs' counsel knew they were facing an up-hill battle from the outset of this case. Once they took into account the flaws that Defendants pointed out with respect to Mr. Meyer's opinions, they should have recognized that they had no plausible means of establishing actual damages or "the outer bounds of arm's length bargaining," which is the benchmark for a § 36(b) violation. *Jones v. Harris Assocs. L.P.*, 611 F. App'x 359, 360 (7th Cir. 2015).

Plaintiffs argue that they "provided extensive evidence and reasonable arguments for what [a] reasonable fee would have been, even apart from the opinion of their expert witness." (Doc. # 394 at 8.) However, that argument underscores a fundamental misunderstanding of what constitutes a § 36(b) violation. The fact that Defendants could have charged fees that were lower than what they actually charged is largely irrelevant **unless** their actual fees exceed "the outer bounds of arm's length bargaining . . . ." *Jones*, 611 F. App'x at 360. Simply stating that an investment advisor could have reasonably charged another fee, without more, amounts to rate regulation. Therefore, the evidence to which Plaintiffs refer could not independently support a § 36(b) claim without Mr. Meyer's opinion of what that evidence showed.

5

Mr. Meyer's testimony was the essential piece of Plaintiffs' case that they used to characterize the evidence regarding Defendants' fees as being outside of what could have been negotiated at arm's length and calculate the amount of damages Plaintiffs allegedly suffered, which is an indispensable element of a § 36(b) claim. (Doc. # 384 at 11) (quoting *Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-cv-4194 (PGS)(DEA), 2016 WL 4487857, at *4 (D.N.J. Aug. 25, 2016), *aff'd sub nom. Sivolella for use & benefit of EQ/Common Stock Index Portfolio v. AXA Equitable Life Ins. Co.*, 742 F. App'x 604 (3d Cir. 2018)). However, in preparing for trial, Plaintiffs' counsel must have realized the weaknesses in Mr. Meyer's testimony that were likely to be exposed on cross examination, as well as the fatal legal flaws upon which his opinions were based.[1] *Danielson-Holland v. Standley & Assocs., LLC*, 512 F. App'x 850, 853 (10th Cir. 2013) ("An attorney must 'regularly re-evaluate the merits' of claims and 'avoid prolonging meritless claims.'" (quoting *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006))).

Even if the Court were to overlook Plaintiffs' failure to appreciate the depth of the flaws in Mr. Meyers opinions, sanctions under § 1927 would still be warranted. As the Court noted in its Findings of Fact and Conclusions of Law, "even though they did not have the burden to do so, Defendants presented persuasive and credible evidence that overwhelmingly proved that their fees were reasonable and that they did not breach their fiduciary duties." (Doc. # 384 at 13.) Had Plaintiffs' attorneys objectively reviewed

---

[1] If Plaintiffs had accurately represented the limitations of Mr. Meyer's expert opinions, it is highly likely that this case would not have survived Defendants' Motion for Summary Judgment.

the evidence in this case, that fact would have been as obvious to them as it was to the Court.

At that point, the prudent course of action would have been to voluntarily dismiss the case, especially when **no plaintiff**—many of whom likely had better experts and stronger claims—has ever prevailed on a § 36(b) claim in **50 years** of the statute's existence. Proceeding to trial under those circumstances was, therefore, objectively reckless. *Hamilton*, 519 F.3d at 1202 (courts "are entitled to demand that an attorney exhibit some judgment."); *see, e.g.*, *Wielgos v. Commonwealth Edison Co.*, 123 F.R.D. 299, 305 (N.D. Ill. 1988) (imposing § 1927 liability for pursuing securities claims that were lacking in merit). That reckless choice cost Defendants millions of dollars litigating this case and wasted valuable judicial resources which could have otherwise been allocated to the resolution of meritorious claims brought by deserving litigants.

To make matters worse, Defendants accurately point out that Plaintiffs' decision to continue through trial was inherently lawyer driven. Plaintiffs' counsel manufactured this case by placing an advertisement in the newspaper seeking individuals to join the suit. (Doc. # 366 at 36.) The manufactured nature of the case was evidenced at trial when the named Plaintiff, Joan Obeslo, persuasively testified that when she reviewed her retirement account during the relevant period, it "was making money every time. It kept going up, which is what I wanted." (*Id.* at 45.)

Similarly, none of the other testifying Plaintiffs indicated that they were unsatisfied with Defendants' services prior to joining the suit. Each Plaintiff was generally satisfied with the services they received and stood to gain a relatively small

amount if they prevailed at trial. On the other hand, Plaintiffs' counsel stood to gain tens of millions of dollars. Thus, it is reasonable to deduce that Plaintiffs' attorneys had a strong incentive to continue to litigate, even when it became clear that they should not. In that regard, the Court agrees with Defendants that "[w]hen counsel is left unchecked by a client, their independent duty to objectively evaluate their claims should only be greater." (Doc. # 389 at 19.) In this case, Plaintiffs' attorneys did not satisfy that duty.

In summary, Plaintiffs' attorneys were undeterred by the signs that their case was fatally flawed; they recklessly proceeded to trial in violation of their duty to objectively analyze their case. Consequently, Plaintiffs' attorneys are personally liable for Defendants' excess costs, expenses, and attorney fees reasonably incurred from the period beginning on the first day of trial and ending on the date Defendants filed the instant Motion—i.e., January 13, 2020, through September 1, 2020. That amount shall not exceed $1,500,000.

## IV.    CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

- Defendants' Motion for Sanctions Under 28 U.S.C. § 1927 (Doc. # 389) is GRANTED. Defendants are DIRECTED to submit supporting documentation for their requested fees on or before **October 19, 2020**. *See* (Doc. # 392).

- Plaintiffs' Motion for Sanctions Under § 1927 (Doc. # 395) is DENIED AS MOOT because it was based on the premise that Defendants' Motion for Sanctions was

lacking in merit. The Court rejected that premise by granting Defendants' Motion.

DATED: September 28, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge